Dr. Orly Taitz, *pro se*
Orly Taitz Law Offices
26302 La Paz, Suite 211
Mission Viejo, California 92691
(949) 683-5411
dr_taitz@yahoo.com

## UNITED STATES DISTRCT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA
## PHILADELPHIA

| | | |
|---|---|---|
| **Lisa Liberi, et al.,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 2:09-cv-01898-ER** |
| | §· | |
| **Orly Taitz, et al.** | § | |
| **Defendants** | § | |

## DEFENDANTS ORLY TAITZ' & DEFEND OUR FREEDOMS FOUNDATION'S OBJECTIONS TO ORDERS in Documents 81-82, OBJECTIONS AND RESPONSE TO APPLICATION FOR TRO in Document 83, and MOTION FOR DISMISSAL OF TRO OR EMERGENCY MOTION FOR CONTINUANCE

### THIS CASE SHOULD BE SUMMARILY DISMISSED NOW

Following the June 26, 2009, hearing in this court, the posture of this case was clear: Plaintiffs had not satisfied their burden of pleading or proof regarding question of proper jurisdiction or venue in the Eastern District of Pennsylvania. These basic prerequisites to maintaining an action have yet to be satisfied. Furthermore, to the degree that this Court expressed its concern regarding possible publication of Plaintiff Lisa Liberi's social security number, even if legal and permissible as Defendants contend, Defendant Orly Taitz shows by her sworn testimony in the form of an affidavit (Exhibit A) that from the date of hearing she did not publish or republish Ms. Liberi's full social security number.

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Objections to Orders In Documents 81-82, Objections and Response to Application for TRO in Document 83, and Motion for Summary and Final Dismissal with prejudice of TRO or Emergency Motion for Continuance of August 7, 2009, hearing until after August 23, 2009.*

Defendant Taitz further informs the Court under oath that although a social security number had once erroneously published before the hearing (before the case was filed), the published number was not even Liberi's true social security number, making the Plaintiffs' entire Application for TRO and Preliminary Injunction completely frivolous.  By Lisa Liberi's own admission in the TRO, coupled with a declaration she signed previously, when she resided in California, Lisa Liberi is using at least two social security numbers, which would appear to constitute (1) a violation of 42 U.S.C. §408(a)(7)(B), fraud on the Social Security administration, IRS and a plain and direct violation of the conditions of her probation conditions.

Accordingly, Defendants ask this honorable court to forward this information to the Social Security administration, IRS and the probation department of San Bernardino California, where Lisa Liberi was convicted last year, in 2008 of 10 felonies of forgery and grand theft and to the Probation department of santa Fe New Mexico where she resides currently.

It remains Defendants' firm and unwaivering contention that they have never used or cited **any previously unpublished information nor any identifying data not previously made public at public proceedings including criminal trials.**

Wherefore and accordingly, Defendants Orly Taitz and Defend our Freedoms Foundation object to the court's paired orders contained in Documents 81-82 that the predicates of personal jurisdiction, subject matter jurisdiction, and even the existence of cognizable causes of action remain unaddressed by the Plaintiffs.  Despite the Court's order to show cause entered June 26, 2009, the Plaintiffs are now being allowed to

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Objections*   2
*to Orders In Documents 81-82, Objections and Response to Application for TRO in*
*Document 83, and Motion for Summary and Final Dismissal with prejudice of TRO or*
*Emergency Motion for Continuance of August 7, 2009, hearing until after August 23,*
*2009.*

continue their patently frivolous, entirely groundless litigation in the face and on the trail of their repeated failures to satisfy the court's curiosity, as well as the Defendants' what the jurisdictional and substantive basis for this lawsuit really is.

Defendants Orly Taitz and Defend our Freedoms Foundation frankly have more important work to do, and the Berg-Liberi-Adams-Ostella campaign of paper terrorism should be shut down once and for all, wherefore Defendants Orly Taitz and Defend our Freedoms Foundation respectfully request that the orders contained in documents 81-82 be reconsidered and set aside, in light of the Plaintiffs' continuing abject failure to articulate legally cognizable claims over which this court has jurisdiction against these particular defendants.

At the close of the last (and first and only) hearing in this case, this court instructed plaintiff's attorney Berg to explain and justify his assertion that this court should exercise personal jurisdiction over the Defendants Taitz and Defend Our Freedoms Foundation.  On the record Berg misrepresented certain significant material facts to the court by stating, for example, that Taitz had sued Senator Spector and represented other clients in PA.  Affidavits are unnecessary to prove this fact if it were true.  If it were true, Berg could retrieve from the relevant state or federal courts, or property records, arbitrators reports, client statements or whatever other sources might exist.  However when Taitz protested and stated that it never happened, Berg did not retract his assertion, and the court accordingly ordered him to present facts and affidavits to substantiate his allegations, which Taitz had immediately denied in open court.

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Objections to Orders In Documents 81-82, Objections and Response to Application for TRO in Document 83, and Motion for Summary and Final Dismissal with prejudice of TRO or Emergency Motion for Continuance of August 7, 2009, hearing until after August 23, 2009.*    3

Berg never did produce any such evidence, because in fact, Orly Taitz had never set foot in Pennsylvania until the Wednesday in June before the hearing on Thursday. This in itself is grounds for sanctions under Rule 11. Berg should, then and there, have voluntarily dismissed his erroneously lodged action in the state of PA, with which Defendant never had any contacts, much less sufficient minimum contacts to justify any exercise of Pennsylvania jurisdiction. Instead, Berg came up with another set of misrepresentations which can only be called cumulative and therefore part of a pattern and more likely to be intentional, stating that the defendants (implicitly including Taitz either directly or indirectly) are threatening witnesses. As noted above, if indeed Defendant Orly Taitz had ever filed suit against Senator Arlen Spector or any other natural or artificial (corporate) person in Pennsylvania, then Berg could simply find this information in public court records.

Berg has been sanctioned before by another judge of this same Eastern District of Pennsylvania under FRCP Rule 11. Lisa Liberi was convicted of multiple counts of forgery and theft. Berg and Liberi obviously work well together, but their two wrongs do not make a right, in particular they do not make it "right" to require Defendants Taitz and Defend Our Freedoms to appear and answer legally meritless suits in Pennsylvania, to defend themselves against wrongs which never took place to avoid liability for injuries which were never suffered.

Furthermore, as will be detailed below, Defendants Orly Taitz and Defend our Freedoms Foundation have a severe scheduling problem with the hearing set for August

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Objections*     4
*to Orders In Documents 81-82, Objections and Response to Application for TRO in
Document 83, and Motion for Summary and Final Dismissal with prejudice of TRO or
Emergency Motion for Continuance of August 7, 2009, hearing until after August 23,
2009.*

7, 2009, and request that the Application for TRO either be denied and dismissed outright, or that this hearing be continued and set over for a date after August 23, 2009.

