Dr. Orly Taitz, *pro se*
Orly Taitz Law Offices
29839 S. Margarita Pkwy
Rancho Santa Margarita Ca 92688
Tel: (949) 683-5411
Fax: (949) 766-7036
dr_taitz@yahoo.com

# UNITED STATES DISTRCT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA
### PHILADELPHIA

| | | |
|---|---|---|
| **Lisa Liberi, et al.,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 2:09-cv-01898-ER** |
| | § | |
| **Orly Taitz, et al.** | § | |
| **Defendants** | § | |



## DEFENDANTS ORLY TAITZ' & DEFEND OUR FREEDOMS FOUNDATION'S REPLY IN OPPOSITION TO PHILIP J. BERG'S AUGUST 26, 2009 RESPONSE TO JUDGE ROBRENO'S ORDER(S) TO SHOW CAUSE

In their submission in Document 106, Plaintiffs cite not even a single substantive statute (or substantive case law), which would provide subject matter jurisdiction over any Defendant. Accordingly, even if "minimum personal contacts were established," there is simply no lawsuit. Plaintiffs have alleged no duties owing from Defendants' to Plaintiffs, no breaches of such duties, no ongoing injurious conduct, and no damages whatsoever. Plaintiffs summarize the

sum total of their complaint as follows, on pages 1-2 of their August 26, 2009, Response

to the Court's Rules to Show Cause:

> Orly Taitz, et al. through her company DOFF threatened to take him down
> and to do so she would destroy his paralegal, Liberi, and get rid of her and
> anyone associated with Berg. Adams donated her time to Berg and his
> law firm to handle his entire fundraising. Taitz then invaded the privacy of
> Liberi and published publicly Liberi's full Social Security number, date of
> birth, mother's maiden name, place of birth and other personal
> confidential information.

It is at times like these that a Californian litigator wishes General Demurrers were

allowed in Federal Court, because it really should be enough to say that "assuming

everything that Plaintiffs' say is true, Defendants have still committed not torts or crimes

and Defendants still owe Plaintiffs absolutely positively nothing at law or in equity."

Suppose Dr. Taitz did threaten to "take Berg down and destroy his paralegal."

Berg and Liberi have basically brought suit about some alleged cybernetic

swaggering, boasting, posturing, and overreaction, if they have in fact sued about

anything at all. The facts underlying this suit are all too trivial to warrant one minute of a

Federal Court's time, and yet it has already occupied many hours. The case should be

dismissed for failure to state a claim upon which relief can be granted. Not ONE of the

causes of action alleged by Liberi, Berg, Adams, or Ostella can pass the new and much

more exacting and stringent standard of pleading of conspiracies and other torts

(statutory or common law) set forth by *Twombly v. Bell Atlantic*, 550 U.S. 544; 127

S. Ct. 1955 at 1964-65; 167 L.Ed.2d 929 (2007). At and ever since the June 26, 2009,

hearing in this court, the posture of this case was clear: Plaintiffs had not satisfied their

burden of pleading or proof regarding question of proper personal jurisdiction or venue in

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Reply*     2
*In Opposition to Plaintiffs' August 26, 2009, Response to Judge Robreno's*
*Order(s) to Show Cause*

the Eastern District of Pennsylvania and the Court ordered the Plaintiffs to bring forward factual allegations supported by evidence in support of the same.

## PLAINTIFFS' FAILURE TO PLEAD ACTIONABLE FACTS REQUIRES DISMISSAL NOT TRANSFER (ABSENCE OF CAUSE OF ACTION MEANS NO PERSONAL OR SUBJECT MATTER JURISDICTION ANYWHERE

The Plaintiffs' latest filing, though once again thick and bloated with content-free exhibits to a whopping total of 403 pages, still fails to satisfy the basic personal jurisdictional prerequisites to maintaining any action whatsoever against the undersigned Defendants (or, insofar as the undersigned can tell, any of the Defendants at all). Furthermore, to the degree that this Court on June 26, 2009, expressed its concern to the undersigned regarding possible publication of ONE of Plaintiff Lisa Liberi's several social security numbers, even if legal and permissible as Defendants contend, there is still no cause of action alleged regarding Defendants' conduct which could give this court in Pennsylvania jurisdiction over these Defendants.

There are good and sufficient reasons of public policy under the 1st, 5th and 9th Amendments why otherwise unsealed transcripts of hearings and trials in criminal and civil or administrative proceedings (including bankruptcies) are matters of public record. The Plaintiffs in this case fully and freely make use of such public records, no matter how irrelevant, immaterial, or insubstantial to any issue presently before or potentially before this court (such as most of the 360 pages attached as Exhibits to the Plaintiffs' Document #106 Response Submitted on August 26, 2009). For this court to rule, especially by injunction or "prior restraint" that an individual political advocate or political advocacy foundation such as the two Defendants moving for relief herein cannot cite or refer to information in unsealed

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Reply In Opposition to Plaintiffs' August 26, 2009, Response to Judge Robreno's Order(s) to Show Cause*

transcripts of criminal records would violate these Defendants' fundamental rights under the 1st, 5th, 9th, and 14th Amendments.

**Defendants accordingly reiterate what they stated above: the Court on June 26, 2009, ordered the Plaintiffs to show cause why their complaint and application for TRO should not be dismissed for want of personal jurisdiction and venue, but the truth is Plaintiffs had and still have not stated even one single legally sufficient cause of action, and accordingly their Complaint should be dismissed for failure to state a claim under 12(b)(6). For this reason, once again, Defendants will examine the Plaintiffs' causes of action, searching carefully for substance, and submitting to the Court that there is NONE. Furthermore, None of Plaintiffs' suggested causes of action include any alleged facts or actions which would support jurisdiction of THIS Court in Pennsylvania under ANY known theory.**

### REVIEW OF PLAINTIFFS' CAUSES OF ACTION (and why they do not Support jurisdiction or venue ANYWHERE, but especially not in the Eastern District of Pennsylvania)

Reviewing Plaintiffs' complaint and all the Plaintiffs' filings in this case taken as a whole, none of the statutes or which establish or provide them with any entitlement whatsoever to an injunction or other civil relief. In brief summary: the Plaintiffs have not cited a single statute that actually establishes standing to maintain their present lawsuit. So, following the order of properly cited statutes (not including shotgun categories such as the "Social Security Act" which could refer to any of literally thousands of statutory provisions) listed by the Plaintiffs in any of their documents filed to date:

1: **California Civil Code §1798 et sequitur** is a statute directed at

governmental agency disclosure of private information. It is so disconnected from the

facts of this case that Plaintiffs cannot maintain a cause of action against these

Defendants, in Pennsylvania, Texas, or California.

To begin with, although Defendants Orly Taitz and Defend our Freedoms

Foundation concedes that they are subject to the application of California law, the

"Definitions" section of this chapter states in relevant part as follows:

> § 1798.3. Definitions
> As used in this chapter:
>     (a) The term "personal information" **means any information that is maintained by an agency** that identifies or describes an individual, including, but not limited to, his or her name, social security number, physical description, home address, home telephone number, education, financial matters, and medical or employment history. It includes statements made by, or attributed to, the individual.
>   (b) The term **"agency"** means every state office, officer, department, division, bureau, board, commission, or other state agency, except that the term agency shall not include:
>   (1) The California Legislature.
>   (2) Any agency established under Article VI of the California Constitution.
>   (3) The State Compensation Insurance Fund, except as to any records which contain personal information about the employees of the State Compensation Insurance Fund.
>   (4) A local agency, as defined in subdivision (a) of Section 6252 of the Government Code.