## LIKELIHOOD OF SUCCESS ON THE MERITS = NIL; WHAT MERITS?

It is not until pages 15-16 of their Memorandum of Law in support of Plaintiffs' Application for TRO or Preliminary Injunction that Plaintiffs even begin to articulate a specific legal basis for their claims. On pages 15-16, Plaintiffs let lose a small flight of grape-shot (mostly made of actual, tiny miniature "champagne" grapes, a bit past their prime) by citation to +/-12 different statutes, none of which establish or provide them with any entitlement whatsoever to an injunction or other civil relief. In brief summary: the Plaintiffs have not cited a single statute that actually establishes standing to maintain their present lawsuit, much less a TRO. So, following the order of properly cited statutes (not including shotgun categories such as the "Social Security Act" which could refer to any of literally thousands of statutory provisions) listed by the Plaintiffs on pages 15-16 of the Memorandum (18-19 on PACER numbering) within their Document 83:

1:     **California Civil Code §1798 et sequitur** is a statute directed at governmental agency disclosure of private information. To begin with, although Defendants Orly Taitz and Defend our Freedoms Foundation concedes that they are subject to the application of California law, the "Definitions" section of this chapter states in relevant part as follows:

§ 1798.3.  Definitions
As used in this chapter:
        (a) The term "personal information" **means any information that is maintained by an agency** that identifies or describes an individual, including, but not limited to, his or her name, social security number, physical description, home address, home telephone number, education,

financial matters, and medical or employment history. It includes
statements made by, or attributed to, the individual.
(b) The term **"agency"** means every state office, officer, department,
division, bureau, board, commission, or other state agency, except that the
term agency shall not include:
(1) The California Legislature.
(2) Any agency established under Article VI of the California
Constitution.
(3) The State Compensation Insurance Fund, except as to any records
which contain personal information about the employees of the State
Compensation Insurance Fund.
(4) A local agency, as defined in subdivision (a) of Section 6252 of the
Government Code.

Bold emphasis added.

The "Actions" section provides with even greater specificity:

§ 1798.45. Actions
An individual may bring a civil action against an agency whenever
such agency does any of the following:
(a) Refuses to comply with an individual's lawful request to inspect
pursuant to subdivision (a) of Section 1798.34.
(b) Fails to maintain any record concerning any individual with such
accuracy, relevancy, timeliness, and completeness as is necessary to
assure fairness in any determination relating to the qualifications,
character, rights, opportunities of, or benefits to the individual that
may be made on the basis of such record, if, as a proximate result of
such failure, a determination is made which is adverse to the
individual.
(c) Fails to comply with any other provision of this chapter, or any
rule promulgated thereunder, in such a way as to have an adverse
effect on an individual.

Specifically with regard to injunctive relief, the primary statute cited and

highlighted by the Plaintiffs as their basis for action specifically states:

§ 1798.47. Injunction

**Any agency** that fails to comply with any provision of this chapter
may be enjoined by any court of competent jurisdiction. The court
may make any order or judgment as may be necessary to prevent the
use or employment by **an agency of** any practices which violate this

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Objections*   6
*to Orders In Documents 81-82, Objections and Response to Application for TRO in*
*Document 83, and Motion for Summary and Final Dismissal with prejudice of TRO or*
*Emergency Motion for Continuance of August 7, 2009, hearing until after August 23,*
*2009.*

chapter.
Actions for injunction under this section may be prosecuted by the Attorney General, or any district attorney in this state, in the name of the people of the State of California whether upon his or her own complaint, or of a member of the general public, or by any individual acting in his or her own behalf.

Likelihood of success on the merits?  These Plaintiffs' action has no merit at all (bold emphasis added).  Rule 11 permits the Court, on its own initiative, to sanction these Plaintiffs for filing any action for injunctive or other relief against these Defendants pursuant to California Civil Code §1798.47.

In determining whether Plaintiffs' conduct is sanctionable, finally, even IF it were to be determined, somehow and no matter how unlikely or preposterously, that Defendants Orly Taitz and Defend our Freedoms Foundations were actually state agencies subject to this statute, jurisdiction and venue would not lie in the Eastern District of Pennsylvania, and Defendants should be awarded all their time and travel costs for having to defend on the wrong side of the North American Continent:

§ 1798.49. Jurisdiction

**An action to enforce any liability created under Sections 1798.45 to 1798.48, inclusive, may be brought in any court of competent jurisdiction in the county in which the complainant resides, or has his principal place of business, or in which the defendant's records are situated,** within two years from the date on which the cause of action arises, except that where a defendant has materially and willfully misrepresented any information required under this section to be disclosed to an individual who is the subject of the information and the information so misrepresented is material to the establishment of the defendant's liability to that individual under this section, the action may be brought at any time within two years after discovery by the complainant of the misrepresentation. Nothing in

Sections 1798.45 to 1798.48, inclusive, shall be construed to authorize any civil action by reason of any injury sustained as the result of any information practice covered by this chapter prior to July 1, 1978.

Bold Emphasis added.

Of course, the Court should also consider that any and all information which Defendants Orly Taitz and/or Defend Our Freedoms Foundation ever published concerning Lisa Liberi was "otherwise public" (in particular, from public court records derived from state criminal or federal bankruptcy proceedings) and was not obtained from purely personal information maintained by any state agency nor from "records" within a "system of records" (as these terms are defined in the Federal Privacy Act of 1974 at 5 U.S.C. 552a.(a)(4)-(5)).

There are good and sufficient reasons of public policy under the 1st, 5th and 9th Amendments why otherwise unsealed transcripts of hearings and trials in criminal and civil or administrative proceedings (including bankruptcies) are matters of public record. The Plaintiffs in this case fully and freely make use of such public records, no matter how irrelevant, immaterial, or insubstantial to any issue presently before or potentially before this court (such as most of the non-affidavit/verification pages attached as Exhibits to the Plaintiffs' Application for TRO). For this court to rule, especially by injunction or "prior restraint" that an individual political advocate or political advocacy foundation such as the two Defendants moving for relief herein cannot cite or refer to information in unsealed transcripts of criminal records would violate these Defendants' fundamental rights under the 1st, 5th, 9th, and 14th Amendments.

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Objections to Orders In Documents 81-82, Objections and Response to Application for TRO in Document 83, and Motion for Summary and Final Dismissal with prejudice of TRO or Emergency Motion for Continuance of August 7, 2009, hearing until after August 23, 2009.*                                                            8

2.      18 U.S.C. §1028(a)(7) is a federal criminal statute, not highlighted by the

Plaintiffs for obvious reasons, but second in their list of statutory bases for their civil

action for injunction against the Defendants.  It is an old maxim that "equity will not

enjoin a crime", and the relatively short list of criminal statutes which were specifically

enacted to override this maxim and to expressly permit civil penalties or injunctions does

not include 18 U.S.C. §1028(a)(7), defines its subject matter coverage in relevant part as

follows:

> 18 USCS § 1028
> § 1028.  Fraud and related activity in connection with identification
> documents, authentication features, and information
> (a) Whoever, in a circumstance described in subsection (c) of this section--
>     (1) knowingly and without lawful authority produces an identification
> document, authentication feature, or a false identification document;
>     (2) knowingly transfers an identification document, authentication
> feature, or a false identification document knowing that such document or
> feature was stolen or produced without lawful authority;
>     (3) knowingly possesses with intent to use unlawfully or transfer
> unlawfully five or more identification documents (other than those issued
> lawfully for the use of the possessor), authentication features, or false
> identification documents;
>     (4) knowingly possesses an identification document (other than one
> issued lawfully for the use of the possessor), authentication feature, or a
> false identification document, with the intent such document or feature be
> used to defraud the United States;
>     (5) knowingly produces, transfers, or possesses a document-making
> implement or authentication feature with the intent such document-making
> implement or authentication feature will be used in the production of a
> false identification document or another document-making implement or
> authentication feature which will be so used;
>     (6) knowingly possesses an identification document or authentication
> feature that is or appears to be an identification document or
> authentication feature of the United States or a sponsoring entity of an
> event designated as a special event of national significance which is stolen
> or produced without lawful authority knowing that such document or
> feature was stolen or produced without such authority;
>     (7) knowingly transfers, possesses, or uses, without lawful authority, a
> means of identification of another person with the intent to commit, or to

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Objections*      9
*to Orders In Documents 81-82, Objections and Response to Application for TRO in*
*Document 83, and Motion for Summary and Final Dismissal with prejudice of TRO or*
*Emergency Motion for Continuance of August 7, 2009, hearing until after August 23,*
*2009.*

aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law; or

(8) knowingly traffics in false or actual authentication features for use in false identification documents, document-making implements, or means of identification;

shall be punished as provided in subsection (b) of this section.

\*    \*    \*    \*    \*    \*    \*    \*    \*

(c) The circumstance referred to in subsection (a) of this section is that--

(1) the identification document, authentication feature, or false identification document is or appears to be issued by or under the authority of the United States or a sponsoring entity of an event designated as a special event of national significance or the document-making implement is designed or suited for making such an identification document, authentication feature, or false identification document;

(2) the offense is an offense under subsection (a)(4) of this section; or

(3) either--

(A) the production, transfer, possession, or use prohibited by this section is in or affects interstate or foreign commerce, including the transfer of a document by electronic means; or

(B) the means of identification, identification document, false identification document, or document-making implement is transported in the mail in the course of the production, transfer, possession, or use prohibited by this section.

\*    \*    \*    \*    \*    \*    \*    \*    \*

(f) Attempt and conspiracy. Any person who attempts or conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

It is perfectly obvious that this statute does not apply to any alleged use or purpose attributable to Defendants Orly Taitz or Defend our Freedoms Foundation of any personal information ever published relating to Lisa Liberi. More importantly, this statute does not provide any civil remedy or authority for judicial injunction even if it did apply to any allegations in Plaintiffs' complaint. "Equity will not enjoin a crime" (especially if no crime has been sufficiently alleged, and the Plaintiffs have not come

anywhere close to alleging even 50% of the elements of any crime defined by or under 18 U.S.C. §1028).

3.    **Pennsylvania Privacy Acts (74 Pa. Stat. Ann. §201).   There is no suggestion of why principles of choice of law under *Erie* or any other doctrine would suggest that Defendants Orly Taitz and Defend Our Freedoms Foundation should be subject to the laws of the State of Pennsylvania.**

**74 Pa. Stat. Ann. §201 is a state criminal statute enacted in a state, which, as this Court as well aware, may not have any personal jurisdiction over Defendants Orly Taitz or the Defend Our Freedoms Foundation, whatsoever.  Defendants accordingly reiterate what they stated above: the Court on June 26, 2009, ordered the Plaintiffs to show cause why their complaint and application for TRO should not be dismissed for want of personal jurisdiction and venue.  The diversionary excuses given in Plaintiffs' Application for TRO and Preliminary Injunction for their failure to establish that personal jurisdiction and venue over these Defendants was caused by Defendants' threats (which even described in Plaintiffs' memorandum on page 16, Document 83, page 19, are hardly credible as programs of witness intimidation even if they had ever been made, which they were not) are at best appallingly weak (even if they were true, which Defendants categorically deny).  Plaintiffs have lodged their charges against Defendants Edgar Hale and Linda Sue Belcher aka Linda Starr only.**

**Defendants Orly Taitz and Defend Our Freedoms Foundation were not directly accused of having made any of these threats, but are being in effect**

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Objections     11
to Orders In Documents 81-82, Objections and Response to Application for TRO in
Document 83, and Motion for Summary and Final Dismissal with prejudice of TRO or
Emergency Motion for Continuance of August 7, 2009, hearing until after August 23,
2009.*

punished indirectly by the Court's issuance of the order allowing the filing of the TRO.  The Court should release these Defendants from any further potential liability or exposure under the Plaintiffs' application for TRO immediately.

Defendants herein further submit that, upon information and belief based on information available to Dr. Orly Taitz, it is more than likely that these alleged threats as described in the Plaintiffs' memorandum (page 16---Document 83 at page 19 of 77) are nothing more than the Plaintiffs' downright disingenuous fabrications, evidenced by and consisting as they do of letters from witnesses whose names and addresses were expunged, thus depriving the Defendants of their Fifth Amendment right to confrontation of witnesses, especially witnesses alleging criminal or quasi-criminal conduct against them.

However, the more important point is that "equity will not enjoin a crime" and this is a criminal statute with no provisions for civil remedies or equitable injunctive relief WHATSOEVER.  Accordingly, the mere citation of this provision is frivolous. Moreover, even IF it applied to the present case, the Pennsylvania statute in question contains by its very terms a complete and absolute defense to Plaintiffs' attempts to "charge" or "prosecute" the Defendants under 74 Pa. Stat. Ann. §201(e) [and (f)(2)], namely, the subsection (e) judicial documentary source of all personal information provided or allegedly provided by Defendants regarding Lisa Liberi.  This second (and final) **highlighted** statute in Plaintiffs' grapeshot collection of authorities states in full:

§ 201.  Privacy of Social Security numbers
   (a) GENERAL RULE.-- A person or entity or State agency or political subdivision shall not do any of the following:
   (1) Publicly post or publicly display in any manner an individual's

Social Security number. "Publicly post" or "publicly display" means to intentionally communicate or otherwise make available to the general public.

(2) Print an individual's Social Security number on any card required for the individual to access products or services provided by the person, entity or State agency or political subdivision.

(3) Require an individual to transmit his or her Social Security number over the Internet unless the connection is secure or the Social Security number is encrypted.

(4) Require an individual to use his or her Social Security number to access an Internet website unless a password or unique personal identification number or other authentication device is also required to access the website.

(5) Print an individual's Social Security number on any materials that are mailed to the individual unless Federal or State law requires the Social Security number to be on the document to be mailed. Notwithstanding this provision, Social Security numbers may be included in applications and forms sent by mail, including documents sent as part of an application or enrollment process or to establish, amend or terminate an account, contract or policy or to confirm the accuracy of the Social Security number. A Social Security number that is permitted to be mailed under this section may not be printed, in whole or in part, on a postcard or other mailer not requiring an envelope, or visible on the envelope or without the envelope having been opened.

(6) Disclose in any manner, except to the agency issuing the license, the Social Security number of an individual who applies for a recreational license. For the purposes of this paragraph, a "recreational license" means a license issued pursuant to 30 Pa.C.S. (relating to fish) or 34 Pa.C.S. (relating to game).