Bold emphasis added.

The "Actions" section provides with even greater specificity:

> § 1798.45. Actions
> An individual may bring a civil action against an agency whenever such agency does any of the following:
>   (a) Refuses to comply with an individual's lawful request to inspect pursuant to subdivision (a) of Section 1798.34.
>   (b) Fails to maintain any record concerning any individual with such accuracy, relevancy, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, opportunities of, or benefits to the individual that

may be made on the basis of such record, if, as a proximate result of such failure, a determination is made which is adverse to the individual.

(c) Fails to comply with any other provision of this chapter, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual.

Specifically with regard to injunctive relief, the primary statute cited and highlighted by the Plaintiffs as their basis for action specifically states:

§ 1798.47. Injunction

**Any agency** that fails to comply with any provision of this chapter may be enjoined by any court of competent jurisdiction. The court may make any order or judgment as may be necessary to prevent the use or employment by **an agency of** any practices which violate this chapter.

Actions for injunction under this section may be prosecuted by the Attorney General, or any district attorney in this state, in the name of the people of the State of California whether upon his or her own complaint, or of a member of the general public, or by any individual acting in his or her own behalf.

Likelihood of success on the merits?  These Plaintiffs' action has no merit at all (bold emphasis added).  Rule 11 permits the Court, on its own initiative, to sanction these Plaintiffs for filing any action for injunctive or other relief against these Defendants pursuant to California Civil Code §1798.47.

In determining whether Plaintiffs' conduct is sanctionable, finally, even IF it were to be determined, somehow and no matter how unlikely or preposterously, that Defendants Orly Taitz and Defend our Freedoms Foundations were actually state agencies subject to this statute, jurisdiction and venue would not lie in the Eastern District of Pennsylvania, and Defendants should be awarded all their time and travel costs for having to defend on the wrong side of the North American

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Reply*     6
*In Opposition to Plaintiffs' August 26, 2009, Response to Judge Robreno's*
*Order(s) to Show Cause*

Continent:

§ 1798.49. Jurisdiction

**An action to enforce any liability created under Sections 1798.45 to 1798.48, inclusive, may be brought in any court of competent jurisdiction in the county in which the complainant resides, or has his principal place of business, or in which the defendant's records are situated,** within two years from the date on which the cause of action arises, except that where a defendant has materially and willfully misrepresented any information required under this section to be disclosed to an individual who is the subject of the information and the information so misrepresented is material to the establishment of the defendant's liability to that individual under this section, the action may be brought at any time within two years after discovery by the complainant of the misrepresentation. Nothing in Sections 1798.45 to 1798.48, inclusive, shall be construed to authorize any civil action by reason of any injury sustained as the result of any information practice covered by this chapter prior to July 1, 1978.

Bold Emphasis added.

There are certainly no facts anywhere, which might connect the Plaintiffs allegations in their Complete or in any of their motions filed through August 26, 2009, to the Defendants here before the Court. Of course, the Court should also consider that any and all information which Defendants Orly Taitz and/or Defend Our Freedoms Foundation ever published concerning Lisa Liberi was "otherwise public" (in particular, from public court records derived from state criminal or federal bankruptcy proceedings) and was not obtained from purely personal information maintained by any state agency nor from "records" within a "system of records" (as these terms are defined in the Federal Privacy Act of 1974 at 5 U.S.C. 552a.(a)(4)-(5)).

As Defendants have repeatedly stated, there are good and sufficient reasons of public policy under the 1st, 5th and 9th Amendments why otherwise unsealed transcripts of hearings and trials in criminal and civil or administrative proceedings (including bankruptcies) are matters of public record. The Plaintiffs in this case fully and freely make use of such public records, no matter how irrelevant, immaterial, or insubstantial to any issue presently before or potentially before this court (such as most of the 360 pages of Exhibits to the Plaintiffs' Document #106 Response). For this court to rule, especially by injunction or "prior restraint" that an individual political advocate or political advocacy foundation such as the two Defendants moving for relief herein cannot cite or refer to information in unsealed transcripts of criminal records would violate these Defendants' fundamental rights under the 1st, 5th, 9th, and 14th Amendments.

2.  **18 U.S.C. §1028(a)(7) is a federal criminal statute**, second in their list of statutory bases for their civil action for injunction against the Defendants, which provides no private cause of action in Pennsylvania, Texas, or California. It is an old maxim that "equity will not enjoin a crime", and the relatively short list of criminal statutes which were specifically enacted to override this maxim and to expressly permit civil penalties or injunctions does not include 18 U.S.C. §1028(a)(7), defines its subject matter coverage in relevant part as follows:

> 18 USCS § 1028
> § 1028. Fraud and related activity in connection with identification documents, authentication features, and information
> (a) Whoever, in a circumstance described in subsection (c) of this section--
>  (1) knowingly and without lawful authority produces an

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Reply In Opposition to Plaintiffs' August 26, 2009, Response to Judge Robreno's Order(s) to Show Cause*

8

identification document, authentication feature, or a false identification document;

(2) knowingly transfers an identification document, authentication feature, or a false identification document knowing that such document or feature was stolen or produced without lawful authority;

(3) knowingly possesses with intent to use unlawfully or transfer unlawfully five or more identification documents (other than those issued lawfully for the use of the possessor), authentication features, or false identification documents;

(4) knowingly possesses an identification document (other than one issued lawfully for the use of the possessor), authentication feature, or a false identification document, with the intent such document or feature be used to defraud the United States;

(5) knowingly produces, transfers, or possesses a document-making implement or authentication feature with the intent such document-making implement or authentication feature will be used in the production of a false identification document or another document-making implement or authentication feature which will be so used;

(6) knowingly possesses an identification document or authentication feature that is or appears to be an identification document or authentication feature of the United States or a sponsoring entity of an event designated as a special event of national significance which is stolen or produced without lawful authority knowing that such document or feature was stolen or produced without such authority;

(7) knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law; or

(8) knowingly traffics in false or actual authentication features for use in false identification documents, document-making implements, or means of identification;

shall be punished as provided in subsection (b) of this section.