(b) APPLICABILITY.-- Except as provided in subsection (c), subsection (a) applies only to the use of Social Security numbers on or after the effective date of this section.

(c) EXCEPTION.--

(1) A person or entity, not including a State agency or political subdivision, that has used, prior to the effective date of this section, an individual's Social Security number in a manner inconsistent with subsection (a) may continue using that individual's Social Security number in that manner on or after the effective date of this section if all of the following conditions are met:

(i) The use of the Social Security number is continuous. If the use is stopped for any reason, subsection (a) shall apply.

(ii) The individual is provided an annual disclosure, commencing in

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Objections to Orders In Documents 81-82, Objections and Response to Application for TRO in Document 83, and Motion for Summary and Final Dismissal with prejudice of TRO or Emergency Motion for Continuance of August 7, 2009, hearing until after August 23, 2009.*  13

the year after the effective date of this section, that informs the individual that he or she has the right to stop the use of his or her Social Security number in a manner prohibited by subsection (a).

(2) An individual who receives an annual disclosure under paragraph (1) has the right to stop the use of his or her Social Security number in a manner prohibited by subsection (a) and must exercise that right by submitting a written request to the person or entity. The person or entity shall discontinue use of the individual's Social Security number within 30 days of the receipt of the request. There shall be no fee or charge for complying with the request. A person or entity shall not deny services to an individual because the individual makes a written request pursuant to this subsection.

(d) CONSTRUCTION.-- This section shall not be construed to prevent the collection, use or release of a Social Security number as required by Federal or State law or the use of a Social Security number for internal verification, administrative purposes or for law enforcement investigations.

(e) **UNIFIED JUDICIAL SYSTEM DOCUMENTS.-- This section does not apply to a document that originated with or is filed with, recorded in or is maintained by any court component or part of the unified judicial system.**

(f) GOVERNMENT DOCUMENTS.-- This section does not apply to any document that:

(1) is required by law to be open to the public; and

(2) **originates with or is filed, recorded or maintained by any government agency, instrumentality or taxing authority.**

(g) PENALTY.-- Actions in violation of this act shall be deemed a summary offense and shall be punishable by a fine of not less than $ 50 and not more than $ 500 and, for every second or subsequent violation, by a fine of not less than $ 500 and not more than $ 5,000. Fines under this section shall be distributed equally between the Crime Victim's Compensation Fund administered by the Pennsylvania Commission on Crime and Delinquency and the Office of Attorney General for future identity theft prevention.

Bold Emphasis Added.

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Objections* 14
*to Orders In Documents 81-82, Objections and Response to Application for TRO in Document 83, and Motion for Summary and Final Dismissal with prejudice of TRO or Emergency Motion for Continuance of August 7, 2009, hearing until after August 23, 2009.*

Once again, Defendants submit that the court should, on its own initiative, consider sanctions against the Plaintiffs for citing this statute as grounds for a TRO, especially in the present case where choice of law and jurisdiction remain as well as venue all remain unclear, undecided, and probably non-existent.

4.      Jumping back to California on the opposite coast, for whatever reason and logic Pennsylvania intruded in this grab back of irrelevant statutes, Plaintiffs next cite without highlighting California Business & Professions Code §22577(a), which appears not to specify any civil actions, penalties, or remedies at all, but merely sets forth state policy(?):

§ 22577. Definitions

For the purposes of this chapter, the following definitions apply:
(a) The term "personally identifiable information" means individually identifiable information about an individual consumer collected online by the operator from that individual and maintained by the operator in an accessible form, including any of the following:
  (1) A first and last name.
  (2) A home or other physical address, including street name and name of a city or town.
  (3) An e-mail address.
  (4) A telephone number.
  (5) A social security number.
  (6) Any other identifier that permits the physical or online contacting of a specific individual.
  (7) Information concerning a user that the Web site or online service collects online from the user and maintains in personally identifiable form in combination with an identifier described in this subdivision.
(b) The term "conspicuously post" with respect to a privacy policy shall include posting the privacy policy through any of the following:
  (1) A Web page on which the actual privacy policy is posted if the Web page is the homepage or first significant page after entering the Web site.
  (2) An icon that hyperlinks to a Web page on which the actual privacy policy is posted, if the icon is located on the homepage or the first significant page after entering the Web site, and if the icon contains the word "privacy." The icon shall also use a color that contrasts with the background color of the Web page or is otherwise distinguishable.
  (3) A text link that hyperlinks to a Web page on which the actual privacy policy

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Objections*      15
*to Orders In Documents 81-82, Objections and Response to Application for TRO in*
*Document 83, and Motion for Summary and Final Dismissal with prejudice of TRO or*
*Emergency Motion for Continuance of August 7, 2009, hearing until after August 23,*
*2009.*

is posted, if the text link is located on the homepage or first significant page after entering the Web site, and if the text link does one of the following:
(A) Includes the word "privacy."
(B) Is written in capital letters equal to or greater in size than the surrounding text.
(C) Is written in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks that call attention to the language.
(4) Any other functional hyperlink that is so displayed that a reasonable person would notice it.
(5) In the case of an online service, any other reasonably accessible means of making the privacy policy available for consumers of the online service.
(c) The term "operator" means any person or entity that owns a Web site located on the Internet or an online service that collects and maintains personally identifiable information from a consumer residing in California who uses or visits the Web site or online service if the Web site or online service is operated for commercial purposes. It does not include any third party that operates, hosts, or manages, but does not own, a Web site or online service on the owner's behalf or by processing information on behalf of the owner.
(d) The term "consumer" means any individual who seeks or acquires, by purchase or lease, any goods, services, money, or credit for personal, family, or household purposes.

Quite simply, there appear to be no statutory consequences to violation of this statute, and

hence no grounds for relief stated thereunder:

§ 22576.  Violations
An operator of a commercial Web site or online service that collects personally identifiable information through the Web site or online service from individual consumers who use or visit the commercial Web site or online service and who reside in California shall be in violation of this section if the operator fails to comply with the provisions of Section 22575 or with the provisions of its posted privacy policy in either of the following ways:
(a) Knowingly and willfully.
(b) Negligently and materially.

Of course it can and should be noted that Defendants do not operate a commercial

website, so even if these sections provided a civil action or remedy, it would have no

application to the present case or the present plaintiffs.