*    *    *    *    *    *    *    *    *

(c) The circumstance referred to in subsection (a) of this section is that--

(1) the identification document, authentication feature, or false identification document is or appears to be issued by or under the authority of the United States or a sponsoring entity of an event designated as a special event of national significance or the document-making implement is designed or suited for making such an

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Reply*    9
*In Opposition to Plaintiffs' August 26, 2009, Response to Judge Robreno's*
*Order(s) to Show Cause*

identification document, authentication feature, or false identification document;

(2) the offense is an offense under subsection (a)(4) of this section; or

(3) either--

(A) the production, transfer, possession, or use prohibited by this section is in or affects interstate or foreign commerce, including the transfer of a document by electronic means; or

(B) the means of identification, identification document, false identification document, or document-making implement is transported in the mail in the course of the production, transfer, possession, or use prohibited by this section.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

(f) Attempt and conspiracy. Any person who attempts or conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

It is perfectly obvious that this statute does not apply to any alleged use or purpose attributable to Defendants Orly Taitz or Defend our Freedoms Foundation of any personal information ever published relating to Lisa Liberi. More importantly, this statute does not provide any civil remedy or authority for judicial injunction even if it did apply to any allegations in Plaintiffs' complaint. "Equity will not enjoin a crime" (especially if no crime has been sufficiently alleged, and the Plaintiffs have not come anywhere close to alleging even 50% of the elements of any crime defined by or under 18 U.S.C. §1028). Federal Courts should allow General Demurrers such as a permitted in California and were common throughout Anglo-American history.

3. **Pennsylvania Privacy Acts (74 Pa. Stat. Ann. §201). There is no suggestion of why principles of choice of law under *Erie* or any other doctrine would suggest that Defendants Orly Taitz and Defend Our Freedoms Foundation should be subject to the laws of the State of Pennsylvania. Plaintiffs, in their August 26,**

2009, Response to the Court's Order(s) to Show Cause, wisely omit any discussion of the facts which they might allege giving rise to Pennsylvania jurisdiction over them under this statute: they have alleged no facts, they can allege no facts, there is no case.

74 Pa. Stat. Ann. §201 is a state criminal statute enacted in a state, which, as this Court as well aware, may not have any personal jurisdiction over Defendants Orly Taitz or the Defend Our Freedoms Foundation, whatsoever. Defendants accordingly reiterate what they stated above: the Court on June 26, 2009, ordered the Plaintiffs to show cause why their complaint should not be dismissed for want of personal jurisdiction and venue. The diversionary excuses given in Plaintiffs' , Complaint, multiple repetitive applications for TRO and Preliminary Injunction, and August 26, 2009, Response to Order to Show Cause for their utter failure to establish that personal jurisdiction and venue over these Defendants was caused by Defendants' threats (which even described in Plaintiffs' August 26, 2009 Response and supporting affidavits), are hardly credible as programs of witness intimidation even if they had ever been made, which they were not) are at best appallingly weak (even if they were true, which Defendants categorically deny). Plaintiffs have lodged their charges against Defendants Edgar Hale and Linda Sue Belcher aka Linda Starr only.

Defendants Orly Taitz and Defend Our Freedoms Foundation were not directly accused of having made any of these threats. The Court should release these Defendants from any further potential liability or exposure under the Plaintiffs' Complaint immediately.

Defendants herein further submit that, upon information and belief based on information available to Dr. Orly Taitz, it is more than likely that these alleged threats as described in the Plaintiffs' Response (and the supporting airy affidavits) are nothing more than the Plaintiffs' downright disingenuous fabrications, evidenced by and consisting as they do of letters from witnesses whose names and addresses were expunged, thus depriving the Defendants of their Fifth Amendment right to confrontation of witnesses, especially witnesses alleging criminal or quasi-criminal conduct against them.

However, the more important point is that "equity will not enjoin a crime" and this is a criminal statute with no provisions for civil remedies or equitable injunctive relief WHATSOEVER. Accordingly, the mere citation of this provision is frivolous. Moreover, even IF it applied to the present case, the Pennsylvania statute in question contains by its very terms a complete and absolute defense to Plaintiffs' attempts to "charge" or "prosecute" the Defendants under 74 Pa. Stat. Ann. §201(e) [and (f)(2)], namely, the subsection (e) judicial documentary source of all personal information provided or allegedly provided by Defendants regarding Lisa Liberi. This second (and final) **highlighted** statute in Plaintiffs' grapeshot collection of authorities states in full:

> § 201. Privacy of Social Security numbers
> (a) GENERAL RULE.-- A person or entity or State agency or political subdivision shall not do any of the following:
> (1) Publicly post or publicly display in any manner an individual's Social Security number. "Publicly post" or "publicly display" means to intentionally communicate or otherwise make available to the general public.
> (2) Print an individual's Social Security number on any card required for the individual to access products or services provided by the person, entity or State agency or political subdivision.
> (3) Require an individual to transmit his or her Social Security

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Reply*     12
*In Opposition to Plaintiffs' August 26, 2009, Response to Judge Robreno's*
*Order(s) to Show Cause*

number over the Internet unless the connection is secure or the Social Security number is encrypted.

(4) Require an individual to use his or her Social Security number to access an Internet website unless a password or unique personal identification number or other authentication device is also required to access the website.

(5) Print an individual's Social Security number on any materials that are mailed to the individual unless Federal or State law requires the Social Security number to be on the document to be mailed. Notwithstanding this provision, Social Security numbers may be included in applications and forms sent by mail, including documents sent as part of an application or enrollment process or to establish, amend or terminate an account, contract or policy or to confirm the accuracy of the Social Security number. A Social Security number that is permitted to be mailed under this section may not be printed, in whole or in part, on a postcard or other mailer not requiring an envelope, or visible on the envelope or without the envelope having been opened.

(6) Disclose in any manner, except to the agency issuing the license, the Social Security number of an individual who applies for a recreational license. For the purposes of this paragraph, a "recreational license" means a license issued pursuant to 30 Pa.C.S. (relating to fish) or 34 Pa.C.S. (relating to game).

(b) APPLICABILITY.-- Except as provided in subsection (c), subsection (a) applies only to the use of Social Security numbers on or after the effective date of this section.

(c) EXCEPTION.--

(1) A person or entity, not including a State agency or political subdivision, that has used, prior to the effective date of this section, an individual's Social Security number in a manner inconsistent with subsection (a) may continue using that individual's Social Security number in that manner on or after the effective date of this section if all of the following conditions are met:

(i) The use of the Social Security number is continuous. If the use is stopped for any reason, subsection (a) shall apply.

(ii) The individual is provided an annual disclosure, commencing in the year after the effective date of this section, that informs the individual that he or she has the right to stop the use of his or her Social Security number in a manner prohibited by subsection (a).

(2) An individual who receives an annual disclosure under paragraph (1) has the right to stop the use of his or her Social Security

number in a manner prohibited by subsection (a) and must exercise that right by submitting a written request to the person or entity. The person or entity shall discontinue use of the individual's Social Security number within 30 days of the receipt of the request. There shall be no fee or charge for complying with the request. A person or entity shall not deny services to an individual because the individual makes a written request pursuant to this subsection.

(d) CONSTRUCTION.-- This section shall not be construed to prevent the collection, use or release of a Social Security number as required by Federal or State law or the use of a Social Security number for internal verification, administrative purposes or for law enforcement investigations.

**(e) UNIFIED JUDICIAL SYSTEM DOCUMENTS.-- This section does not apply to a document that originated with or is filed with, recorded in or is maintained by any court component or part of the unified judicial system.**

(f) GOVERNMENT DOCUMENTS.-- This section does not apply to any document that:

(1) is required by law to be open to the public; and

(2) **originates with or is filed, recorded or maintained by any government agency, instrumentality or taxing authority.**

(g) PENALTY.-- Actions in violation of this act shall be deemed a summary offense and shall be punishable by a fine of not less than $ 50 and not more than $ 500 and, for every second or subsequent violation, by a fine of not less than $ 500 and not more than $ 5,000. Fines under this section shall be distributed equally between the Crime Victim's Compensation Fund administered by the Pennsylvania Commission on Crime and Delinquency and the Office of Attorney General for future identity theft prevention.