     5.      Continuing the list of rancid grapes and rotten apples Plaintiffs have

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Objections*   16
*to Orders In Documents 81-82, Objections and Response to Application for TRO in*
*Document 83, and Motion for Summary and Final Dismissal with prejudice of TRO or*
*Emergency Motion for Continuance of August 7, 2009, hearing until after August 23,*
*2009.*

tossed Defendants' (and the Court's) way, consider 18 U.S.C. §§2510-22. Astounding

only in its complete irrelevance to any of Plaintiffs' actual allegations against

Defendants, which on the whole are already astounding by their complete lack of content

or truth, this happens to be a Federal criminal statute against wiretapping. That's right,

18 U.S.C. §2510 covers "electronic interception of oral communications," and its states

in full:

### § 2510.  Definitions

As used in this chapter [18 USCS §§ 2510 et seq.]--

(1) "wire communication" means any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception (including the use of such connection in a switching station) furnished or operated by any person engaged in providing or operating such facilities for the transmission of interstate or foreign communications or communications affecting interstate or foreign commerce;

(2) "oral communication" means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include any electronic communication;

(3) "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States;

(4) "intercept" means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device.[;]

(5) "electronic, mechanical, or other device" means any device or apparatus which can be used to intercept a wire, oral, or electronic communication other than--

(a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business; or (ii) being used by a provider of wire or electronic communication service in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties;

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Objections*   17
*to Orders In Documents 81-82, Objections and Response to Application for TRO in Document*
*83, and Motion for Summary and Final Dismissal with prejudice of TRO or Emergency*
*Motion for Continuance of August 7, 2009, hearing until after August 23, 2009.*

(b) a hearing aid or similar device being used to correct subnormal hearing to not better than normal;

(6) "person" means any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation;

(7) "Investigative or law enforcement officer" means any officer of the United States or of a State or political subdivision thereof, who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter [18 USCS §§ 2510 et seq.], and any attorney authorized by law to prosecute or participate in the prosecution of such offenses;

(8) "contents", when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication;

(9) "Judge of competent jurisdiction" means--

(a) a judge of a United States district court or a United States court of appeals; and

(b) a judge of any court of general criminal jurisdiction of a State who is authorized by a statute of that State to enter orders authorizing interceptions of wire, oral, or electronic communications;

(10) "communication common carrier" has the meaning given that term in section 3 of the Communications Act of 1934 [47 USCS § 153];

(11) "aggrieved person" means a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed;

(12) "electronic communication" means any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce, but does not include--

(A) any wire or oral communication;

(B) any communication made through a tone-only paging device;

(C) any communication from a tracking device (as defined in section 3117 of this title [18 USCS § 3117]); or

(D) electronic funds transfer information stored by a financial institution in a communications system used for the electronic storage and transfer of funds;

(13) "user" means any person or entity who--

(A) uses an electronic communication service; and

(B) is duly authorized by the provider of such service to engage in such use;

(14) "electronic communications system" means any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Objections*                    18
*to Orders In Documents 81-82, Objections and Response to Application for TRO in Document*
*83, and Motion for Summary and Final Dismissal with prejudice of TRO or Emergency*
*Motion for Continuance of August 7, 2009, hearing until after August 23, 2009.*

communications;

(15) "electronic communication service" means any service which provides to users thereof the ability to send or receive wire or electronic communications;

(16) "readily accessible to the general public" means, with respect to a radio communication, that such communication is not--

(A) scrambled or encrypted;

(B) transmitted using modulation techniques whose essential parameters have been withheld from the public with the intention of preserving the privacy of such communication;

(C) carried on a subcarrier or other signal subsidiary to a radio transmission;

(D) transmitted over a communication system provided by a common carrier, unless the communication is a tone only paging system communication; or

(E) transmitted on frequencies allocated under part 25, subpart D, E, or F of part 74, or part 94 of the Rules of the Federal Communications Commission, unless, in the case of a communication transmitted on a frequency allocated under part 74 that is not exclusively allocated to broadcast auxiliary services, the communication is a two-way voice communication by radio;

(17) "electronic storage" means--

(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and

(B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication;

(18) "aural transfer" means a transfer containing the human voice at any point between and including the point of origin and the point of reception;

(19) "foreign intelligence information", for purposes of section 2517(6) of this title [18 USCS § 2517(6)], means--

(A) information, whether or not concerning a United States person, that relates to the ability of the United States to protect against--

(i) actual or potential attack or other grave hostile acts of a foreign power or an agent of a foreign power;

(ii) sabotage or international terrorism by a foreign power or an agent of a foreign power; or

(iii) clandestine intelligence activities by an intelligence service or network of a foreign power or by an agent of a foreign power; or

(B) information, whether or not concerning a United States person, with respect to a foreign power or foreign territory that relates to--

(i) the national defense or the security of the United States; or

(ii) the conduct of the foreign affairs of the United States;

(20) "protected computer" has the meaning set forth in section 1030 [18 USCS § 1030]; and

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Objections*     19
*to Orders In Documents 81-82, Objections and Response to Application for TRO in Document*
*83, and Motion for Summary and Final Dismissal with prejudice of TRO or Emergency*
*Motion for Continuance of August 7, 2009, hearing until after August 23, 2009.*

(21) "computer trespasser"--

(A) means a person who accesses a protected computer without authorization and thus has no reasonable expectation of privacy in any communication transmitted to, through, or from the protected computer; and

(B) does not include a person known by the owner or operator of the protected computer to have an existing contractual relationship with the owner or operator of the protected computer for access to all or part of the protected computer.

It is not at all apparent what possible relevance 28 U.S.C. §2510 has to the present case, other than to Plaintiffs' mounting potential liability for sanctions and/or Plaintiffs' need for serious psychological therapy and treatment. Nor is it the Defendants' job, nor that of the Court to try to stretch any of Plaintiffs' allegations even remotely to fit or correspond to the statutes cited. The burden of pleading cognizable causes of action, of reasonable grounds for injunctive relief, was on the Plaintiffs, and they have failed abysmally and totally to do so.

No allegations of wiretapping have been made against the Defendants in this case, nor are any allegations of imminent wiretapping likely to be credible. 18 U.S.C. §§2511-22 cover various other aspects of Federal wiretapping law, not one of which seems germane to any aspect of the present, admittedly "low tech" case or Defendants, who have neither been accused of manufacturing nor possessing wiretap equipment, to the best of their knowledge and belief. Title 18 U.S.C. §2522 does actually contain a civil penalty provision, which has no application to the Plaintiffs OR the Defendants in this present case, whatsoever:

**18 USCS § 2522**

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Objections*      20
*to Orders In Documents 81-82, Objections and Response to Application for TRO in Document*
*83, and Motion for Summary and Final Dismissal with prejudice of TRO or Emergency*
*Motion for Continuance of August 7, 2009, hearing until after August 23, 2009.*

§ 2522. Enforcement of the Communications Assistance for Law
Enforcement Act [47 USCS §§ 1001 et seq.]

(a) Enforcement by court issuing surveillance order. If a court authorizing
an interception under this chapter [18 USCS §§ 2510 et seq.], a State
statute, or the Foreign Intelligence Surveillance Act of 1978 (50 U.S.C.
1801 et seq.) or authorizing use of a pen register or a trap and trace device
under chapter 206 [18 USCS §§ 3121 et seq.] or a State statute finds that a
telecommunications carrier has failed to comply with the requirements of
the Communications Assistance for Law Enforcement Act [47 USCS §§
1001 et seq.], the court may, in accordance with section 108 of such Act
[47 USCS § 1007], direct that the carrier comply forthwith and may direct
that a provider of support services to the carrier or the manufacturer of the
carrier's transmission or switching equipment furnish forthwith
modifications necessary for the carrier to comply.