Bold Emphasis Added.

4.      Jumping back to California on the opposite coast, for whatever reason

and logic Pennsylvania intruded in this grab back of irrelevant statutes, Plaintiffs

have also cited (but not in their August 26, 2009 response) **California Business &**

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Reply*      14
*In Opposition to Plaintiffs' August 26, 2009, Response to Judge Robreno's*
*Order(s) to Show Cause*

**Professions Code §22577(a),** which appears not to specify any civil actions, penalties, or remedies at all, but merely sets forth state policy(?):

§ 22577. Definitions

For the purposes of this chapter, the following definitions apply:
(a) The term "personally identifiable information" means individually identifiable information about an individual consumer collected online by the operator from that individual and maintained by the operator in an accessible form, including any of the following:
(1) A first and last name.
(2) A home or other physical address, including street name and name of a city or town.
(3) An e-mail address.
(4) A telephone number.
(5) A social security number.
(6) Any other identifier that permits the physical or online contacting of a specific individual.
(7) Information concerning a user that the Web site or online service collects online from the user and maintains in personally identifiable form in combination with an identifier described in this subdivision.
(b) The term "conspicuously post" with respect to a privacy policy shall include posting the privacy policy through any of the following:
(1) A Web page on which the actual privacy policy is posted if the Web page is the homepage or first significant page after entering the Web site.
(2) An icon that hyperlinks to a Web page on which the actual privacy policy is posted, if the icon is located on the homepage or the first significant page after entering the Web site, and if the icon contains the word "privacy." The icon shall also use a color that contrasts with the background color of the Web page or is otherwise distinguishable.
(3) A text link that hyperlinks to a Web page on which the actual privacy policy is posted, if the text link is located on the homepage or first significant page after entering the Web site, and if the text link does one of the following:
(A) Includes the word "privacy."
(B) Is written in capital letters equal to or greater in size than the surrounding text.
(C) Is written in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks that call attention to the language.
(4) Any other functional hyperlink that is so displayed that a reasonable person would notice it.
(5) In the case of an online service, any other reasonably accessible means of making the privacy policy available for consumers of the online service.
(c) The term "operator" means any person or entity that owns a Web site located on the Internet or an online service that collects and maintains

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Reply In Opposition to Plaintiffs' August 26, 2009, Response to Judge Robreno's Order(s) to Show Cause*

15

personally identifiable information from a consumer residing in California who uses or visits the Web site or online service if the Web site or online service is operated for commercial purposes. It does not include any third party that operates, hosts, or manages, but does not own, a Web site or online service on the owner's behalf or by processing information on behalf of the owner.

(d) The term "consumer" means any individual who seeks or acquires, by purchase or lease, any goods, services, money, or credit for personal, family, or household purposes.

Quite simply, there appear to be no statutory consequences to violation of this statute, and hence no grounds for relief stated thereunder:

> § 22576. Violations
> An operator of a commercial Web site or online service that collects personally identifiable information through the Web site or online service from individual consumers who use or visit the commercial Web site or online service and who reside in California shall be in violation of this section if the operator fails to comply with the provisions of Section 22575 or with the provisions of its posted privacy policy in either of the following ways:
> (a) Knowingly and willfully.
> (b) Negligently and materially.

Of course it can and should be noted that Defendants do not operate a commercial website, so even if these sections provided a civil action or remedy, it would have no application to the present case or the present plaintiffs. Once again, there is no possibility of any personal or subject matter jurisdiction in the Eastern District of Pennsylvania, the Western District (or Nothern District) of Texas, or the Central District of California.

5.  Continuing the list of statutes Plaintiffs have tossed Defendants' (and the Court's) way, consider **18 U.S.C. §§2510-22.** Astounding only in its complete irrelevance to any of Plaintiffs' actual allegations against Defendants, which on the whole are already astounding by their complete lack of content or truth, this

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Reply*     16
*In Opposition to Plaintiffs' August 26, 2009, Response to Judge Robreno's*
*Order(s) to Show Cause*

happens to be a Federal criminal statute against wiretapping. **That's right, 18**

**U.S.C. §2510 covers "electronic interception of oral communications," and its**

**states in full:**

§ 2510. Definitions

As used in this chapter [18 USCS §§ 2510 et seq.]--

(1) "wire communication" means any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception (including the use of such connection in a switching station) furnished or operated by any person engaged in providing or operating such facilities for the transmission of interstate or foreign communications or communications affecting interstate or foreign commerce;

(2) "oral communication" means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include any electronic communication;

(3) "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States;

(4) "intercept" means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device.[;]

(5) "electronic, mechanical, or other device" means any device or apparatus which can be used to intercept a wire, oral, or electronic communication other than--

(a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business; or (ii) being used by a provider of wire or electronic communication service in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties;

(b) a hearing aid or similar device being used to correct subnormal hearing to not better than normal;

(6) "person" means any employee, or agent of the United States or

any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation;

(7) "Investigative or law enforcement officer" means any officer of the United States or of a State or political subdivision thereof, who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter [18 USCS §§ 2510 et seq.], and any attorney authorized by law to prosecute or participate in the prosecution of such offenses;

(8) "contents", when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication;

(9) "Judge of competent jurisdiction" means--

(a) a judge of a United States district court or a United States court of appeals; and

(b) a judge of any court of general criminal jurisdiction of a State who is authorized by a statute of that State to enter orders authorizing interceptions of wire, oral, or electronic communications;

(10) "communication common carrier" has the meaning given that term in section 3 of the Communications Act of 1934 [47 USCS § 153];

(11) "aggrieved person" means a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed;

(12) "electronic communication" means any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce, but does not include--

(A) any wire or oral communication;

(B) any communication made through a tone-only paging device;

(C) any communication from a tracking device (as defined in section 3117 of this title [18 USCS § 3117]); or

(D) electronic funds transfer information stored by a financial institution in a communications system used for the electronic storage and transfer of funds;

(13) "user" means any person or entity who--

(A) uses an electronic communication service; and

(B) is duly authorized by the provider of such service to engage in such use;

(14) "electronic communications system" means any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications;

(15) "electronic communication service" means any service which

authorizing an interception under this chapter [18 USCS §§ 2510 et seq.], a State statute, or the Foreign Intelligence Surveillance Act of 1978 (50 U.S.C. 1801 et seq.) or authorizing use of a pen register or a trap and trace device under chapter 206 [18 USCS §§ 3121 et seq.] or a State statute finds that a telecommunications carrier has failed to comply with the requirements of the Communications Assistance for Law Enforcement Act [47 USCS §§ 1001 et seq.], the court may, in accordance with section 108 of such Act [47 USCS § 1007], direct that the carrier comply forthwith and may direct that a provider of support services to the carrier or the manufacturer of the carrier's transmission or switching equipment furnish forthwith modifications necessary for the carrier to comply.