(b) Enforcement upon application by Attorney General. The Attorney
General may, in a civil action in the appropriate United States district
court, obtain an order, in accordance with section 108 of the
Communications Assistance for Law Enforcement Act [47 USCS § 1007],
directing that a telecommunications carrier, a manufacturer of
telecommunications transmission or switching equipment, or a provider of
telecommunications support services comply with such Act [47 USCS §§
1001 et seq.].

(c) Civil penalty.

(1) In general. A court issuing an order under this section against a
telecommunications carrier, a manufacturer of telecommunications
transmission or switching equipment, or a provider of telecommunications
support services may impose a civil penalty of up to $ 10,000 per day for
each day in violation after the issuance of the order or after such future
date as the court may specify.

(2) Considerations. In determining whether to impose a civil penalty and
in determining its amount, the court shall take into account--

(A) the nature, circumstances, and extent of the violation;

(B) the violator's ability to pay, the violator's good faith efforts to
comply in a timely manner, any effect on the violator's ability to continue
to do business, the degree of culpability, and the length of any delay in
undertaking efforts to comply; and

(C) such other matters as justice may require.

(d) Definitions. As used in this section, the terms defined in section 102 of
the Communications Assistance for Law Enforcement Act [47 USCS §
1001] have the meanings provided, respectively, in such section.

Indeed, ALL of the allegations of the Plaintiffs in this case are and remain

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Objections*   21
*to Orders In Documents 81-82, Objections and Response to Application for TRO in*
*Document 83, and Motion for Summary and Final Dismissal with prejudice of TRO or*
*Emergency Motion for Continuance of August 7, 2009, hearing until after August 23,*
*2009.*

patently frivolous and disconnected from the very authorities they themselves cite. The Plaintiffs cannot connect the dots between their statutory allegations, except to observe that they seem to outline an extremely vexatious lawsuit filed solely for the purposes of harassment, without any of the legal background research of fact collection required by Rule 11 of the Federal Rules of Civil Procedure.

6.      The Court is probably by this time aggravated, as are the Defendants moving herein for final and immediate dismissal of the Plaintiffs' Application for TRO, but it seems necessary to complete the citation and discussion of all properly cited statutory bases for the Plaintiffs' claims, even if these properly cited bases are completely IMPROPER sources of authority for the action lodged and the injunctive relief requested. 18 U.S.C. §§2701-11 is just another Federal criminal statute with no relevant civil penalties:

## 18 USCS § 2701

Review expert commentary from The National Institute for Trial Advocacy preceding 18 USCS § 2701 (relating to computer records).

§ 2701. Unlawful access to stored communications

(a) Offense. Except as provided in subsection (c) of this section whoever--
   (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or
   (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section.

(b) Punishment. The punishment for an offense under subsection (a) of this section is--
   (1) if the offense is committed for purposes of commercial advantage, malicious destruction or damage, or private commercial gain, or in furtherance of any criminal or tortious act in violation of the Constitution or laws of the United States or any State--

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Objections*    22
*to Orders In Documents 81-82, Objections and Response to Application for TRO in Document 83, and Motion for Summary and Final Dismissal with prejudice of TRO or Emergency Motion for Continuance of August 7, 2009, hearing until after August 23, 2009.*

(A) a fine under this title or imprisonment for not more than 5 years, or both, in the case of a first offense under this subparagraph; and
(B) a fine under this title or imprisonment for not more than 10 years, or both, for any subsequent offense under this subparagraph; and
(2) in any other case--
(A) a fine under this title or imprisonment for not more than 1 year or both, in the case of a first offense under this paragraph; and
(B) a fine under this title or imprisonment for not more than 5 years, or both, in the case of an offense under this subparagraph that occurs after a conviction of another offense under this section.
(c) Exceptions. Subsection (a) of this section does not apply with respect to conduct authorized--
(1) by the person or entity providing a wire or electronic communications service;
(2) by a user of that service with respect to a communication of or intended for that user; or
(3) in section 2703, 2704 or 2518 of this title [18 USCS § 2703 etc.].

7.    The final statute specifically cited in support of the application for TRO

and preliminary injunction is 47 U.S.C. §223(a)(1)(C) which concerns cyber-harassment-

--a topic which, again, seems so alien and unrelated even to the Plaintiffs' flimsy factual

allegations as to defy credulity that it was ever mentioned in this case.  The cited statute

provides, in whole:

47 USCS § 223

§ 223.  Obscene or harassing telephone calls in the District of Columbia or in interstate or foreign communications
(a) Prohibited acts generally. Whoever--
(1) in interstate or foreign communications--
(A) by means of a telecommunications device knowingly--
(i) makes, creates, or solicits, and
(ii) initiates the transmission of,
any comment, request, suggestion, proposal, image, or other communication which is obscene or child pornography, with intent to annoy, abuse, threaten, or harass another person;
(B) by means of a telecommunications device knowingly--
(i) makes, creates, or solicits, and
(ii) initiates the transmission of,
any comment, request, suggestion, proposal, image, or other communication which is obscene or child pornography, knowing that the recipient of the communication is under 18 years of age, regardless of whether the maker of such communication placed the call or initiated the communication;

(C) makes a telephone call or utilizes a telecommunications device, whether or not conversation or communication ensues, without disclosing his identity and with intent to annoy, abuse, threaten, or harass any person at the called number or who receives the communications;

(D) makes or causes the telephone of another repeatedly or continuously to ring, with intent to harass any person at the called number; or

(E) makes repeated telephone calls or repeatedly initiates communication with a telecommunications device, during which conversation or communication ensues, solely to harass any person at the called number or who receives the communication; or

(2) knowingly permits any telecommunications facility under his control to be used for any activity prohibited by paragraph (1) with the intent that it be used for such activity, shall be fined under title 18, United States Code, or imprisoned not more than two years, or both.

(b) Prohibited acts for commercial purposes; defense to prosecution.

(1) Whoever knowingly--

(A) within the United States, by means of telephone, makes (directly or by recording device) any obscene communication for commercial purposes to any person, regardless of whether the maker of such communication placed the call; or

(B) permits any telephone facility under such person's control to be used for an activity prohibited by subparagraph (A), shall be fined in accordance with title 18, United States Code, or imprisoned not more than two years, or both.

(2) Whoever knowingly--

(A) within the United States, by means of telephone, makes (directly or by recording device) any indecent communication for commercial purposes which is available to any person under 18 years of age or to any other person without that person's consent, regardless of whether the maker of such communication placed the call; or

(B) permits any telephone facility under such person's control to be used for an activity prohibited by subparagraph (A), shall be fined not more than $ 50,000 or imprisoned not more than six months, or both.

(3) It is a defense to prosecution under paragraph (2) of this subsection that the defendant restricted access to the prohibited communication to persons 18 years of age or older in accordance with subsection (c) of this section and with such procedures as the Commission may prescribe by regulation.

(4) In addition to the penalties under paragraph (1), whoever, within the United States, intentionally violates paragraph (1) or (2) shall be subject to a fine of not more than $ 50,000 for each violation. For purposes of this paragraph, each day of violation shall constitute a separate violation.