(b) Enforcement upon application by Attorney General. The Attorney General may, in a civil action in the appropriate United States district court, obtain an order, in accordance with section 108 of the Communications Assistance for Law Enforcement Act [47 USCS § 1007], directing that a telecommunications carrier, a manufacturer of telecommunications transmission or switching equipment, or a provider of telecommunications support services comply with such Act [47 USCS §§ 1001 et seq.].

(c) Civil penalty.

  (1) In general. A court issuing an order under this section against a telecommunications carrier, a manufacturer of telecommunications transmission or switching equipment, or a provider of telecommunications support services may impose a civil penalty of up to $ 10,000 per day for each day in violation after the issuance of the order or after such future date as the court may specify.

  (2) Considerations. In determining whether to impose a civil penalty and in determining its amount, the court shall take into account--

    (A) the nature, circumstances, and extent of the violation;

    (B) the violator's ability to pay, the violator's good faith efforts to comply in a timely manner, any effect on the violator's ability to continue to do business, the degree of culpability, and the length of any delay in undertaking efforts to comply; and

    (C) such other matters as justice may require.

(d) Definitions. As used in this section, the terms defined in section 102 of the Communications Assistance for Law Enforcement Act [47 USCS § 1001] have the meanings provided, respectively, in such section.

Indeed, ALL of the allegations of the Plaintiffs in this case are and remain

patently frivolous and disconnected from the very authorities they themselves cite. The

(21) "computer trespasser"--

(A) means a person who accesses a protected computer without authorization and thus has no reasonable expectation of privacy in any communication transmitted to, through, or from the protected computer; and

(B) does not include a person known by the owner or operator of the protected computer to have an existing contractual relationship with the owner or operator of the protected computer for access to all or part of the protected computer.

It is not at all apparent what possible relevance 28 U.S.C. §2510 has to the present case, other than to Plaintiffs' mounting potential liability for sanctions.. By no stretch of imagination any of Plaintiffs' allegations even remotely fit or correspond to the statutes cited. THE BOTTOM LINE IS THAT, IN THE ABSENCE OF CAUSES OF ACTION, THERE CAN BE NEITHER PERSONAL NOR SUBJECT MATTER JURISDICTION. The burden of pleading cognizable causes of action, of reasonable grounds for injunctive relief, was on the Plaintiffs, and they have failed abysmally and totally to do so.

No allegations of wiretapping have been made against the Defendants in this case, nor are any allegations of imminent wiretapping likely to be credible. **18 U.S.C. §§2511-22** cover various other aspects of Federal wiretapping law, not one of which seems germane to any aspect of the present, admittedly "low tech" case or Defendants, who have neither been accused of manufacturing nor possessing wiretap equipment, to the best of their knowledge and belief. Title 18 U.S.C. §2522 does actually contain a civil penalty provision, but one which has ABSOLUTELY no application to the Plaintiffs OR the Defendants in this present case, whatsoever:

### 18 USCS § 2522

§ 2522. Enforcement of the Communications Assistance for Law Enforcement Act [47 USCS §§ 1001 et seq.]

(a) Enforcement by court issuing surveillance order. If a court

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Reply*      20
*In Opposition to Plaintiffs' August 26, 2009, Response to Judge Robreno's*
*Order(s) to Show Cause*

provides to users thereof the ability to send or receive wire or electronic communications;

(16) "readily accessible to the general public" means, with respect to a radio communication, that such communication is not--

(A) scrambled or encrypted;

(B) transmitted using modulation techniques whose essential parameters have been withheld from the public with the intention of preserving the privacy of such communication;

(C) carried on a subcarrier or other signal subsidiary to a radio transmission;

(D) transmitted over a communication system provided by a common carrier, unless the communication is a tone only paging system communication; or

(E) transmitted on frequencies allocated under part 25, subpart D, E, or F of part 74, or part 94 of the Rules of the Federal Communications Commission, unless, in the case of a communication transmitted on a frequency allocated under part 74 that is not exclusively allocated to broadcast auxiliary services, the communication is a two-way voice communication by radio;

(17) "electronic storage" means--

(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and

(B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication;

(18) "aural transfer" means a transfer containing the human voice at any point between and including the point of origin and the point of reception;

(19) "foreign intelligence information", for purposes of section 2517(6) of this title [18 USCS § 2517(6)], means--

(A) information, whether or not concerning a United States person, that relates to the ability of the United States to protect against--

(i) actual or potential attack or other grave hostile acts of a foreign power or an agent of a foreign power;

(ii) sabotage or international terrorism by a foreign power or an agent of a foreign power; or

(iii) clandestine intelligence activities by an intelligence service or network of a foreign power or by an agent of a foreign power; or

(B) information, whether or not concerning a United States person, with respect to a foreign power or foreign territory that relates to--

(i) the national defense or the security of the United States; or

(ii) the conduct of the foreign affairs of the United States;

(20) "protected computer" has the meaning set forth in section 1030 [18 USCS § 1030]; and

Plaintiffs cannot connect the dots between their statutory allegations, except to observe that they seem to outline an extremely vexatious lawsuit filed solely for the purposes of harassment, without any of the legal background research of fact collection required by Rule 11 of the Federal Rules of Civil Procedure.

6.      The Court is probably by this time aggravated, as are the Defendants moving herein for final and immediate dismissal of the Plaintiffs' Application entire legal action against the defendants, as it seems necessary to complete the citation and discussion of all properly cited statutory bases for the Plaintiffs' claims, even if these properly cited bases are completely IMPROPER sources of authority for the action lodged and the injunctive relief requested.   **18 U.S.C. §§2701-11** is just another Federal criminal statute with no relevant civil penalties:

### 18 USCS § 2701

Review expert commentary from The National Institute for Trial Advocacy preceding 18 USCS § 2701 (relating to computer records).

§ 2701. Unlawful access to stored communications

(a) Offense. Except as provided in subsection (c) of this section whoever--
  (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or
  (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section.

(b) Punishment. The punishment for an offense under subsection (a) of this section is--
  (1) if the offense is committed for purposes of commercial advantage, malicious destruction or damage, or private commercial gain, or in furtherance of any criminal or tortious act in violation of the Constitution or laws of the United States or any State--
    (A) a fine under this title or imprisonment for not more than 5 years, or both, in the case of a first offense under this subparagraph; and
    (B) a fine under this title or imprisonment for not more than 10 years, or

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Reply*      22
*In Opposition to Plaintiffs' August 26, 2009, Response to Judge Robreno's*
*Order(s) to Show Cause*

both, for any subsequent offense under this subparagraph; and
   (2) in any other case--
    (A) a fine under this title or imprisonment for not more than 1 year or
both, in the case of a first offense under this paragraph; and
    (B) a fine under this title or imprisonment for not more than 5 years, or
both, in the case of an offense under this subparagraph that occurs after a
conviction of another offense under this section.
(c) Exceptions. Subsection (a) of this section does not apply with respect to
conduct authorized--
   (1) by the person or entity providing a wire or electronic communications
service;
   (2) by a user of that service with respect to a communication of or
intended for that user; or
   (3) in section 2703, 2704 or 2518 of this title [18 USCS § 2703 etc.].