(5) (A) In addition to the penalties under paragraphs (1), (2), and (5), whoever, within the United States, violates paragraph (1) or (2) shall be subject to a civil fine of not more than $ 50,000 for each violation. For purposes of this paragraph, each day of violation shall constitute a separate violation.

(B) A fine under this paragraph may be assessed either--

(i) by a court, pursuant to civil action by the Commission or any attorney employed by the Commission who is designated by the Commission for such purposes, or

(ii) by the Commission after appropriate administrative proceedings.

(6) The Attorney General may bring a suit in the appropriate district court of the United States to enjoin any act or practice which violates paragraph (1) or (2). An injunction may be granted in accordance with the Federal Rules of Civil Procedure.

(c) Restriction on access to subscribers by common carriers; judicial remedies respecting restrictions.

(1) A common carrier within the District of Columbia or within any State, or in interstate or foreign commerce, shall not, to the extent technically feasible, provide access to a communication specified in subsection (b) from the telephone of any subscriber who has not previously requested in writing the carrier to provide access to such communication if the carrier collects from subscribers an identifiable charge for such communication that the carrier remits, in whole or in part, to the provider of such communication.

(2) Except as provided in paragraph (3), no cause of action may be brought in any court or administrative agency against any common carrier, or any of its affiliates, including their officers, directors, employees, agents, or authorized representatives on account of--

(A) any action which the carrier demonstrates was taken in good faith to restrict access pursuant to paragraph (1) of this subsection; or

(B) any access permitted--

(i) in good faith reliance upon the lack of any representation by a provider of communications that communications provided by that provider are communications specified in subsection (b), or

(ii) because a specific representation by the provider did not allow the carrier, acting in good faith, a sufficient period to restrict access to communications described in subsection (b).

(3) Notwithstanding paragraph (2) of this subsection, a provider of communications services to which subscribers are denied access pursuant to paragraph (1) of this subsection may bring an action for a declaratory judgment or similar action in a court. Any such action shall be limited to the question of whether the communications which the provider seeks to provide fall within the category of communications to which the carrier will provide access only to subscribers who have previously requested such access.

(d) Sending or displaying offensive material to persons under 18. Whoever--

(1) in interstate or foreign communications knowingly--

(A) uses an interactive computer service to send to a specific person or persons under 18 years of age, or

(B) uses any interactive computer service to display in a manner available to a person under 18 years of age,

any comment, request, suggestion, proposal, image, or other communication that is obscene or child pornography, regardless of whether the user of such service placed the call or initiated the communication; or

(2) knowingly permits any telecommunications facility under such person's control to be used for an activity prohibited by paragraph (1) with the intent that it be used for such activity,cshall be fined under title 18, United States Code, or imprisoned not more than two years, or both.

(e) Defenses. In addition to any other defenses available by law:

(1) No person shall be held to have violated subsection (a) or (d) solely for providing access or connection to or from a facility, system, or network not under that person's control, including transmission, downloading, intermediate storage, access software, or other related capabilities that are incidental to providing such access or connection that does not include the creation of the content of the communication.

(2) The defenses provided by paragraph (1) of this subsection shall not be applicable to a person who is a conspirator with an entity actively involved in the creation or knowing distribution of communications that violate this section, or who knowingly advertises the availability of such communications.

(3) The defenses provided in paragraph (1) of this subsection shall not be applicable to a person who provides access or connection to a facility, system, or network engaged in the violation of this section that is owned or controlled by such person.

(4) No employer shall be held liable under this section for the actions of an employee or agent unless the employee's or agent's conduct is within the scope of his or her employment or agency and the employer (A) having knowledge of such conduct, authorizes or ratifies such conduct, or (B) recklessly disregards such conduct.

(5) It is a defense to a prosecution under subsection (a)(1)(B) or (d), or under subsection (a)(2) with respect to the use of a facility for an activity under subsection (a)(1)(B) that a person--

(A) has taken, in good faith, reasonable, effective, and appropriate actions under the circumstances to restrict or prevent access by minors to a communication specified in such subsections, which may involve any appropriate measures to restrict minors from such communications, including any method which is feasible under available technology; or

(B) has restricted access to such communication by requiring use of a verified credit card, debit account, adult access code, or adult personal identification number.

(6) The Commission may describe measures which are reasonable, effective, and appropriate to restrict access to prohibited communications under subsection (d). Nothing in this section authorizes the Commission to enforce, or is intended to provide the Commission with the authority to approve, sanction, or permit, the use of such measures. The Commission shall have no enforcement authority over the failure to utilize such measures. The Commission shall not endorse specific products relating to such measures. The use of such measures shall be admitted as evidence of good faith efforts for purposes of paragraph (5) in any action arising under subsection (d). Nothing in this section shall be construed to treat interactive computer services as common carriers or telecommunications carriers.

(f) Violations of law required; commercial entities, nonprofit libraries, or institutions of higher education.

(1) No cause of action may be brought in any court or administrative agency against any person on account of any activity that is not in violation of any law punishable by criminal or civil penalty, and that the person has taken in good faith to implement a defense authorized under this section or otherwise to restrict or prevent the transmission of, or access to, a communication specified in this

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Objections*    26
*to Orders In Documents 81-82, Objections and Response to Application for TRO in*
*Document 83, and Motion for Summary and Final Dismissal with prejudice of TRO or*
*Emergency Motion for Continuance of August 7, 2009, hearing until after August 23,*
*2009.*

section.
(2) No State or local government may impose any liability for commercial activities or actions by commercial entities, nonprofit libraries, or institutions of higher education in connection with an activity or action described in subsection (a)(2) or (d) that is inconsistent with the treatment of those activities or actions under this section: Provided, however, That nothing herein shall preclude any State or local government from enacting and enforcing complementary oversight, liability, and regulatory systems, procedures, and requirements, so long as such systems, procedures, and requirements govern only intrastate services and do not result in the imposition of inconsistent rights, duties or obligations on the provision of interstate services. Nothing in this subsection shall preclude any State or local government from governing conduct not covered by this section.
(g) Application and enforcement of other Federal law. Nothing in subsection (a), (d), (e), or (f) or in the defenses to prosecution under subsection (a) or (d) shall be construed to affect or limit the application or enforcement of any other Federal law.
(h) Definitions. For purposes of this section--
(1) The use of the term "telecommunications device" in this section--
(A) shall not impose new obligations on broadcasting station licensees and cable operators covered by obscenity and indecency provisions elsewhere in this Act [47 USCS §§ 151 et seq.];
(B) does not include an interactive computer service; and
(C) in the case of subparagraph (C) of subsection (a)(1), includes any device or software that can be used to originate telecommunications or other types of communications that are transmitted, in whole or in part, by the Internet (as such term is defined in section 1104 of the Internet Tax Freedom Act (47 U.S.C. 151 note)).
(2) The term "interactive computer service" has the meaning provided in section 230(f)(2) [47 USCS § 230(f)(2)].
(3) The term "access software" means software (including client or server software) or enabling tools that do not create or provide the content of the communication but that allow a user to do any one or more of the following:
(A) filter, screen, allow, or disallow content;
(B) pick, choose, analyze, or digest content; or
(C) transmit, receive, display, forward, cache, search, subset, organize, reorganize, or translate content.
(4) The term "institution of higher education" has the meaning provided in section 101 of the Higher Education Act of 1965 [20 USCS § 1001].
(5) The term "library" means a library eligible for participation in State-based plans for funds under title III of the Library Services and Construction Act (20 U.S.C. 355e et seq.).