7.     The final statute specifically cited ***anywhere in the record*** in support

of Plaintiffs' complaint for injunctive relief is 47 U.S.C. §223(a)(1)(C) which concerns

cyber-harassment---a topic which, again, seems so alien and unrelated even to the

Plaintiffs' flimsy factual allegations as to defy credulity that it was ever mentioned in

this case. The cited statute provides, in whole:

**47 USCS § 223**

§ 223. Obscene or harassing telephone calls in the District of Columbia or in
interstate or foreign communications
(a) Prohibited acts generally. Whoever--
   (1) in interstate or foreign communications--
   (A) by means of a telecommunications device knowingly--
    (i) makes, creates, or solicits, and
    (ii) initiates the transmission of,
  any comment, request, suggestion, proposal, image, or other
communication which is obscene or child pornography, with intent to annoy,
abuse, threaten, or harass another person;
   (B) by means of a telecommunications device knowingly--
    (i) makes, creates, or solicits, and
    (ii) initiates the transmission of,
  any comment, request, suggestion, proposal, image, or other
communication which is obscene or child pornography, knowing that the
recipient of the communication is under 18 years of age, regardless of
whether the maker of such communication placed the call or initiated the
communication;
   (C) makes a telephone call or utilizes a telecommunications device,
whether or not conversation or communication ensues, without disclosing

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Reply*    23
*In Opposition to Plaintiffs' August 26, 2009, Response to Judge Robreno's*
*Order(s) to Show Cause*

his identity and with intent to annoy, abuse, threaten, or harass any person at the called number or who receives the communications;

(D) makes or causes the telephone of another repeatedly or continuously to ring, with intent to harass any person at the called number; or

(E) makes repeated telephone calls or repeatedly initiates communication with a telecommunications device, during which conversation or communication ensues, solely to harass any person at the called number or who receives the communication; or

(2) knowingly permits any telecommunications facility under his control to be used for any activity prohibited by paragraph (1) with the intent that it be used for such activity, shall be fined under title 18, United States Code, or imprisoned not more than two years, or both.

(b) Prohibited acts for commercial purposes; defense to prosecution.

(1) Whoever knowingly--

(A) within the United States, by means of telephone, makes (directly or by recording device) any obscene communication for commercial purposes to any person, regardless of whether the maker of such communication placed the call; or

(B) permits any telephone facility under such person's control to be used for an activity prohibited by subparagraph (A), shall be fined in accordance with title 18, United States Code, or imprisoned not more than two years, or both.

(2) Whoever knowingly--

(A) within the United States, by means of telephone, makes (directly or by recording device) any indecent communication for commercial purposes which is available to any person under 18 years of age or to any other person without that person's consent, regardless of whether the maker of such communication placed the call; or

(B) permits any telephone facility under such person's control to be used for an activity prohibited by subparagraph (A), shall be fined not more than $ 50,000 or imprisoned not more than six months, or both.

(3) It is a defense to prosecution under paragraph (2) of this subsection that the defendant restricted access to the prohibited communication to persons 18 years of age or older in accordance with subsection (c) of this section and with such procedures as the Commission may prescribe by regulation.

(4) In addition to the penalties under paragraph (1), whoever, within the United States, intentionally violates paragraph (1) or (2) shall be subject to a fine of not more than $ 50,000 for each violation. For purposes of this paragraph, each day of violation shall constitute a separate violation.

(5) (A) In addition to the penalties under paragraphs (1), (2), and (5), whoever, within the United States, violates paragraph (1) or (2) shall be subject to a civil fine of not more than $ 50,000 for each violation. For purposes of this paragraph, each day of violation shall constitute a separate violation.

(B) A fine under this paragraph may be assessed either--

(i) by a court, pursuant to civil action by the Commission or any attorney employed by the Commission who is designated by the Commission

the intent that it be used for such activity, shall be fined under title 18, United States Code, or imprisoned not more than two years, or both.

(e) Defenses. In addition to any other defenses available by law:

(1) No person shall be held to have violated subsection (a) or (d) solely for providing access or connection to or from a facility, system, or network not under that person's control, including transmission, downloading, intermediate storage, access software, or other related capabilities that are incidental to providing such access or connection that does not include the creation of the content of the communication.

(2) The defenses provided by paragraph (1) of this subsection shall not be applicable to a person who is a conspirator with an entity actively involved in the creation or knowing distribution of communications that violate this section, or who knowingly advertises the availability of such communications.

(3) The defenses provided in paragraph (1) of this subsection shall not be applicable to a person who provides access or connection to a facility, system, or network engaged in the violation of this section that is owned or controlled by such person.

(4) No employer shall be held liable under this section for the actions of an employee or agent unless the employee's or agent's conduct is within the scope of his or her employment or agency and the employer (A) having knowledge of such conduct, authorizes or ratifies such conduct, or (B) recklessly disregards such conduct.

(5) It is a defense to a prosecution under subsection (a)(1)(B) or (d), or under subsection (a)(2) with respect to the use of a facility for an activity under subsection (a)(1)(B) that a person--

(A) has taken, in good faith, reasonable, effective, and appropriate actions under the circumstances to restrict or prevent access by minors to a communication specified in such subsections, which may involve any appropriate measures to restrict minors from such communications, including any method which is feasible under available technology; or

(B) has restricted access to such communication by requiring use of a verified credit card, debit account, adult access code, or adult personal identification number.

(6) The Commission may describe measures which are reasonable, effective, and appropriate to restrict access to prohibited communications under subsection (d). Nothing in this section authorizes the Commission to enforce, or is intended to provide the Commission with the authority to approve, sanction, or permit, the use of such measures. The Commission shall have no enforcement authority over the failure to utilize such measures. The Commission shall not endorse specific products relating to such measures. The use of such measures shall be admitted as evidence of good faith efforts for purposes of paragraph (5) in any action arising under subsection (d). Nothing in this section shall be construed to treat interactive computer services as common carriers or telecommunications carriers.

(f) Violations of law required; commercial entities, nonprofit libraries, or institutions of higher education.

(1) No cause of action may be brought in any court or administrative

for such purposes, or

(ii) by the Commission after appropriate administrative proceedings.

(6) The Attorney General may bring a suit in the appropriate district court of the United States to enjoin any act or practice which violates paragraph (1) or (2). An injunction may be granted in accordance with the Federal Rules of Civil Procedure.

(c) Restriction on access to subscribers by common carriers; judicial remedies respecting restrictions.

(1) A common carrier within the District of Columbia or within any State, or in interstate or foreign commerce, shall not, to the extent technically feasible, provide access to a communication specified in subsection (b) from the telephone of any subscriber who has not previously requested in writing the carrier to provide access to such communication if the carrier collects from subscribers an identifiable charge for such communication that the carrier remits, in whole or in part, to the provider of such communication.

(2) Except as provided in paragraph (3), no cause of action may be brought in any court or administrative agency against any common carrier, or any of its affiliates, including their officers, directors, employees, agents, or authorized representatives on account of--

(A) any action which the carrier demonstrates was taken in good faith to restrict access pursuant to paragraph (1) of this subsection; or

(B) any access permitted--

(i) in good faith reliance upon the lack of any representation by a provider of communications that communications provided by that provider are communications specified in subsection (b), or

(ii) because a specific representation by the provider did not allow the carrier, acting in good faith, a sufficient period to restrict access to communications described in subsection (b).