Bold emphasis on provisions relating to civil actions added.

None of the civil actions cited above have ANY relationship to the facts of the present litigation. The court should specifically note that ONLY the attorney general of

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Objections to Orders In Documents 81-82, Objections and Response to Application for TRO in Document 83, and Motion for Summary and Final Dismissal with prejudice of TRO or Emergency Motion for Continuance of August 7, 2009, hearing until after August 23, 2009.*     27

the United States is authorized to bring equitable actions for injunction under the above-sections..... There are at least a half-dozen other statutes cited by name only, but the story does not change. Plaintiffs have imposed a huge burden on the Defendants to contest their frivolous allegations brought under non-existent legal grounds for non-existent equitable relief from non-existent injuries.

It is consistent but not relevant that the affidavits submitted in support of Plaintiffs' application for relief should be themselves totally stricken even if grounds for legal or equitable relief had been roughed out in Plaintiffs' complaint OR application for TRO/Preliminary Injunction. The affidavit and verification which were attached as Exhibit are based primarily on hearsay and contain little if no testimony or information based on personal knowledge. Accordingly, the Application for TRO would have to fail even if it were based on valid legal or equitable grounds for relief. Plaintiffs have shown ZERO likelihood of success on the merits. The Plaintiffs have not made a plausible case for connections between any of the Defendants alleged wrongs and the Plaintiffs' alleged injuries (whatever those injuries really are, if anything). Under the new and much more exacting and stringent standard of pleading of conspiracies and other torts (statutory or common law) set forth by *Twombly v. Bell Atlantic*, plaintiffs' complaint and application for TRO must both be summarily dismissed. 550 U.S. 544; 127 S. Ct. 1955 at 1964-65; 167 L.Ed.2d 929 (2007). Because the Plaintiffs have supplemented their frivolous complaint with a frivolous application for tro/preliminary injunction after receiving the Court's June 26, 2009, Order to Show Cause, the minimum sanction to be imposed is that of dismissal with prejudice.

## CONCLUSIONS & MOTION FOR CONTINUANCE

Sadly for all concerned, the Plaintiffs in this case simply do NOT have any viable causes of action against these Defendants.  Accordingly, there is no need to balance the equities or hardships, except regarding the questions of sanctions and whether the Court will require Defendant Dr. Orly Taitz to return from Israel where she had planned to spend her August 2009 vacation for a very long time prior to receiving the notice of setting of the hearing now set for Friday August 7, 2009 (See Affidavit, Exhibit B).

WHEREFORE, Defendant Orly Taitz moves and requests either that this application for TRO be set for a telephone (or if necessary, an in court) hearing on Friday July 31, 2009, or else that the hearing be continued until after August 23, 2009, or, all Defendants' first choice (and the greatest and most efficient uses of judicial power and time), that these Plaintiffs' case be finally and summarily dismissed without allowing any further evasive or diversionary tactics to mask the complete emptiness and vacuity of the Plaintiffs' allegations of fact or legal contentions raised against these Defendants.

Respectfully submitted,

Friday, July 31, 2009

By: _____
Dr. Orly Taitz, *pro se*, individually and a/k/a
Law Offices of Orly Taitz,
WWW.ORLYTAITZESQ.COM,
a/k/a WWW.REPUBX.COM,
a/k/a ORLY TAITZ, INC.
Defendant, *in propia persona* and on behalf
of Defend Our Freedoms Foundations, Inc..

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Objections*     29
*to Orders In Documents 81-82, Objections and Response to Application for TRO in*
*Document 83, and Motion for Summary and Final Dismissal with prejudice of TRO or*
*Emergency Motion for Continuance of August 7, 2009, hearing until after August 23,*
*2009.*

Dr. Orly Taitz, President,
26302 La Paz, Suite 211
Mission Viejo, California 92691

Telephone (949) 683-5411
E-Mail: dr_taitz@yahoo.com

## CERTIFICATE OF SERVICE

A true and correct copy of the above-and foregoing Objections to Orders in
Documents 81-82, Objections and Response to Application for TRO in Document 83,
and Motion for Dismissal of TRO or else Emergency Motion for Continuance was
submitted by Defendant Dr. Orly Taitz for herself and on behalf of Defend our Freedoms
Foundations, Inc, was served on July 31, 2009, by facsimile transmission and FedEx
overnight delivery upon the attorney of record for all the plaintiffs:

Law Offices of
PHILIP J. BERG, Esquire
555 Andorra Glen Court, Suite 12
Lafayette Hill, Pennsylvania 19444-2531

Telecopier (Facsimile): 610-834-7659
E-mail: philjberg@gmail.com

AS WELL AS counsel for certain Defendants, and all other Defendants in propia
persona:

Mr. Ted Hoppe, Esquire
Hoppe & Martin
423 McFarlan Road, Suite 100
Kennett Square, PA 19348
Phone: (610) 444-2001
Fax: (610) 444-5819
By e-mail: thoppe@hoppemartin.com

Neil Sankey
The Sankey Firm, Inc. a/k/a The Sankey Firm
Sankey Investigations, Inc.
2470 Stearns Street #162
Simi Valley, CA 93063
Phone: (805) 520-3151and (818) 366-0919
Cell Phone: (818) 212-7615
FAX: (805) 520-5804 and (818) 366-1491
Email: nsankey@thesankeyfirm.com

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Objections* 30
*to Orders In Documents 81-82, Objections and Response to Application for TRO in
Document 83, and Motion for Summary and Final Dismissal with prejudice of TRO or
Emergency Motion for Continuance of August 7, 2009, hearing until after August 23,
2009.*

Linda Sue Belcher
201 Paris
Castroville, Texas 78009
Home Phone: (830) 538-6395
Cell Phone: (830) 931-1781
Email: Newwomensparty@aol.com and
Email: starrbuzz@sbcglobal.net

Ed Hale
Caren Hale
Plains Radio
KPRN
Bar H Farms
1401 Bowie Street
Wellington, Texas 79095
Phone: (806) 447-0010 and (806) 447-0270
Email: plains.radio@yahoo.com and
Email: barhfarms@gmail.com and ed@barhfarms.net

By:_____

Dr. Orly Taitz, *pro se*
Defendant, *in propia persona* and on behalf
of Defend Our Freedoms Foundations, Inc..
Dr. Orly Taitz, President,
26302 La Paz, Suite 211
Mission Viejo, California 92691

Telephone (949) 683-5411
E-Mail: dr_taitz@yahoo.com

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Objections*    31
*to Orders In Documents 81-82, Objections and Response to Application for TRO in*
*Document 83, and Motion for Summary and Final Dismissal with prejudice of TRO or*
*Emergency Motion for Continuance of August 7, 2009, hearing until after August 23,*
*2009.*

# Exhibit A:
# Affidavit of Dr. Orly Taitz
# Concerning Management &
# Editing of Dossier #6