(3) Notwithstanding paragraph (2) of this subsection, a provider of communications services to which subscribers are denied access pursuant to paragraph (1) of this subsection may bring an action for a declaratory judgment or similar action in a court. Any such action shall be limited to the question of whether the communications which the provider seeks to provide fall within the category of communications to which the carrier will provide access only to subscribers who have previously requested such access.

(d) Sending or displaying offensive material to persons under 18. Whoever--

(1) in interstate or foreign communications knowingly--

(A) uses an interactive computer service to send to a specific person or persons under 18 years of age, or

(B) uses any interactive computer service to display in a manner available to a person under 18 years of age,

any comment, request, suggestion, proposal, image, or other communication that is obscene or child pornography, regardless of whether the user of such service placed the call or initiated the communication; or

(2) knowingly permits any telecommunications facility under such person's control to be used for an activity prohibited by paragraph (1) with

agency against any person on account of any activity that is not in violation of any law punishable by criminal or civil penalty, and that the person has taken in good faith to implement a defense authorized under this section or otherwise to restrict or prevent the transmission of, or access to, a communication specified in this section.

(2) No State or local government may impose any liability for commercial activities or actions by commercial entities, nonprofit libraries, or institutions of higher education in connection with an activity or action described in subsection (a)(2) or (d) that is inconsistent with the treatment of those activities or actions under this section: Provided, however, That nothing herein shall preclude any State or local government from enacting and enforcing complementary oversight, liability, and regulatory systems, procedures, and requirements, so long as such systems, procedures, and requirements govern only intrastate services and do not result in the imposition of inconsistent rights, duties or obligations on the provision of interstate services. Nothing in this subsection shall preclude any State or local government from governing conduct not covered by this section.

(g) Application and enforcement of other Federal law. Nothing in subsection (a), (d), (e), or (f) or in the defenses to prosecution under subsection (a) or (d) shall be construed to affect or limit the application or enforcement of any other Federal law.

(h) Definitions. For purposes of this section--

(1) The use of the term "telecommunications device" in this section--

(A) shall not impose new obligations on broadcasting station licensees and cable operators covered by obscenity and indecency provisions elsewhere in this Act [47 USCS §§ 151 et seq.];

(B) does not include an interactive computer service; and

(C) in the case of subparagraph (C) of subsection (a)(1), includes any device or software that can be used to originate telecommunications or other types of communications that are transmitted, in whole or in part, by the Internet (as such term is defined in section 1104 of the Internet Tax Freedom Act (47 U.S.C. 151 note)).

(2) The term "interactive computer service" has the meaning provided in section 230(f)(2) [47 USCS § 230(f)(2)].

(3) The term "access software" means software (including client or server software) or enabling tools that do not create or provide the content of the communication but that allow a user to do any one or more of the following:

(A) filter, screen, allow, or disallow content;

(B) pick, choose, analyze, or digest content; or

(C) transmit, receive, display, forward, cache, search, subset, organize, reorganize, or translate content.

(4) The term "institution of higher education" has the meaning provided in section 101 of the Higher Education Act of 1965 [20 USCS § 1001].

(5) The term "library" means a library eligible for participation in State-based plans for funds under title III of the Library Services and Construction Act (20 U.S.C. 355e et seq.).

Bold emphasis on provisions relating to civil actions added.

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Reply In Opposition to Plaintiffs' August 26, 2009, Response to Judge Robreno's Order(s) to Show Cause*

None of the civil actions cited above have ANY relationship to the facts of the present litigation. The court should specifically note that ONLY the attorney general of the United States is authorized to bring equitable actions for injunction under the above- sections..... There are at least a half-dozen other statutes cited by name only, but the story does not change. Plaintiffs have imposed a huge burden on the Defendants to contest their frivolous allegations brought under non-existent legal grounds for non-existent equitable relief from non-existent injuries.

## INCOMPETENT, IMMATERIAL, and IRRELEVANT EVIDENCE

It is consistent but not relevant that the affidavits submitted in support of Plaintiffs' Response should be themselves totally stricken even if grounds for legal or equitable relief had been roughed out in Plaintiffs' complaint OR application for Preliminary Injunction. The Affidavit of Matthew N. Harris, for example, although long and windy (Exhibit 23), is incompetent as evidence because it is not based on personal knowledge of any of the MATERIAL facts.

The competence of this Austell, Georgia (?!?!?)-based "college student and radio host with Blog Talk Radio" to testify against the undersigned Defendant and her foundation is summarized in one sentence, "I am also familiar and received a copy of Dossier #6, which was created and sent to me by Orly Taitz." Harris' affidavit is based primarily on hearsay and/or conjecture or unwarranted lay inference and contains little if any testimony or information based on personal knowledge (except that he received Dossier #6 for example, as he states in ¶1 on page 1 of his affidavit, and that he was "shocked to receive something like this from an Attorney" as he

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Reply*     28
*In Opposition to Plaintiffs' August 26, 2009, Response to Judge Robreno's*
*Order(s) to Show Cause*

states in ¶14 on page 5 of his affidavit). The mere submission of an affidavit such as this in support of any fact shows that Plaintiffs are not proceeding in good faith.

## **CONCLUSION & PRAYER FOR RELIEF**

Accordingly, the Plaintiffs' Response is insufficient in every way, shape, and form. The Plaintiffs have not made a plausible case for connections between any of the Defendants alleged wrongs and the Plaintiffs' alleged injuries (whatever those injuries really are, if anything---none are alleged). Under the new and much more exacting and stringent standard of pleading of conspiracies and other torts (statutory or common law) set forth by *Twombly v. Bell Atlantic*, plaintiffs' complaint must be summarily dismissed. 550 U.S. 544; 127 S. Ct. 1955 at 1964-65; 167 L.Ed.2d 929 (2007). Plaintiffs have had ample opportunity to amend and present competent evidence in support of their claim for relief. They have articulated no causes of action. They have shown no threats of injury. They have nothing.

Where there are no causes of action, there can be neither personal nor subject matter jurisdiction. Where there are no causes of action, there is nothing to severe, bifurcate, trifurcate, or transfer to Texas and California. In the interests of equitable justice to the Defendants and judicial economy, it is TIME TO DISMISS THIS CASE ON 12(b)(6) grounds for failure to state a claim upon which relief can be granted, or at the very least on 12(b)(1) grounds because where there are no adequately stated causes of action there is by definition no jurisdiction.

Because the Plaintiffs have supplemented their frivolous complaint with multiple frivolous applications for tro/preliminary injunction plus this content-free 403 page Response on August 26, 2009, even after receiving the Court's June 26, 2009, Order to

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Reply*     29
*In Opposition to Plaintiffs' August 26, 2009, Response to Judge Robreno's*
*Order(s) to Show Cause*

Show Cause, the minimum sanction to be imposed is that of dismissal with prejudice, but other sanctions under Rule 11(b) may be warranted. Defendants do not know why this Court has felt compelled to give Berg, Liberi, Ostella, and Adams, so many opportunities to "get it right". But when the Defendants submit a 43 page response to an order to show cause and fail to refer even once to any identifiable, substantive, legal or equitable cause of action supported by specific facts, in response to this Court's Order to Show cause, it is time to "shut them down."

Plaintiffs' unsupported allegations on pages 6-8 in support of personal jurisdiction over Taitz and DOFF are quite simply derisible. All the cases cited are general jurisdictional matters and do not address the substance of Plaintiffs' Complaint or subsequent applications and motions. So far as Defendants are aware, corresponding (by regular or electronic mail) with residents of any particular jurisdiction has never been held sufficient grounds to uphold jurisdiction against any correspondent. If it is true that Dr. Orly Taitz represents 4 clients (out of a large list of clients nationwide) in a suit now in the Southern Division of the Central District of **California, in Santa Ana**, that is a perfect example of how personal jurisdiction works: Dr. Taitz' clients, with whom she has a contract of representation, MAY have an argument for single contract personal jurisdiction for any suit concerning that representation only in Pennsylvania, **(there was no representation in Pennsylvania, whatsoever)**.,but such limited contacts do not amount to "purposeful availment" of the jurisdiction of the Pennsylvania Courts for purposes of a wildly unrelated lawsuit such as this.

When Plaintiffs feel it necessary, on page 7 of their Response, to write that, "Taitz through DOFF is calling for a recall of United States Senator Arlen Specter for the

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Reply*      30
*In Opposition to Plaintiffs' August 26, 2009, Response to Judge Robreno's*
*Order(s) to Show Cause*

Commonwealth of Pennsylvania with an Office in Philadelphia", it is DEFINITELY an admission that there is NO BASIS FOR PERSONAL JURISDICTION. If Plaintiffs are suggesting that DOFF has an office in Philadelphia, well, they are lying. If Plaintiffs are suggesting that Arlen Specter has an office in Philadelphia, well, they are probably right, but Defendants' contacts with Pennsylvania are so slight that the undersigned Defendant Dr. Orly Taitz is simply unaware and unable to comment. If the defendant were to call for change of rule and new leadership and voting out of office of Fidel Castro or Hugo Chavez or Kim Jun Il, that does not mean that the defendant has contacts with those nations and that she availed herself to jurisdiction of those countries. The plaintiffs have not shown any shred of evidence of the defendants availing themselves to the jurisdiction of the state of Pennsylvania. There is no shred of evidence pointing to personal jurisdiction, or subject matter jurisdiction or any merits of the case. The plaintiffs respectfully motion to have the whole case dismissed with prejudice.

Respectfully submitted,

Thursday, September 24, 2009

By:_____
Dr. Orly Taitz, *pro se*, individually and a/k/a
Law Offices of Orly Taitz,
WWW.ORLYTAITZESQ.COM,
a/k/a ORLY TAITZ, INC.
Defendant, *in propia persona* and on behalf
of Defend Our Freedoms Foundation, Inc..
Dr. Orly Taitz, President,
29839 S. Margarita Pkwy
Rancho Santa Margarita Ca 92688
Telephone:    (949) 683-5411
Facsimile:    (949) 766-7036
E-Mail: dr_taitz @ yahoo.com

## CERTIFICATE OF SERVICE

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Reply*    31
*In Opposition to Plaintiffs' August 26, 2009, Response to Judge Robreno's*
*Order(s) to Show Cause*

A true and correct copy of the above-and foregoing Defendants' Reply in Opposition to Plaintiffs' August 26, 2009, Response to Judge Robreno's Order(s) to show cause was submitted by Defendant Dr. Orly Taitz for herself and on behalf of Defend our Freedoms Foundations, Inc, was served on Friday September 24, 2009, by facsimile transmission and FedEx overnight delivery upon the attorney of record for all the plaintiffs:

Law Offices of
PHILIP J. BERG, Esquire
555 Andorra Glen Court, Suite 12
Lafayette Hill, Pennsylvania 19444-2531

Telecopier (Facsimile): 610-834-7659
E-mail: philjberg@gmail.com

By:_____
Dr. Orly Taitz, *pro se*
Defendant, *in propia persona* and (as President and General Counsel) on behalf of Defend Our Freedoms Foundation, Inc..
29839 Santa Margarita Parkway
Rancho Santa Margarita Ca 92688
Telephone:     (949) 683-5411
Facsimile:      (949) 766-7036

Commonwealth of Pennsylvania with an Office in Philadelphia", it is DEFINITELY an admission that there is NO BASIS FOR PERSONAL JURISDICTION. If Plaintiffs are suggesting that DOFF has an office in Philadelphia, well, they are lying. If Plaintiffs are suggesting that Arlen Specter has an office in Philadelphia, well, they are probably right, but Defendants' contacts with Pennsylvania are so slight that the undersigned Defendant Dr. Orly Taitz is simply unaware and unable to comment. If the defendant were to call for change of rule and new leadership and voting out of office of Fidel Castro or Hugo Chavez or Kim Jun Il, that does not mean that the defendant has contacts with those nations and that she availed herself to jurisdiction of those countries. The plaintiffs have not shown any shred of evidence of the defendants availing themselves to the jurisdiction of the state of Pennsylvania. There is no shred of evidence pointing to personal jurisdiction, or subject matter jurisdiction or any merits of the case. The plaintiffs respectfully motion to have the whole case dismissed with prejudice.

Respectfully submitted,

Thursday, September 24, 2009

By:_____

Dr. Orly Taitz, *pro se,* individually and a/k/a
Law Offices of Orly Taitz,
WWW.ORLYTAITZESQ.COM,
a/k/a ORLY TAITZ, INC.
Defendant, *in propia persona* and on behalf
of Defend Our Freedoms Foundation, Inc..
Dr. Orly Taitz, President,
29839 S. Margarita Pkwy
Rancho Santa Margarita Ca 92688
Telephone:    (949) 683-5411
Facsimile:    (949) 766-7036
E-Mail: dr_taitz@yahoo.com

## CERTIFICATE OF SERVICE

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Reply*          31
*In Opposition to Plaintiffs' August 26, 2009, Response to Judge Robreno's*
*Order(s) to Show Cause*

A true and correct copy of the above-and foregoing Defendants' Reply in Opposition to Plaintiffs' August 26, 2009, Response to Judge Robreno's Order(s) to show cause was submitted by Defendant Dr. Orly Taitz for herself and on behalf of Defend our Freedoms Foundations, Inc, was served on Friday September 24, 2009, by facsimile transmission and FedEx overnight delivery upon the attorney of record for all the plaintiffs:

Law Offices of
PHILIP J. BERG, Esquire
555 Andorra Glen Court, Suite 12
Lafayette Hill, Pennsylvania 19444-2531

Telecopier (Facsimile): 610-834-7659
E-mail: philjberg@gmail.com

By: _____

Dr. Orly Taitz, *pro se*
Defendant, *in propia persona* and (as President and General Counsel) on behalf of Defend Our Freedoms Foundation, Inc.,
29839 Santa Margarita Parkway
Rancho Santa Margarita Ca 92688
Telephone:    (949) 683-5411
Facsimile:     (949) 766-7036

*Defendants Dr. Orly Taitz' and Defend our Freedoms Foundations' Reply*      32
*In Opposition to Plaintiffs' August 26, 2009, Response to Judge Robreno's*
*Order(s) to Show Cause*