IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

LISA LIBERI, et al            :  CIVIL ACTION NO. 09-1898
                              :
                              :
                              :
                              :
                              :
                              :
          v                   :
                              :
                              :
                              :
                              :
                              :
                              :
                              :
ORLY TAITZ, a/k/a             :
DR. ORLY TAITZ; a/k/a         :
a/k/a WWW.REPUBX.COM,         :  Philadelphia, Pennsylvania
a/k/a ORLY TAITZ, INC.,       :  June 25, 2009
et al,                        :  10:38 a.m.

- - -

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE EDUARDO C. ROBRENO
UNITED STATES DISTRICT JUDGE

- - -

APPEARANCES:

For the Plaintiffs:    PHILIP J. BERG, ESQUIRE
                       Law Offices of
                       Philip J. Berg
                       555 Andorra Glen Court
                       Suite 12
                       Lafayette Hill, PA  19444


For Defendant Taitz:   ORLY TAITZ, ESQUIRE
                       Law Offices of Orly Taitz
                       26302 La Paz
                       Suite 211
                       Mission Viejo, CA  92691

*Transcribers Limited*
*17 Rickland Drive*
*Sewell, NJ 08080*
856-589-6100 · 856-589-9005

2

```
1   APPEARANCES:              (Continued)

2   For Defendants          L. THEODORE HOPPE, JR., ESQUIRE
    Hale, Sankey,           Hoppe & Martin LLP
3   Belcher:                423 McFarlan Road
                            Suite 100
4                           Kennett Square, PA  19348

5

6   For Defendant           JAMES SUNDQUIST
    Sundquist:              551 Valley Road
7                           PMB #123
                            Montclair, NJ  07043

8                                - - -

9   Audio Operator:         Joseph Matkowski

10  Transcribed By:         Donna M. Anders

11                               - - -

12         Proceedings recorded by electronic sound
    recording; transcript produced by computer-aided
13  transcription service.

14                               - - -

15

16

17

18

19

20

21

22

23

24

25
```

3

1              (The following was heard in open court at
2    10:38 a.m.)
3              THE COURT:  Good morning.  Please be seated.
4              MR. BERG:  Good morning.
5              MR. HOPPE:  Good morning, Your Honor.
6              THE COURT:  Okay.  Let's call the roll and
7    see who is here.  For plaintiffs, Mr. Berg?
8              MR. BERG:  Yes, Philip Berg, Your Honor.
9              THE COURT:  Are you representing all of the
10   plaintiffs?
11             MR. BERG:  Yes, I am, Your Honor.
12             THE COURT:  Okay.  Very well.
13             MR. BERG:  Thank you.
14             THE COURT:  Mr. Hoppe?
15             MR. HOPPE:  Good morning, Your Honor.
16             THE COURT:  Good morning.
17             MR. HOPPE:  I'm Ted Hoppe, I'm representing
18   the Hale defendants, the Sankey defendants, and Ms.
19   Belcher, and I would enter my appearance for the
20   limited purpose of dealing with the jurisdictional
21   issues that are pending before the Court at this time.
22             THE COURT:  Very well, so acknowledged.  Ms.
23   Taitz?
24             MS. TAITZ:  Yes, yes, Your Honor, Orly Taitz,
25   and I'm representing myself, Yosef, and Defend Our

4

1    Freedoms.

2              THE COURT:   And?

3              MS. TAITZ:   Defend Our Freedoms Foundation.

4              THE COURT:   Okay.   Thank you.   Now, I

5    understand you're a member of the bar in California?

6              MS. TAITZ:   Yes, yes, I am.

7              THE COURT:   Okay.   In good standing?

8              MS. TAITZ:   Yes.

9              THE COURT:   Okay.   Thank you.   Now, Mr.

10   Sundquist, good morning.

11             MR. SUNDQUIST:   Good morning, Judge.   I'm

12   James Sundquist.   I'm one of the defendants.

13             THE COURT:   Okay.

14             MR. SUNDQUIST:   I'm representing myself, pro

15   se.

16             THE COURT:   Okay.   Very well, thank you.

17   Sir, who are you?

18             MR. LINCOLN:   I'm Dr. Taitz's law clerk.   My

19   name is Charles Lincoln.

20             THE COURT:   Okay.   Very well, thank you.

21   Okay.   Let's proceed, and let's see what we can achieve

22   here today.   Two things.

23             Number one, I want to try to, after having

24   reviewed the many submissions that have been made here,

25   I want to try to organize this matter, to try to

1  determine what is going on, who is who, and where did

2  this all happen?

3       Number two, at least from the Court's point

4  of view, I'm going to try not to add any fuel to this

5  raging fire, and maybe even lower the temperature a

6  little bit here.

7       These are serious allegations involving

8  reputation which are, of course, matters of

9  significance.  Also, the threats of default and the

10 significance of that potential loss of property is a

11 serious matter.

12      So, although I am sure that at the conclusion

13 of the hearing you won't be singing Kumbaya and holding

14 hands, we are at least going to try to create an

15 environment where an orderly and fair resolution of

16 this dispute, wherever that may lead us, can take

17 place.

18      So, I want to hear from each of you.  Where

19 you think the case is, and where do you think the case

20 should go, and how to get there.  So, Mr. Berg, why

21 don't we start with you?

22           MR. BERG:  Thank you, Your Honor.

23           (Pause in proceedings.)

24           MR. BERG:  May it please the Court?  First

25 off, Your Honor, just some housecleaning.  Ms. Taitz

6

1   stated she's also representing Defend Our Freedoms

2   Foundation, Inc, which is a corporation, so I don't

3   believe she can properly represent them, because she is

4   not --

5           THE COURT:  But, she's a lawyer, why can't

6   she represent a corporation?

7           MR. BERG:  She's not admitted to the bar

8   here, I don't believe.

9           THE COURT:  Well, she'll be admitted for

10  purposes of this hearing.

11          MR. BERG:  Thank you, Your Honor.  Also, when

12  Mr. Hoppe mentioned representing everyone, I'm not sure

13  if he's representing the Sankey Firm.  No one has ever

14  entered their appearance for the Sankey Firm.

15          MR. HOPPE:  That is correct, Your Honor, I

16  misspoke.  There is an issue and I was going to address

17  when I got to speak about the Sankey firm that I can do

18  now if you want, to explain what's going on with them,

19  or we could do it later.

20          THE COURT:  Well, why don't we let Mr. Berg

21  go first?

22          MR. HOPPE:  Okay.

23          THE COURT:  Then, you raise that issue and

24  we'll take that up.

25          MR. HOPPE:  Yes, sir.

7

1      THE COURT:  What do you mean, the issue, what

2  is the issue, Mr. Berg, with him?

3      MR. BERG:  I don't believe there is an issue.

4      THE COURT:  Oh, okay.

5      MR. BERG:  No one has entered their

6  appearance --

7      THE COURT:  Okay.

8      MR. BERG:  -- and I have taken the default

9  judgment against them.

10      THE COURT:  A default, you have entered a

11  default, not a judgment.

12      MR. BERG:  I've entered a default, yes.  The

13  default judgment has not been entered.

14      THE COURT:  Right.

15      MR. BERG:  I filed papers for the Court to

16  enter a default judgment.

17      THE COURT:  Right.  Okay.

18      MR. BERG:  Procedurally, the case was filed,

19  and I could go through -- I think the largest issue

20  here is whether this Court has personal jurisdiction

21  and venue.  I believe it does.

22      The Court here has both general and specific

23  jurisdiction over the defendant.  Plaintiffs

24  incorporate their complaint in all the internet

25  postings and mass e-mailing included in the plaintiffs

1   complaint here.

2          I believe all plaintiffs have agreed to

3   Pennsylvania jurisdiction.  All of the defendants have

4   worked with each other and together to continue their

5   slander, defamation, invasion of privacy, violations of

6   rights of privacy, et cetera.

7          The Hale defendants have had all the other

8   defendants on his radio show to further their torturous

9   and illegal behaviors targeting the Pennsylvania

10  plaintiffs.

11         THE COURT:  Okay.  Well, all of that is

12  allegation, but where are the facts, and where are the

13  affidavits that supports those allegations?

14         MR. BERG:  Well, I think the major, the first

15  issue here is I filed for a TRO preliminary injunction.

16         THE COURT:  Right.

17         MR. BERG:  We have a counsel that hadn't

18  entered their appearance.  Your Honor, when I appeared

19  before you, said when everyone entered their

20  appearance, and I wrote to the Court when everyone had,

21  except anyone for Mr. Sundquist who was, in my opinion,

22  avoiding service.  It cost me a fortune to serve him,

23  but he said I haven't been.

24         But, now that everyone has been served, with

25  the exception of Mr. Sundquist, all of the other

9

1   defendants have continued their behavior, which has

2   really been detrimental to Lisa Liberi.   The

3   publication of her social security number and the

4   continued mention of that, violates state law in

5   California, and also federal laws.

6           THE COURT:   Where has that been published?

7           MR. BERG:   It's been published throughout the

8   internet on her first --

9           THE COURT:   Right now.   As of now, is it on

10  the internet?

11          MR. BERG:   Yes, it's all over the internet.

12  Ms. Taitz continues, even the day she was served, she

13  continues to put out dossier number six, which is, if

14  you recall, Your Honor, I attempted -- that's filed

15  here with the Court, with the social security number

16  blocked out, because I didn't want it in PACER.

17          She continues to put out dossier number six,

18  with a complete social security number of Ms. Liberi.

19  Shocking, two days ago, and I filed another motion

20  here, and I know we're up to over seventy filings in

21  this case, Ms. Taitz filed a documentation on her

22  website, and all these things are there, and we have

23  copies, and we submitted them as attachments and

24  exhibits, she has filed Ms. Liberi's mother's maiden

25  name, and the fact that she was born in the State of

10

1  Washington.

2      We don't even know how she's getting this

3  information.  It's not public information.  Her latest

4  opposition to my recent request for an injunction is

5  the fact that she's the press and, therefore, she has a

6  right to publish this information.

7      THE COURT:  Now, but what is it?  The social

8  security, is that being published now or was published

9  in the past?

10      MR. BERG:  Continually.

11      THE COURT:  Is it on the website?

12      MR. BERG:  Yes.  It's continually.  She sent

13  it out, we know, at least six times.  I think we've

14  stated about 140,000, because she blatantly stated that

15  she sent it out on her first e-mailing to over 24,000,

16  and she continues to do it, and she said she's also

17  sent it out internationally, and she's asked other

18  people to keep distributing it.  So, we really don't

19  know how many people are taking up this, and --

20      THE COURT:  Well, I can't enjoin all those

21  people all over the world.

22      MR. BERG:  No, I'm not asking that.  I'm

23  asking that all of the defendants and specifically Ms.

24  Taitz and her corporation, and Mr. Hoppe, who is

25  representing for a limited purpose here, all of his

11

1  defendants.

2           Mr. Sundquist, except for what he did

3  initially here, has not done anything, and that's why

4  there's a motion pending to have him dismissed from

5  this case, to straighten out the diversity problem we

6  have in this case, which we have filed that with the

7  Court, and the Court can do that on their own motion.

8           THE COURT:  Let me see if I can understand

9  this.

10           MR. BERG:  Yes.

11           THE COURT:  Other than the social security,

12  you are complaining of certain allegations that are

13  being made by the defendants about you and the other

14  plaintiffs?

15           MR. BERG:  That's correct.

16           THE COURT:  Okay.

17           MR. BERG:  Ms. Taitz, for whatever reason,

18  and it makes no sense, has decided she wants to take me

19  down, and she's going to do it through my paralegal,

20  Lisa Liberi.  She has stated that on the internet.  She

21  has therefore gone full steam ahead for the past three,

22  four months against Lisa Liberi.  It makes no sense,

23  Your Honor.

24           For the record, and I'm sure the Court's

25  aware from the documentation, we both are supposedly

12

1   involved with a question about whether President Obama

2   is a natural born citizen.

3          To take me down makes no sense, because I

4   have three pending cases in the Federal Court System.

5   One here in the Third Circuit of Appeals on the issue

6   of standing, one in the DC Circuit Court of Appeals on

7   an interpleader action, which we filed on behalf of

8   retired Air Force Colonel Hollister, who asked the

9   question if he's retired, he's on ready recall, and his

10  complaint was whether if the President orders him back

11  to duty, does he obey that order coming from a valid

12  President, or does he disobey that order coming from a

13  usurper, a person who's in office that doesn't belong

14  there.  That case was dismissed.

15         We have a third case, a case which was filed

16  under seal, which I brought to Your Honor's attention,

17  after Ms. Taitz, who obviously should know better

18  because she is an attorney, she got some data about

19  that case and publicized that, which I notified Your

20  Honor and I notified the judge, Judge Roberts in the

21  United States District Court for the District of

22  Columbia.

23         Now, we did have a hearing on that case on

24  June 8th or 9th, and very interesting how they handle a

25  sealed case, if I may say.  As soon as everyone's

13

1    there, the door is actually locked, the windows in the
2    back of the door are covered, and the proceeding went
3    on.

4          Unfortunately for me, at the end of the
5    proceeding, the judge there, just for the record here,
6    stated -- actually when he first came out, he was very
7    pleasant, and he said Mr. Berg, I just want you to
8    understand that the DC Circuit Court of Appeals gives
9    me no authority to comment on this False Claims Act
10   case, or qui tam and that's in opposition to the Ninth
11   Circuit in California has said "The statute provides
12   that a hearing will be held."

13         So, if a hearing will be held, it's my belief
14   and my argument that the judge in that case should have
15   input.  So, he stated after you make any remarks to me,
16   it's up to the Justice Department and the Attorney
17   General's Office whether they want to proceed on the
18   case or allow you to proceed as the relater in the
19   case.

20         I argued for about twenty minutes.  At the
21   end of the argument, the judge turned to the
22   representative of the Attorney General's Office and the
23   Justice Department and said has Mr. Berg convinced you,
24   and they said no.  It's no surprise.  The case was
25   dismissed, with prejudice, but the case was also

14

1  unsealed.

2       So, the case is now unsealed, and we have

3  filed now a motion for reconsideration, because in

4  researching it, we found that there's a major conflict

5  of interest there by the Attorney General on this

6  statute, and we asked that either I be --

7       THE COURT:  Okay.  Well, I don't know what

8  that has to do with this case, Mr. Berg, frankly.

9       MR. BERG:  Well, what it has to do with this

10 case is that I have three --

11      THE COURT:  Okay.

12      MR. BERG:  -- pending cases, whereas Ms.

13 Taitz wants to take me down makes no sense, okay?

14      THE COURT:  Okay.  I don't know her

15 motivation, but let me ask you something.

16      MR. BERG:  Sure.

17      THE COURT:  As I'm reviewing the complaint,

18 it seems to me that they are three somewhat separate

19 sets of events here, and I classified them as follows,

20 based on your allegations in the complaint.

21      The Hale defendants defamed Adams which

22 apparently occurred through the website.

23      MR. BERG:  Through the website and the radio,

24 they have a radio station.

25      THE COURT:  And the radio, and that's

1    somewhere in --

2              MR. BERG:  In Texas.

3              THE COURT:  -- Western Texas, okay.

4              MR. BERG:  They're not in Western.

5              THE COURT:  Southern Texas?

6              MR. BERG:  Some place, but not Western.

7              THE COURT:  Okay.

8              MR. BERG:  That's why it makes no sense why

9    they're asking for a transfer to Western.

10             THE COURT:  That's right.  Number two, the

11   Hale defendants defamed Berg and Liberi.  Now, that

12   occurred through the radio program and the website?

13             MR. BERG:  Correct.

14             THE COURT:  Okay.  Then the Belcher defendant

15   defames Berg and Liberi, and that occurred how?

16             MR. BERG:  Same way, through the radio

17   station.

18             THE COURT:  Website and the radio?

19             MR. BERG:  Yes, Your Honor.

20             THE COURT:  Okay.  Taitz and Sankey

21   defendants defamed Ostella.  How did that happen?

22             MR. BERG:  By e-mail, Your Honor.

23             THE COURT:  E-mails?

24             MR. BERG:  E-mails.

25             THE COURT:  Well, you also said -- by e-mails

16

1   only?

2           MR. BERG:  E-mails only, and since the

3   complaint has been filed, and that's why we have filed

4   the motion to dismiss, there's been no further action

5   by Mr. Sundquist or Rock Salt, which is Rock Salt

6   Publishing.

7           THE COURT:  Where was Sankey first?  Let's --

8           MR. BERG:  Okay.

9           THE COURT:  Taitz and Sankey defame Ostella,

10  and that happened by sending out some e-mails?

11          MR. BERG:  Oh, I'm sorry.  Taitz and --

12          THE COURT:  Ostella, I'm with Ostella now.

13          MR. BERG:  Okay.

14          THE COURT:  How did that happen?

15          MR. BERG:  Yes, I'm sorry.  Sundquist sent

16  out some e-mails on there and then Taitz --

17          THE COURT:  Okay.  Forget about Sundquist for

18  a minute.

19          MR. BERG:  Okay.

20          THE COURT:  Taitz and Sankey defamed Ostella,

21  how did that happen?

22          MR. BERG:  I'm sorry, Taitz and Sankey

23  against who, sir?

24          THE COURT:  Ostella.

25          MR. BERG:  By taking this material and

17

1  repeating it, and putting it out further on the

2  internet.

3         THE COURT:  Okay.  So, the Ostella alleged

4  defamation occurred through the website and by posting

5  on the internet, is that right?

6         MR. BERG:  Yes.

7         THE COURT:  Okay.  Now, Taitz and Sankey

8  defendant defamed Liberi and Berg, how did that happen?

9         MR. BERG:  Same way, e-mail, website.  Oh,

10  I'm sorry.

11         THE COURT:  Taitz and Sankey against --

12         MR. BERG:  Let me back up, if I could back up

13  one.  Taitz and Sankey on Ostella --

14         THE COURT:  Yes.

15         MR. BERG:  -- was the website, internet, and

16  radio.

17         THE COURT:  And radio, okay.

18         MR. BERG:  Okay.  Then Taitz and Sankey on

19  Liberi and Berg is the website, the internet, and

20  radio.

21         THE COURT:  Okay.  Then Sundquist and

22  Ostella, you say that he did it once, but he stopped

23  doing it, so we're not too concerned with him?

24         MR. BERG:  That's correct, Your Honor.

25         THE COURT:  Okay.

18

1          MR. BERG:  Also, further on this, anytime

2   Taitz is involved, it's a constant -- I guess it goes

3   further than the internet, but she has a regular

4   reporting on the World Net Daily, which is a news site

5   on the internet.

6          THE COURT:  On the internet, as well.

7          MR. BERG:  So, I guess it covers that, has

8   repeated many of these allegations.

9          THE COURT:  Okay.  Now, this seems to be

10  three separate defamations, if you want to call it

11  that, three separate incidents or series of incidents.

12  How do they all hang together?

13         MR. BERG:  Well, they are all together

14  because Taitz, Sankey, and then all of the defendants

15  that Mr. Hoppe is representing, are constantly going on

16  either the internet, they're sending out -- like on the

17  Hoppe defendants, Ed Hale, and his wife Caren Hale and

18  Linda Belcher, they're constantly on Ed Hale's radio

19  show, and they're constantly re-publicizing the same

20  information detrimental -- there's no legitimate

21  purpose for what they are constantly doing on a daily

22  basis, and we have attached to our pleading exhibits,

23  and we have --

24         THE COURT:  Now, this radio station, is this

25  a regular AM/FM station?

1   MR. BERG:  No, no, this would be an internet

2   radio.

3   THE COURT:  This is an internet station?

4   MR. BERG:  Yes.  But, Ms. Taitz has been on

5   regular radio stations on the AM, yeah, on the AM she's

6   been on, she's been on the internet radio, wherever she

7   can she's been dispersing this vile derogatory

8   information for no legitimate purpose.

9   THE COURT:  Okay.

10   (Pause in proceedings.)

11   THE COURT:  Okay.  So, you want to dismiss

12   Sundquist from the case, right?

13   MR. BERG:  And Rock Salt.

14   THE COURT:  Okay, because they're New Jersey.

15   Rock Salt Publishing, okay.  They're the New Jersey

16   ones that we could --

17   MR. BERG:  Yes.

18   THE COURT:  Okay, fine.

19   MR. BERG:  On that if I just may make a

20   comment, Your Honor, with Mr. Sundquist he did file an

21   answer on behalf of Sundquist and Rock Salt.

22   THE COURT:  Yes.

23   MR. BERG:  He filed an answer and a motion to

24   dismiss, which is significant.  Then I sent him a

25   stipulation, which I have attached to withdraw.

20

1          THE COURT:  Yes.

2          MR. BERG:  He didn't sign that, and then I

3    filed a motion for leave to dismiss.

4          THE COURT:  He didn't sign it, or he did sign

5    it?

6          MR. BERG:  He did not sign it.

7          THE COURT:  Okay.  Does he want to be

8    dismissed?

9          MR. BERG:  No, no.  Then, I file a motion for

10   leave of this Court to dismiss him.

11         THE COURT:  Right.

12         MR. BERG:  He files an opposition to my

13   motion to dismiss, which I believe is improper because

14   when he filed his answer, he filed a motion to dismiss.

15   So, he first asked for it, now that I want him out,

16   he's changed his mind.

17         THE COURT:  Well, I mean, I'm not sure that

18   you are not actually entitled.  You can file an amended

19   complaint and just drop him.

20         MR. BERG:  I could do that.

21         THE COURT:  So, I'm not going to delay this

22   too much thinking about someone who you want to dismiss

23   from the case.  Okay.  So, you want to proceed against

24   all these folks.

25              Now, and I'm not here to listen to the merits

1  of these motions, but on review of a couple of the

2  cases here, the Toys "R" Us case here in the Third

3  Circuit, and my own case, I guess, in the Linden

4  Research, is there a question here of personal

5  jurisdiction, specific jurisdiction with these folks?

6          MR. BERG:  No, I believe they have all

7  subjected themselves.

8          THE COURT:  How, how did they do that?

9          MR. BERG:  Well, it's an issue, but I think

10  they have, Your Honor.

11          THE COURT:  Just give me the preliminary

12  theory of how they did that.

13          MR. BERG:  Well, they did that by -- they've

14  all appeared on the radio station for Ed Hale, his

15  radio show, which discusses this issue and he's

16  complaining about me and my law firm and Lisa, who

17  works for me as a volunteer --

18          THE COURT:  Right.

19          MR. BERG:  -- which is Pennsylvania.  There's

20  cases which I have cited which show that the internet,

21  which is a new phenomena we now have, but publication

22  on the internet against someone in the state, like in

23  Pennsylvania, I don't have the case, they're in my

24  brief, but subjects the person to personal

25  jurisdiction.

22

1      THE COURT:  But, that means the entire world?

2  You could be sued anywhere.  I mean, they could have

3  been sued in China, I suppose.

4      MR. BERG:  Well, I don't think it goes that

5  far because, Your Honor, I'm here, and they are

6  bringing action against me, they're complaining about

7  things.

8      For instance, Linda Belcher.  Linda Belcher

9  was working for me as a volunteer as a moderator.  She

10  subjected herself then to this Court by being a

11  moderator on my website.  So, therefore, I believe she

12  subjected herself to that.

13      THE COURT:  Okay.

14      MR. BERG:  Also, Belcher filed an answer to

15  the complaint and waived her defenses, including

16  affirmative defenses.

17      THE COURT:  Right.

18      MR. BERG:  So, by doing that, she's here in

19  this court.  She has admitted that she told others that

20  she worked for me, did work for me.

21      The Hale defendants have directed everything

22  at me and my law firm.  The Hale defendants subjected

23  themselves to the Court's jurisdiction when they filed

24  a Supreme Court complaint against me here in

25  Pennsylvania, attempting that my bar license be

revoked, so they were there.  Also, the Hale defendants filed their answer to my complaint, and waived their defenses, including affirmative defenses, they didn't raise it.

The Sankey defendants subjected themselves to this Court's jurisdiction when they directed all their actions against me, my law firm, and Lisa Liberi.  They also did that by failing to answer the Sankey Firm, subjecting themselves to the Court's jurisdiction by failing to answer the complaint pertaining to their company.  Default was entered, and we have filed and submitted for a judgment by default package to the Court.

They also, the Sankey defendants, the other two, filed their answer to the complaint and waived their defenses, including affirmative defenses.  They didn't raise them.

THE COURT:  They didn't raise personal jurisdiction?

MR. BERG:  They did not.

MR. BERG:  Orly Taitz then, her Defend Our Freedoms Foundation, Taitz has clients in this area. She's currently working on a project in Pennsylvania, attempting to have Arlen Specter, the US Senator located in Philadelphia, recalled.  They're meeting

24

1  with a group of individuals to speak with law

2  enforcement officers and senators.  It's on their

3  internet.

4          THE COURT:  Now, do you have any affidavits

5  that support those allegations?

6          MR. BERG:  I have the information from her

7  website, which we've attached to our exhibits.  I mean,

8  it's her material.

9          THE COURT:  Yes, but do you have any

10  affidavits that have been filed in support of that

11  information?

12          MR. BERG:  I'm not sure if it's an affidavit,

13  but I could have them filed.

14          THE COURT:  Okay.  All right.

15          MR. BERG:  Okay.  I'm not sure if we put

16  them --

17          THE COURT:  Okay.  So, I mean, each defendant

18  has to be treated differently.  I don't think you can

19  just toss them all in the same pan.

20          MR. BERG:  I agree.  I agree, Your Honor, but

21  I have a breakdown.  I've broken down each one in their

22  opposition, while personal and jurisdiction, and I have

23  a whole brief here on that.

24          Also, dealing with the defendants that Mr.

25  Hoppe is representing, I think that on that case, that

25

he has filed just yesterday an improper motion to
dismiss, for the reason that they're violating Federal
12(g) and 12(h) and Rule 15.

12(g) and (h) you can only file one motion to
dismiss, and was previously filed on May 26th.  Other
than that -- and also, they filed it with no briefs
attached, no law.

Also, Rule 15 says that to file a second, as
the Court is aware, you must file a motion for leave of
court, or a stipulation from me, which I'm not willing
to give them, so I believe that his motion yesterday is
improper.

He also -- he filed an admittance entry of
appearance yesterday.  He filed a new one this morning,
just limiting on the jurisdiction and venue.  On venue,
everyone wants to transfer this case to the Western
District of Texas, which makes no sense because there's
only one defendant there and, also, there's law
preventing that.

They stated -- they've stated in their
various radio shows that have a ninety-nine percent of
winning there, so that would be a prejudice, that's
court shopping.

Also, Linda Belcher has stated a threat that
if we come into the Western District of Texas, we might

26

1   come out in pieces.  So, I think on that basis, it

2   should not be to the Western District.  But, other than

3   that, it doesn't even make sense the Western District

4   of Texas.

5          THE COURT:  Okay.  Fine.  I think I've got

6   the general gist, Mr. Berg.  Why don't we let the other

7   people give me a sort of a flavor of where they're

8   going in with the case, and we will come back to you.

9          MR. BERG:  Thank you, Your Honor.

10          THE COURT:  Mr. Hoppe, please.

11          MR. HOPPE:  Thank you, Your Honor.  If I can

12   just touch on the Sankey Firm real quick.  The issue

13   that's come up, I have been advised by Neil Sankey, one

14   of my clients is Sankey Investigations, is that the

15   Sankey Firm was sued and a default judgment was entered

16   against him, but the Sankey Firm, he actually has no

17   affiliation with.

18          It's run by his son.  He doesn't work there,

19   he has no authority to act on their behalf, he

20   certainly did not have authority to accept service on

21   their behalf.

22          Mr. Berg had apparently Neil Sankey served

23   with a complaint, supposedly on behalf of the Sankey

24   Firm, and he didn't have authority to accept service,

25   and a default judgment was entered.

27

1    THE COURT:  Not a judgment.

2    MR. HOPPE:  The Sankey Firm has never been --

3    I know, default papers have been filed.

4    THE COURT:  Yes.

5    MR. HOPPE:  I apologize.

6    THE COURT:  Okay.

7    MR. HOPPE:  So, the Sankey Firm has never

8    actually been served.  I haven't been retained to

9    represent them to get that straight.

10    THE COURT:  Okay.  You don't represent them,

11    so we'll put them aside.

12    MR. HOPPE:  That's the issue with them.

13    THE COURT:  Okay.

14    MR. HOPPE:  I just wanted to make you aware.

15    If we can talk about -- I guess the reason I'm here is

16    on the jurisdiction and venue.

17    I can touch on the other issues that you had

18    talked to Mr. Berg about, the injunction, although I'm

19    not specifically involved in that.  I wasn't aware we

20    were going to be talking about that, so I didn't

21    specifically talk to my clients about it.

22    THE COURT:  Well, we're getting --

23    MR. HOPPE:  But, regardless --

24    THE COURT:  We're going to try to schedule

25    the matter, so I want to get a feel for where you want

28

1   to go.

2          MR. HOPPE:  Sure.  What I actually filed

3   yesterday, as Your Honor's aware, is a memorandum of

4   law in support of the motions to dismiss that my

5   clients had previously filed.  It's not a new motion to

6   dismiss.

7          THE COURT:  Right.

8          MR. HOPPE:  My clients are filing pro se, and

9   the fact that I think that perhaps their motions under

10  12(b)(6) were not exactly formatted correctly as I

11  might have if I was an attorney, I think the Court

12  generally gives some latitude to pro se defendants.

13         I think if you would look at their motion to

14  dismiss, it's clear from the motions that were filed on

15  the 26th exactly what the clients, or these parties

16  were seeking, which was a 12(b)(6) or a 12(b) motion

17  seeking dismissal for lack of jurisdiction.

18         As Your Honor touched on, there's no evidence

19  that has been presented by Mr. Berg to sustain any ties

20  between my clients and the State of Pennsylvania.  The

21  easiest one is the Sankey defendants, Neil Sankey and

22  the Sankey Investigations.

23         As I mentioned in my brief, if you look at

24  the allegations in the complaint, and also in the

25  allegations of Mr. Berg's response to the motion to

29

1    dismiss filed by Mr. Sankey, he doesn't cite a single

2    contact by Mr. Sankey with Pennsylvania.   There's

3    absolutely nothing that even references Pennsylvania

4    with Mr. Sankey.

5         So, there's clearly no efforts alleged by Mr.

6    Berg on behalf of Mr. Sankey to target Pennsylvania,

7    and that is the standard, as Your Honor has indicated

8    in Toys "R" Us.   Your Honor discussed about it in the

9    Linden case.   Some of the other cases we cited,

10   D'Onofrio, which Judge Brody had talked about at great

11   length in her decision a couple of years ago, and

12   specifically talked about the importance for

13   jurisdictional purposes of the non-resident defendant

14   targeting the jurisdiction.

15        The fact that Mr. Hale may sit in his radio

16   booth in Texas and talk about Mr. Berg, who's a

17   resident of Pennsylvania, doesn't mean that he's

18   targeting Mr. Berg in Pennsylvania.

19        He's making all the allegations against Mr.

20   Berg -- excuse me, against Mr. Hale, as Mr. Berg

21   indicated, are e-mails, website postings, that type of

22   thing, which originated out of Texas.   There was no

23   allegations that Mr. Hale or any of the Hale defendants

24   specifically targeted the State of Pennsylvania.

25        Mr. Hale brings up the Supreme Court, I guess

30

1  disciplinary filing.  This is the first I've ever heard

2  of that, but even if so, there's case law out there

3  that says that even filing a lawsuit in the state

4  doesn't subject a non-resident defendant to the

5  jurisdiction of the state for other matters, because

6  there's no reason for that particular non-resident

7  defendant to believe that they're going to be hailed

8  into court, as the cases say, in Pennsylvania simply

9  because they filed a lawsuit in an unrelated matter

10 there.

11         As Your Honor had mentioned in Toys "R" Us

12 and some of these other cases, you know, when they deal

13 with the website issues the Courts have been crystal

14 clear that there has to be evidence that the website

15 specifically targets Pennsylvania.  The fact that the

16 website is accessible by people who live in

17 Pennsylvania isn't sufficient for personal jurisdiction

18 purposes.

19         He talked about Ms. Belcher being a moderator

20 on his website, he has provided no evidence of that

21 first of all, but he has also provided no evidence that

22 Ms. Belcher performed any work in Pennsylvania, she

23 lives in Texas, or even that his website is located in

24 Pennsylvania.

25         In fact, I believe the evidence would

31

1   establish that his website is hosted I believe by a

2   firm in Arizona.  So, even if she was doing moderation

3   of his personal website, it is not located in

4   Pennsylvania.  So, she wouldn't actually be performing

5   the work in Pennsylvania.

6           Mr. Berg also indicates that any work that

7   was done was on a volunteer basis.  I think any efforts

8   that she might have made on his behalf, even if you

9   accept that there were some were attenuated at best and

10  don't meet the standard of targeting the forum for

11  purposes of subjecting somebody to personal

12  jurisdiction.

13          I talked about Sankey, Belcher and Hale.  I

14  mean, I went over these things in my memo in some

15  length, but I think the main point that I would like to

16  make with Your Honor on the jurisdiction, the personal

17  jurisdiction, is there is no general jurisdiction or

18  specific jurisdiction because there is no evidence

19  presented by the plaintiffs to establish that any of

20  these defendants purposefully targeted the plaintiffs

21  in Pennsylvania, or targeted the forum such as would

22  reasonably cause them to believe that they could be

23  taken into Court here to be sued, and that is the

24  standard.

25          And as Your Honor indicated at the beginning,

32

1   it is an important point, the case law is clear that

2   Mr. Berg and all of the plaintiffs are required when

3   jurisdiction is challenged to present evidence in

4   support of their claim that jurisdiction is proper.

5   They can't rely on allegations in the complaint, and I

6   cited the cases in my brief that stand for that

7   principal.

8           The plaintiffs haven't presented any evidence

9   in support of the claims that the jurisdiction is being

10  targeted.

11          THE COURT:  Now, you're in favor of

12  transferring the case to the Western District of Texas?

13          MR. HOPPE:  It is our purpose the case should

14  be dismissed.

15          THE COURT:  Okay.

16          MR. HOPPE:  But, in the event that Your Honor

17  is not willing to dismiss it, all defendants have

18  agreed --

19          THE COURT:  Now, what is it, for the

20  convenience of the parties and witnesses and the

21  interest of justice, what makes the Western District

22  of Texas a forum where those interests would be

23  promoted?

24          MR. HOPPE:  Well, first of all, Your Honor,

25  whichever district it is in Texas, Mr. Berg claims it

33

1  is the Northern District.  My clients said it was the

2  Western District in the motion.

3          I didn't do the research to figure out which

4  is the appropriate one, but the appropriate one in

5  Texas --

6          THE COURT:  Where are they located?

7          MR. HOPPE:  The --

8          THE COURT:  El Paso or where?  What is the

9  city?  What is the town name?

10          MR. HOPPE:  Where my clients reside?

11          THE COURT:  The defendants, yes.

12          MR. HOPPE:  I apologize, Your Honor.  I don't

13  remember off of the top of my head.  I can get that

14  information for you, but I haven't had the chance to

15  research exactly --

16          THE COURT:  Okay.

17          MR. HOPPE:  -- which would be the appropriate

18  jurisdiction, but I can get Your Honor that.  A couple

19  things, Your Honor.

20          First of all, if you look at the plaintiffs'

21  complaint there is an essential point where a lot of

22  this information that they are claiming was improperly

23  conveyed is focused out of, and that is Texas.

24          So, if you want to look at a place where if

25  these allegations have any merit, a substantial part of

34

1  the activities in support of the allegations occurred,

2  it is out of Texas.

3          The radio station, and by the way there is

4  actually a low wattage AM radio station as well.  The

5  radio station and the broadcast booth where Mr. Hale

6  broadcasts over the internet is located in Texas.

7  Ms. Belcher resides in Texas.  When the interviews are

8  done they are done through Mr. Hale's radio station in

9  Texas.

10          So, most of the evidence related to this case

11  is going to be located either in Texas or California,

12  but a lot of it, a substantial part of it is going to

13  be located in Texas.  The parties are there, the radio

14  broadcasts were made out of there.  The documents, the

15  e-mails were sent out of there.

16          So, all of that information is there.  It is

17  in addition to a convenience of the parties issue.

18  Most of the plaintiffs or the parties don't reside in

19  Pennsylvania.

20          In fact, only two of the plaintiffs reside in

21  Pennsylvania, and that is Mr. Berg and one of the other

22  plaintiffs, I'm sorry, Ms. Ostella or Ms. Liberi, the

23  other ones are out of state.

24          So, for a convenience of the parties Texas

25  would be the more appropriate place and also from a

35

location of evidence, witnesses, that type of thing,
Texas is going to be the more appropriate place.

When Mr. Berg talks about witnesses and that
type of thing and being in Pennsylvania, they are the
plaintiffs.  They are not the other witnesses like
website people, like the defendants, that type of
thing.  So, that is why we think Texas would be the
appropriate venue for this.

I don't know if you want me to touch on
anything else.

THE COURT:  No, that would be fine for now.
Thank you.  Ms. Taitz, please.

MS. TAITZ:  Good morning, Your Honor.  First
of all, I wanted to address the issue of default.  It
happens so that being an out of state defendant, I have
filed my motion to dismiss timely on May the 23rd and
used overnight Federal Express.  It happens so that
because of the holiday there was a slight delay in the
Court getting the motion.

Mr. Berg actually got it timely on the 26th.
The Court got their copy, the processor got his copy on
the 27th, one day later, and he filed it with the Court
on the 28th.

I have brought the cases from this Court
Bilirubin Commodity Traders and also Profast Commercial

1   <u>Flooring</u> showing that I did not show any disrespect to

2   the Court.  I did file timely.  There was an

3   unfortunate delay in the Federal Express mailing.

4         I also would like to address the issue of

5   jurisdiction.  There is no personal jurisdiction over

6   me in this Court.  I have never been to the State of

7   Pennsylvania.  It is a beautiful state, but I have

8   never been here.  I have never worked here, I am not

9   licenced here.

10        THE COURT:  Did you bring an action against

11   Mr. Berg in the Pennsylvania Supreme Court?

12        MS. TAITZ:  Never.  Never in my life did I

13   bring any actions in Pennsylvania, ever.  I have never

14   been here and never brought any actions here.  Mr. Berg

15   is mistaken.

16        I have absolutely no contact with the State

17   of Pennsylvania and, therefore, this is not a proper --

18   would not be a proper venue and there is no personal

19   jurisdiction over me or my foundation in the State of

20   Pennsylvania.

21        I also wanted to bring an issue of subject

22   matter jurisdiction.  Mr. Berg claims that his

23   complaint is both a complaint of a federal question and

24   diversity.

25        The only federal question that he raised was

37

1   First Amendment, and First Amendment is a federal

2   question that is addressed against a governmental

3   agency who may be a private party who acts --

4            THE COURT:  Well, there is no state actor.

5            MS. TAITZ:  Exactly, I am a private

6   individual so there is no --

7            THE COURT:  Well, he has got the wiretap

8   statute, because that is a federal statute, right?

9            MS. TAITZ:  I don't know how wiretap statute

10  applies to me at all.  He didn't plead any federal

11  statute.  So, the only thing that he actually relies on

12  and he filed his motion to dismiss without prejudice

13  Mr. Sundquist.

14           THE COURT:  Well, he would have diversity of

15  citizenship, wouldn't he?

16           MS. TAITZ:  Well, that is the whole point,

17  that he in his action there is no diversity of

18  citizenship for two reasons.  First, is that Mr.

19  Sundquist and Mr. Ostella both reside in the State of

20  New Jersey.

21           THE COURT:  Right.  Citizens of the State of

22  New Jersey.

23           MS. TAITZ:  Exactly.

24           THE COURT:  But, he wants to dismiss them.

25           MS. TAITZ:  He wants to dismiss without

1   prejudice and Mr. Sundquist has already filed his

2   answer.  And the dismissal without prejudice, of

3   course, can be done with the leave of court but only in

4   the very narrow exception, and based on Caterpillar

5   based on Grouper Dataflux --

6          THE COURT:  Well, had Sundquist filed an

7   answer you said?

8          MS. TAITZ:  Yes, Mr. Sundquist had filed an

9   answer on June 9th.  So, after the answer was already

10  filed there is a very narrow opportunity to dismiss,

11  and according to the findings of Third Court of Appeals

12  in Grouper Dataflux, it can be done only when the

13  parties have subjected themselves to the discovery, to

14  lengthy litigation, and prior to final disposition a

15  party raises the issue of lack of subject matter

16  jurisdiction, only then the Court can dismiss one

17  party, because it would not be just for the parties to

18  go through years of litigation and then be dismissed

19  due to lack of subject matter.

20         THE COURT:  Right.  But, this is the first

21  day, so what is the prejudice here?

22         MS. TAITZ:  So, in this particular case, Mr.

23  Berg claims that he wants to dismiss Mr. Sundquist

24  because he is a dispensable party.  But, if you read

25  his pleadings, the only damage that he is claiming in

1   his pleadings is that Mr. Sundquist is a terrorist.

2   He has stated that because I have published

3   something on my website, Mr. Sundquist who is known to

4   be a terrorist and making terrorist threats is

5   threatening his plaintiffs.  He is threatening Ms.

6   Ostella and her family.

7   THE COURT:  What is the prejudice to you if

8   Mr. Sundquist is dismissed?

9   MS. TAITZ:  Well, the question here can --

10  first question is Mr. Sundquist dispensable or

11  indispensable party?  If Mr. Berg claims in his

12  complaint that there is a threat for his clients, I

13  mean the whole issue is the threat, if you dismiss

14  somebody who presents a threat, then there is no case,

15  where is the threat?

16  I posted information, which by the way is

17  true information.  I have never posted her social

18  security number and I have proof of that.  I have never

19  published any private facts.  I have never slandered to

20  anybody.  I have never published anything which is

21  untrue.

22  THE COURT:  You have never published a social

23  security number?

24  MS. TAITZ:  Not her social.  Your Honor, I

25  have here declaration of Lisa Liberi that she has filed

40

1  under the penalty of perjury in the State of

2  California, and she states her social security to be --

3        THE COURT:  Well, you don't have to tell me

4  that.

5        MS. TAITZ:  Yes.  And it was filed in 2006.

6        THE COURT:  Right.

7        MS. TAITZ:  So, as of 2006 this is her social

8  security, I never published it.  So, I never published

9  any private facts.  I never published anything

10  libelous.

11        THE COURT:  So, the social security number of

12  Ms. Liberi has never appeared on your website?

13        MS. TAITZ:  It was not her social security

14  number.  What I stated that Mr. Berg has filed a

15  lawsuit and I was not planning to mention this, but he

16  did bring it to court, so I need to respond, against

17  Mr. Obama, stating -- in this lawsuit he submitted

18  affidavits.

19        THE COURT:  Right.

20        MS. TAITZ:  And when I found out that those

21  affidavits were prepared by a Ms. Liberi who has a

22  lengthy criminal record of forgery of documents I have

23  contacted Mr. Berg, and don't get me wrong, I am not

24  saying it because I am trying to defend Mr. Obama.  I

25  came from a communist country.  I was born in the

1  Soviet Union.  I feel it is extremely important to have

2  transparency in the government.  However, you don't

3  achieve transparency in government by submitting

4  documents prepared by a convicted forger of documents.

5       And I have sent an e-mail to Mr. Berg stating

6  Mr. Berg, here is information from my State of

7  California.  Ms. Liberi has an extensive criminal

8  record of forgery of documents.

9       Please I would advise you that we both --

10 originally I thought he is innocent.  We both should go

11 to FBI and report it, and I would advise you to hire

12 somebody who is a licensed document expert who can

13 review those documents to make sure that there is no

14 forgery there.  Moreover, Ms. Liberi has been convicted

15 of -- in numerous counts of grand theft and I have with

16 me --

17      THE COURT:  Well, let me just go back to the

18 social security number.  Have you ever posted a social

19 security number on your website?

20      MS. TAITZ:  But, not her social security

21 number.  Her social security number is completely

22 different and it was not published by me.  I do have it

23 and it was under --

24      THE COURT:  So, when you said not hers, you

25 mean somebody else's social security number?

42

1          MS. TAITZ:  It was a report by Mr. Sankey

2     stating that -- after I published this information Mr.

3     Berg started spreading rumors about me, that I am

4     defrauding people, that I am forging documents that I

5     am spying on people.

6          He made libelous and slanderous attacks on

7     me.  I had to defend myself, so I have published a

8     report by Mr. Sankey, a licensed investigator, stating

9     no, I am not telling anything that is not true, I am

10    providing truthful information indeed.  Here is the

11    report that Ms. Liberi has numerous social security

12    Numbers.  They were labeled 405, they were all partial.

13         There was one social security number that was

14    not partial that was sent in by mistake, but it was not

15    hers.  It was not her social security number.

16    According to her affidavit she has a different one.

17         THE COURT:  It is a different one than the

18    one in the affidavit?

19         MS. TAITZ:  Exactly.

20         THE COURT:  It may or may not be hers, but

21    according to you is not the one that matches the

22    information that she filed in the previous affidavit?

23         MS. TAITZ:  Well, it cannot be hers because a

24    person should not have more than one social security

25    number --

43

1          THE COURT:  Okay.

2          MS. TAITZ:  -- and based on her sworn

3    affidavit, sworn declaration, she --

4          THE COURT:  Now, do you have any connection

5    with the Hale defendants?  Do you know them?

6          MS. TAITZ:  The only connection I have is

7    because I have a foundation called Defend our Freedoms

8    and I have been asked to appear on numerous TV shows

9    and numerous radio shows.  There were numerous

10   documentaries made about me and my cases.

11         Mr. Hale has invited me to his show.  And on

12   the show he asked me about this matter and, again, I

13   provided truthful information.  I never tried to take

14   Mr. Berg down.  I have never made --

15         THE COURT:  Now, when you appear on the show,

16   where are you physically?

17         MS. TAITZ:  In California.  I talked to them

18   on the phone.  They called me from Texas.

19         THE COURT:  They call you on the phone --

20         MS. TAITZ:  On the phone, exactly.

21         THE COURT:  -- and you appear by way of

22   telephone?

23         MS. TAITZ:  By the way, most radio shows

24   today are done by phone.  So, it had nothing to do with

25   the state of Pennsylvania.

44

1      By the way --

2      THE COURT:  Now, but you don't mean on the

3 internet.  You mean an actual land line?

4      MS. TAITZ:  I called them I think on -- I

5 don't recall if it was land line or cell phone.

6      THE COURT:  Okay.

7      MS. TAITZ:  But, it was an internet show from

8 what I recall and, you know, they asked me a question,

9 you know, what has happened there and I have stated the

10 same thing that I am stating here.  I am concerned that

11 when attorneys are bringing legitimate actions and they

12 are asked --

13      THE COURT:  Okay.  I understand.  But you are

14 -- how many times have you appeared on the Hale --

15      MS. TAITZ:  I have been several times talking

16 about different issues.  Maybe once or twice they asked

17 me about specifically Ms. Liberi, what happened,

18 because there was an issue of my blog being tampered

19 with.  There was an issue of e-mail address being

20 changed on my blog.  They asked me those questions, I

21 responded.  I never slandered to anybody.  I never

22 provided one word that is not true.

23      THE COURT:  Okay.  How about Belcher, do you

24 know?

25      MS. TAITZ:  I know Ms. Belcher and I -- and

1   because I have a website that is visited, that has

2   eight and a half million hits per month a lot of people

3   call me and e-mail me.

4          Again, I have never provided any information

5   that is not true.  I never slandered to anybody but,

6   moreover, there is -- there is a serious issue

7   actually.

8          Mr. Berg, again, stating that I am somehow

9   threatening him, but in reality after Mr. Berg has

10   posted slanderous remarks about me --

11          THE COURT:  What about Ms. Belcher, tell me

12   about that.

13          MS. TAITZ:  Nothing.  I -- Ms. Belcher has e-

14   mailed me a few times and called me and that is it.

15   Ms. Belcher is a private individual, and there is no

16   other connection aside from the fact that she is a

17   private individual.

18          She e-mailed me and as a matter of fact, the

19   information in regards to Ms. Liberi was provided to

20   Ms. Ostella, his own plaintiff, who e-mailed me and

21   provided information and I have verified it through

22   Sankey firm.

23          THE COURT:  Okay.  Anything else you want to

24   say, Ms. Taitz?

25          MS. TAITZ:  Yes.  I -- what -- I would like

46

to state that as you correctly noticed, Your Honor, there are three separate cases here.  There is something that happened in Texas and something that happened in California.

When there was a tampering with my PayPal account on my website and later on this website was taken over by Ms. Ostella who was my former webmaster, I filed a police report stating that Ms. Ostella is using my website, Defend Our Freedoms Foundation, and I submitted to Your Honor a registration showing that it is registered in the State of California.

I have filed a police report that my foundation is being used.  The website of my foundation is being used by a former webmaster who is not authorized to do so.

She has been sending e-mails on behalf of foundation soliciting donations and collecting donations, even though she is not connected and, therefore, it was fraud to my foundation.

THE COURT:  What has happened to that complaint?

MS. TAITZ:  I have filed the complaint, it is being investigated.  It was forwarded to the financial crimes unit in the Orange County, California.  So, I did not file actual legal action in California, as I

1  was waiting for the police to complete their

2  investigation, come with findings and then I would

3  decide how to proceed from there.

4        What Mr. Berg decided to do, he decided to

5  jump the gun and he filed the case in Pennsylvania,

6  even though there is absolutely no connection to the

7  State of Pennsylvania to simply make it difficult on

8  all of the defendants in having us come to the State of

9  Pennsylvania, spend thousands of dollars.

10        He created that based on diversity that

11  doesn't exist, not only because of Mr. Sundquist but

12  also because Ms. Liberi was convicted in the State of

13  California.

14        I do have -- I provided this to you in the

15  pleadings.  She is currently -- last year she got eight

16  year prison term in the State of California.  Because

17  of her diabetes condition she was -- the eight year

18  prison term was reduced to probation and she was

19  allowed to reside in the State of New Mexico close to

20  her relatives.

21        THE COURT:  Okay.  Well, we are not there

22  yet.  Okay.  Anything else you need to discuss?

23        MS. TAITZ:  So, based on the fact that she is

24  on probation in the State of California her actual --

25  she is subject to jurisdiction of the State of

48

1  California and, therefore --

2        THE COURT:  Who is that?

3        MS. TAITZ:  Ms. Liberi, the main plaintiff.

4  And therefore in relation to my case, if Ms. Liberi has

5  any claim against me or my foundation, then she needs

6  to bring it in the State of California, in the Superior

7  Court in the State of California.  That would be the

8  proper venue, the proper jurisdiction and that -- what

9  should be done on her behalf.

10        THE COURT:  Okay.  Thank you.

11        MS. TAITZ:  Thank you.

12        THE COURT:  Now, let's see.  Mr. Sundquist is

13  there anything that you would like to say?

14        MR. SUNDQUIST:  Yes, Your Honor, actually I

15  do.

16        THE COURT:  Why don't you come up here?

17        (Pause in proceedings.)

18        MR. SUNDQUIST:  Good morning, Your Honor.

19        THE COURT:  Good morning.

20        MR. SUNDQUIST:  If it pleases the Court, I

21  just have a few comments.  I just wanted to say that I

22  initially was involved with this case regarding the

23  Obama situation, his natural born citizenship question.

24        And so I had heard Orly on the internet on

25  the radio, on Dr. Tate's, on a number of her

49

1   publications, her website and I heard Mr. Berg being

2   interviewed on a radio station.

3           At the time, and it is sad in this situation

4   for me, because I was applauding them both, encouraging

5   them, and I was glad about both of their campaigns,

6   Your Honor.

7           And Dr. Taitz even, I heard her state that

8   even with the opposition that Mr. Berg was getting for

9   his campaign regarding Obama, she actually was cheering

10  him on, and glad that he was in a sense kind of a

11  grandfather or a forerunner of this campaign and that

12  he should be given credit for having gotten that

13  rolling before she became involved in it.

14          So, initially that was the situation with Dr.

15  Taitz and Philip Berg.  So, as to my great shock and

16  dismay that I received a lawsuit from Mr. Berg

17  regarding the defamation, the harassment, terrorism

18  that I was supposed to have done.

19          Your Honor, you asked Mr. Berg about is there

20  any affidavits, supporting statutes for the State of

21  California or federal statutes regarding the situation

22  with Ms. Liberi's social security number, driver's

23  license, et cetera, and I have cousin who is a former

24  head of parole in the State of California, so I asked

25  the question of her, she is not presently -- she was

50

1   during the Reagan administration, is there any statutes

2   or anything in the manual of corrections for the State

3   of California that govern the publication of a social

4   security number, and she wrote back and I have the e-

5   mail to this regard, that there is for a parolee or a

6   probation -- person on probation that they are not

7   entitled to the protection of their social security

8   Number.

9        So if -- and I have talked to a probation

10  officer in the State of California for one of the

11  counties, probation is governed by counties versus

12  parole governed by the entire state.  That is not the

13  case in New Mexico where Ms. Liberi is now.  They are

14  governed by the same authorities.

15       It is governed by the county in California

16  and one of the heads of the counties in California said

17  that they had a sixty day window by which they could

18  publish social security numbers.

19       So, whether Ms. Liberi's social security

20  number is correct or it is incorrect, if she was

21  convicted of any felonies there is that window of time

22  that it can be published.

23       So, therefore, when the newspapers had

24  published it, and anybody repeats what is published in

25  the newspaper, she is not entitled to that protection,

51

1   whether or not Ms. Taitz published it or not.

2          So, it would become irrelevant and I have

3   letters into the head of the parole and probation in

4   California as well as New Mexico, I have not yet heard

5   back as to further corroboration and confirmation of

6   statutes, both federal and state that govern that

7   point.

8          As to Mr. Berg's stating that I initially

9   asked to be dismissed, and then I later asked to not be

10  dismissed, the reason I initially asked to not be --

11  asked to be dismissed was that I wanted to be dismissed

12  with prejudice and without having to pay $558 dollars

13  because of his inability to serve me.

14         And he had already sent letters out to the

15  other defendants that I had refused to respond to his

16  filing suit against me, and I didn't even know that he

17  had send the thing out and he said that I had resisted

18  being served and, Your Honor, I was in the hospital

19  three times during the month of May.

20         I was in bed and couldn't get up for about

21  two and a half of those weeks and I can provide

22  evidence that I was in the hospital three times because

23  I was in very, very poor health.  I recovered somewhat

24  from then and so, that is --

25         THE COURT:  So, why don't you want to be

1  dismissed from the case?  I mean, why do you want to be

2  in this case?

3         MR. SUNDQUIST:  Well, I would not mind being

4  dismissed, Your Honor, with prejudice because if it is

5  without prejudice, Your Honor, as I understand it I can

6  be sued again.  It can be started all over again.

7         THE COURT:  Right.

8         MR. SUNDQUIST:  Secondly, I don't feel like I

9  should have to subsidize Mr. Berg's ineptitude in being

10  able to serve me.

11        THE COURT:  Well, let's assume that your

12  relief from the responsibility of paying for service.

13  So, you go home and you are no worse off than you were

14  before the lawsuit started.

15        MR. SUNDQUIST:  Well, I --

16        THE COURT:  You haven't retained a lawyer,

17  you haven't incurred any expense.  The lawsuit is

18  only -- you know, if you were on board, here you are in

19  for a long ride.

20        MR. SUNDQUIST:  I understand that, Your

21  Honor.  I just wish --

22        THE COURT:  And you are representing, for

23  example, you have a corporation I understand, is that

24  right, that is being sued here, the publication?

25        MR. SUNDQUIST:  If you're referring, Your

53

1    Honor, to Rock Salt --

2            THE COURT:  Right.

3            MR. SUNDQUIST:  -- it's not a company, it's

4    listed as publishing, but it's basically just an a/k/a,

5    there is no d/b/a.

6            THE COURT:  It's a trade name.

7            MR. SUNDQUIST:  Pardon?

8            THE COURT:  It's a trade name.

9            MR. SUNDQUIST:  Okay.  When I'm on the

10   internet and I'm speaking about different issues

11   relating to scripture I write on -- relating to the

12   bible, and I do that ministry, I use that term, and

13   then I sign it as my name.  So, it's really how I

14   function in my ministry.

15           THE COURT:  Well, that is called a trade

16   name.

17           MR. SUNDQUIST:  Okay.

18           THE COURT:  In other words, it's not a

19   separate legal entity.  It's a name to which you speak.

20           MR. SUNDQUIST:  That is correct, so

21   effectively one and the same.

22           THE COURT:  Okay.  So, now what is the point?

23   I mean, I don't understand.  This just got started, you

24   shouldn't -- giving you the benefit of the doubt, you

25   shouldn't, as we call, subsidize Mr. Berg, so he says

54

1   you go home and that's it.

2          Now, is he sues you again, I don't know

3   whether he will or not, that will be up to him and up

4   to you to resolve this matter.  But, I don't know why

5   you want to be in this case.

6          MR. SUNDQUIST:  Well, Your Honor, if it

7   please the Court, would I be able to submit -- I prefer

8   that the entire case be dismissed because of the

9   diversity question.

10          THE COURT:  Well, that has nothing to do with

11   you, that has to do with everybody else.

12          MR. SUNDQUIST:  Okay.  Well, if Your Honor

13   chooses to then exclude me so that diversity is not a

14   case, there still remains that he's submitted a

15   petition to you that I be removed without prejudice,

16   and I would request of Your Honor that if you so rule,

17   that it would be with prejudice and that I would not be

18   asked to pay this $558.

19          THE COURT:  Well, I can understand the $558.

20   I can't understand with prejudice or without prejudice,

21   because I have no idea whether or not you are liable

22   for what you did, or you are going to be found not

23   liable.  I mean, that hasn't been determined.

24          The only harm that you have suffered

25   potentially would be that you have been -- if you were

1   required to pay for service in the lawsuit that is not

2   going to go forward.  But, you are no more harmed than

3   if he hadn't sued you at all.

4           MR. SUNDQUIST:  Except that he has published

5   it and I'm in a ministry where my name and reputation

6   is very --

7           THE COURT:  Well, then you want to stay in

8   the suit.  I mean, we may severe the case and send it

9   to New Jersey and it will be you against Mr. Berg in

10   New Jersey and, you know, there the jury would then

11   determine who is right and who is wrong.

12           So, if you want to stay on -- it's kind of

13   rare that people want to stay in a lawsuit, you know,

14   they really want to go home.  But, if that is what you

15   want to do, you know, we may have to accommodate you.

16           MR. SUNDQUIST:  Well, before I answer that,

17   if I could --

18           THE COURT:  Yes.

19           MR. SUNDQUIST:  -- submit the -- and you can

20   rule on this, but is it possible that the person can

21   have that diversity issue, sort of unrob, a bank in a

22   sense?  You can amend it and then later introduce --

23           THE COURT:  The rules so provide.  It simply

24   says that in terms that are just, and that is the

25   question here, what is just in these circumstances?

1          MR. SUNDQUIST:  I had a concern that --

2          THE COURT:  Just is that you should be placed

3    back to where you would have been had you never heard

4    of Mr. Berg.  Do you know where that would be, that

5    would be if you incurred no expense and you can go back

6    and do your own business.

7          MR. SUNDQUIST:  Are you able --

8          THE COURT:  What will happen tomorrow, I

9    don't know.

10          MR. SUNDQUIST:  Are you -- do you have the

11   authority, Your Honor, to rule with prejudice

12          THE COURT:  I do have the authority, but how

13   can I rule with prejudice when there has been no

14   evidence one way or the other?  There's been, as you

15   say, only accusations and allegations.

16          Mr. Berg never had an opportunity to make his

17   proofs, you've never had an opportunity to defense

18   yourself.  The case has bearly gotten started, so how

19   could anyone possibly determine with prejudice or

20   without prejudice.

21          MR. SUNDQUIST:  Okay.

22          THE COURT:  So, I am going to protect you to

23   the extent that there will no financial cost to you for

24   doing that.

25          Now, you wasted a couple of hours this

1   morning and I appreciate that, not much I can do about

2   that.  But, other than that, you can either sign on for

3   the long ride here, or you can go home.

4          MR. SUNDQUIST:  Okay.  Well, I didn't want to

5   cause harm to the other defendants, but in the final

6   analysis, I will -- I don't see that I would want to

7   continue with -- I can make the appeal that this be --

8   I don't want to cause harm to the other defendants.

9          THE COURT:  Well, they have their own case,

10  they have nothing to do with you.

11         MR. SUNDQUIST:  That's correct.

12         THE COURT:  The have their own defenses and

13  they have their own case.  As I understand it, you had

14  very little to do with any of them

15         MR. SUNDQUIST:  I didn't even know --

16         THE COURT:  You just heard then on the radio

17  and you contacted them, and that was basically -- you

18  were in favor of the cause they were advocating, and

19  you said right on, that's about it.

20         MR. SUNDQUIST:  I came in about the last

21  month of this.  It has been going on close to a year I

22  think, so I didn't enter until the very late stages of

23  the game.

24         THE COURT:  Yes.

25         MR. SUNDQUIST:  And I entered only to --

1    because Dr. Orly's website was there one minute and it

2    vanished the next, and I just opposed that and I

3    thought that it should he restored to the person's

4    whose website it was.

5           THE COURT:  Look, you were, according to you,

6    participating in the process as a good citizen should

7    do, and that's the extent of your involvement, and

8    that's what your, you know, position is, entirely

9    understandable.  I don't know one way or the other what

10   would happen if it went to trial.

11          But, you are unrepresented, so you are

12   representing yourself.  You're a smart person, you

13   speak well, but you're not a lawyer, and I am not your

14   lawyer.  I am the judge, so I'm not representing or

15   giving you advice.

16          I'm just trying to sort out what the issues

17   are.  I mean, in sorting that out, I want to know what

18   your position.  So, that is where we are.

19          MR. SUNDQUIST:  Okay.  Well, I -- I would --

20   I don't wish to be in the case, and I don't wish to pay

21   the fine -- not the fine, it's not a fine.

22          THE COURT:  Not the fine.  The failure of the

23   service to take place.  Okay.  Well, I understand that,

24   Mr. Sundquist, so thank you for coming in today.

25          MR. SUNDQUIST:  So do I remain?

1    THE COURT:  Yes.  Why don't you wait until we
2 make some rulings here.

3    MR. SUNDQUIST:  Thank you, Your Honor.

4    THE COURT:  Now, Mr. Berg, one final and
5 brief overview here since you had sat quietly as you
6 heard your opponents describe some of these matters
7 slightly different than you did initially.

8    MR. BERG:  Thank you, Your Honor, just
9 briefly, mainly directed towards the comments by
10 Counsel Taitz, Orly Taitz.

11    In dossier number six, and I don't think I
12 have a copy here today, but it's admitted what I
13 attempted to provide to the Court, in this case, and I
14 state it in the pleadings, the social security number
15 that she has repeatedly stated is the social security
16 number of Lisa Liberi.

17    THE COURT:  Now, that is something different
18 than the other social security number that apparently
19 was included in some pleading in California?

20    MR. BERG:  First off, it's in some record she
21 states.  It's not even proper.  I do criminal work here
22 also in Pennsylvania.  Social security numbers are not
23 dispersed.

24    THE COURT:  Do you that piece of paper that
25 she waiving, what that is?

1    MR. BERG:  Yes, because she has also

2  publicized that.

3         THE COURT:  Well, what is that?

4         MR. BERG:  It's some criminal record.

5         THE COURT:  Is it an affidavit of some sort?

6         MR. BERG:  No.  It's a criminal and there is

7  a social security number on that.  She got that from

8  some, I'm not sure, legal purpose because you cannot

9  get -- when you go into a court to get documents,

10  certain documents, like social security numbers, are

11  blocked out.

12         THE COURT:  Yes.

13         MR. BERG:  Is she got that document from the

14  court file, she did that improperly.

15         THE COURT:  Okay.

16         MR. BERG:  The different social security

17  number, and she knows it, because she confirmed it with

18  Mr. Sankey, is the social security number of Lisa

19  Liberi, and she had been issued a new social security

20  number because of a family situation where the father

21  of her child was harassing and all kinds --

22         THE COURT:  Okay.

23         MR. BERG:  So, that is why a new constantly.

24  The number that she constantly and has been publicizing

25  is the social security number of Lisa Liberi.

1    Now, someone in Texas and we have supplied

2    that in our recent motion on Monday or Tuesday is being

3    used by a woman in Texas already.  So, by her action

4    someone else is already using the social security

5    number.

6        And on Monday of this week, Ms. Taitz, I

7    don't know how she found out, she is constantly trying

8    to bring me down, she has now published the maiden

9    name, the mother's name and where Lisa was born.

10        THE COURT:  Is that illegal?

11        MR. BERG:  Yes.  It's illegal because of what

12   she is doing.  She has no legitimate purpose.  She

13   states the purpose of all her actions is that because

14   of something that Lisa Liberi did, that any documents

15   in my possession have to be checked because they might

16   be fraudulent.  That is not her responsibility.

17        THE COURT:  Publicizing what, the maiden name

18   of a person's mother, is that it?

19        MR. BERG:  Now if you know where the person

20   is born and you have the mother's maiden name and you

21   have the social security number, there is nothing to

22   prevent any one of the 150,000, or many many more

23   people that she has dispersed this information to, to

24   apply for credit in Lisa's name.

25        We're in the day and age of identity theft.

62

1  She has now given all this information, and notice, you

2  know, she didn't do it, she has, she has given all of

3  this information out to the world.

4       So, we know one person in Texas who is using

5  the number.  They mention on the radio show that a loan

6  had just been taken out.  Maybe they took the loan out.

7  We're not even familiar with what they stated when they

8  are on the radio.

9       We have the transcripts and they will be

10 submitted to the Court at the appropriate time, and

11 they are being transcribed because we have people

12 monitoring what they are doing.

13      Their actions have not ceased, as recently as

14 Monday of this week on the website.  So that is why the

15 social security number was issued, and that's why we

16 filed in our motion requesting Your Honor to issue an

17 injunction or TRO, and also we ask for at this time,

18 and we gave case law in effect, that $20,000 should be

19 awarded to Lisa Liberi immediately so that she can move

20 and get new information.

21      And, also, Your Honor, we need an order from

22 Your Honor for the issuance of a new social security

23 number for Lisa Liberi, and we would appreciate that

24 being issue post haste.  The dissemination of this

25 constant information, it's abominable that a member of

63

1   the bar would even do this.

2           Also the fact, and I have to bring it to the

3   Court's attention, in attempting to bring me down, and

4   I had a real concern coming here today, and by the way,

5   my local police department knows about this, Ms. Taitz

6   has stated that she wants to purge, and the definition

7   of purge is to eliminate or kill.  She wants to get rid

8   of Lisa Ostella; Lisa Liberi, Phil Berg and also

9   President Obama.

10          She's put us in a camp of like Obama

11  supporters, which I'm definitely not, but by doing

12  that, there's people in the internet that -- there are

13  crazies out there that will take what she's saying for

14  real and that's why, you know, I have notified my

15  police department.  Also I was concerned because she's

16  here today, I don't know what her tactics are.

17          But, to bring me down and to want to purge

18  me, I mean those are serious charges which have been

19  filed, there's an investigation.

20          THE COURT:  Have you met any of these

21  defendants personally or has this all been over the

22  internet other than today?

23          MR. BERG:  Well, I met Ms. Taitz on December

24  8th in Washington, DC.

25          THE COURT:  At a hearing?

64

1        MR. BERG:  No, we had a joint, it was like a

2 press conference --

3        THE COURT:  Okay.

4        MR. BERG:  -- and we both participated that

5 day.

6        THE COURT:  You met her once?

7        MR. BERG:  Met her once.

8        THE COURT:  How about the Hale defendants,

9 have you ever met them?

10       MR. BERG:  Never met, but Mr. Hale has

11 subjected himself, I believe, because he was supposedly

12 supporting me --

13       THE COURT:  Yes.

14       MR. BERG:  -- and had me on his radio

15 station, then he started raising money for me on the

16 radio station, but if he raised it, I never saw one

17 penny.

18       THE COURT:  Okay.

19       MR. BERG:  So, I never met him.  I've never

20 met Mr. Sundquist until today.  We really didn't meet,

21 hello, Mr. Sundquist.

22       MR. SUNDQUIST:  Hello.

23       THE COURT:  Okay.

24       MR. BERG:  And I never met any of the

25 Sankeys, I have not met them.

1    THE COURT:  Okay.  I get your point, Mr.

2  Berg.  Final remark, if you have one final sentence

3  here or two.

4    MR. BERG:  Okay.  Ms. Taitz mentions that

5  there is a 60 day window for the publication of social

6  security numbers.  I'm not sure of everything in

7  California, but I know here in Philly -- I'm 65 years

8  young.

9    I've never seen a defendant's social security

10  number published by any newspaper in this major city,

11  in the Philadelphia Inquirer, the Bulletin days, the

12  Daily News, so I'm not sure where you get a window to

13  publish a social security number.  I would like to see

14  a law to that effect.

15    And I have filed as far as the jurisdiction,

16  I believe definitely through the internet, it brings

17  the jurisdiction here to Pennsylvania.  Thank you, Your

18  Honor.

19    THE COURT:  Thank you, Mr. Berg.

20    MR. BERG:  Thank you.

21    THE COURT:  I think everything has been said.

22  It appears to me that, number one, let's deal with Mr.

23  Sundquist first.  Mr. Sundquist will be dismissed from

24  the case without prejudice.

25    The case is just getting started.  He will be

66

placed back in a position that he would have been had

he not been sued.  He will not he required to pay for

failing to return the service form to Mr. Berg, and Mr.

Berg is in agreement that he should be dismissed.

So, both Mr. Berg and Mr. Sundquist will be

precisely back to where they would have been at that

time.  I say without prejudice because we have no facts

or basis either way to make a determination that this

should be with prejudice.

So, to the extent that Rock Salt Publishing

is a trade name, of course it's not a separate entity,

they will no longer be in the case, so they are

dismissed as well from the case.

So, as to those who remain here, there is no

prejudice to the others.  The legal prejudice that they

would have had a defense based upon lack of diversity

is not a cognizable legal prejudice, because that

defense really belonged to Mr. Sundquist who would have

been able to assert lack of citizenship, and since he

is being dismissed and he agrees and consents to being

dismissed, that is not prejudice to the other

defendants in a legal sense.

Now, it seems to me that there are three

issues here hearing what you have to say.  Number one

is, is there personal jurisdiction over each and every

1  defendant in the case.  There may be as to some, maybe

2  not as to other, and we can't lump them all together

3  and have it up or down.

4       Then, number two, are all of the defendants

5  involved in one action or are these three separate

6  actions, that is do the factual patterns of the

7  foundations of all the three cases emanate from a

8  common set involved with the facts?

9       Do these cases arise substantially from the

10  same set of facts?  Is there a common thread here to

11  these cases?  So, I am not entirely certain whether we

12  know the answer to that, and whether there are

13  sufficient facts to make that determination.

14       Then the third issue and it depends, of

15  course, on number one and number two, assuming that

16  there is personal jurisdiction and assuming that there

17  is either one case or three cases or two cases, should

18  those cases be kept here and should they be transferred

19  to California, the Western District of Texas, somewhere

20  else, or remain here.

21       I suppose that it is possible that some part

22  of this case could be transferred to another district

23  and the other part would retain here.  So, there are

24  three separate questions it seems to me need to be

25  answered.

1   Now, there has been a flurry of pleadings in

2   this case, some have been helpful, some have obfuscated

3   rather than illuminated.  So I am going to issue the

4   following management order.

5   All of the motions in the case are denied

6   without prejudice.  A rule to show cause is issued upon

7   Mr. Berg and the other plaintiffs to show cause why,

8   number one, the case should not be dismissed for lack

9   of personal jurisdiction.

10   The response to the rule to show cause should

11   take each individual defendant and allege facts, that

12   is state facts, not allegations, but facts based upon

13   affidavits or other admissible evidence which will show

14   that this is the proper forum in which to entertain

15   this lawsuit.

16   Further, a rule to show cause will be issued

17   upon Mr. Berg and the other plaintiffs to show cause

18   why this case should not be severed into three separate

19   cases; one involving the Hale defendants, one involving

20   the Belcher defendant; and one involving Taitz and

21   Sankey.

22   As to each of those defendants or group of

23   defendants, the plaintiffs are to show and point to

24   facts which demonstrate either a common thread or a

25   common scheme or purpose that supports the allegation

69

that the cases should be tried together.

Thirdly, a rule to show cause will be issued upon Mr. Berg and the other plaintiffs to show cause why the cases should not be transferred; the Taitz and Belcher to the Central District of California and the Hale defendant cases to the Western District of Texas and that would be, of course, under 1404(a) in the interest of justice and for the convenience of the parties and witnesses.

Plaintiffs should indicate what witnesses and what parties reside where and who would be called, and should generally visit the Jumara factors which the Third Circuit has identified as the private and public factors which are relevant to 1404(a) inquiries.

Mr. Berg will have thirty days in which to respond. Then the defendants will have thirty days within which to reply. Any factual allegations must be supported by affidavit or other admissible evidence.

Moreover, any defaults that have been entered will be opened in the case, and there is substantial justification to do so in that no prejudice will insure to the plaintiffs.

The failure to file a timely response was not willful or intended to delay the proceedings. Accordingly, the request for entry of default judgments

70

1   will be denied without prejudice.

2        The request for a temporary restraining order

3   will be denied, except that it would be a serious

4   problem if there is any publication of the social

5   security number of anyone in this case, and I think

6   that would tip the equity significantly.

7        Now, by that to the extent that Ms. Liberi's

8   number may be subject to some controversy as to which

9   number belongs to her, I would advise the defendants to

10  publish no social security numbers of anyone.

11       It serves no purpose whatsoever to publish

12  someone's social security number in this day and age.

13  It inflicts harm that is unrelated to this case, and it

14  is unwise and improper to do so.

15       I think that the defendants should take that

16  to heart.  To the extent that this has happened, I

17  don't know whether or not it has happened, but it

18  should not happen in the future.

19       Other than the publication of the social

20  security number, I do not find that there is

21  irreparable harm that has been demonstrated by the

22  pleadings that have been filed, and I think that the

23  likelihood of success on the merits is pretty much at

24  issue at this early point.

25       It may well be as the record develops that a

1   request for injunctive relief could be renewed by the

2   plaintiff.  I am not foreclosing that.  I'm simply

3   saying that on the basis of what has been filed and the

4   arguments that I have heard today, it does not appear

5   that such relief which is extraordinary should be

6   granted.

7          The case raises significant issues, as I

8   indicated at first.  I'm not going to prejudge the

9   motivation of anyone involved in this case on either

10  side.

11         In a court of law, we will look at the

12  evidence and we will try to apply the law fairly and in

13  a timely fashion.  There should be no further motions

14  filed in this case without leave of Court.

15         Leave of Court should be sought by way of a

16  letter to the Court, and the Court will then consider

17  whether or not the attached on file motion should be

18  filed of record.

19         There is no point in burdening the system

20  until these threshold issues are flushed out and

21  appropriately framed, and the parties have an

22  opportunity to addressed them.

23         An order of the Court will issue today, and

24  that order will capture my decision from the bench.  To

25  the extent that the written order conflicts with

72

1  anything I have said on the bench, the written order

2  controls.  Mr. Berg.

3        MR. BERG:  Thank you, Your Honor, two things.

4  Could an order be issued by this Court to Social

5  Security for the issuance of a new social security

6  number for my client, Lisa Liberi?

7        THE COURT:  Well, I have advised the parties

8  accordingly.  If there is a violation, you bring it to

9  my attention.

10        MR. BERG:  But, Your Honor, the number is out

11  there already.

12        THE COURT:  Well, I can't do anything about

13  the number out there, to the extent that that has

14  already been disseminated.  I don't know what you would

15  like me to do about a number that is already out there.

16        MR. BERG:  No, I would like an order issued

17  by Your Honor to the Social Security Administration to

18  allow Lisa Liberi to have a new social security number.

19  She needs court order for that.

20        THE COURT:  Well, I think that is a separate

21  proceeding, not related to this case.  I'm sure there

22  is administrative proceedings where such relief can be

23  awarded.  I don't think it's appropriate to do it in

24  this case and in this forum.

25        MR. BERG:  Can other information not be

1  disseminated, like no further dissemination of her

2  birth place, her maiden name or date of birth.

3       THE COURT:  That raises some issues where the

4  Court should be in the business of regulating what can

5  and cannot be disseminated.  On its face, there does

6  not appear to be anything unlawful about disseminating

7  that Philip Berg was born in Philadelphia,

8  Pennsylvania.

9       Maybe in context what you are saying is that

10  even that even though any one piece of information may

11  be innocent, all of them put them together may have a

12  detrimental effect, but I don't think that would be

13  appropriate in this case.

14       MR. BERG:  Thank you.

15       THE COURT:  Again, I'm not foreclosing that,

16  such relief may be necessary in the future, if at all.

17       MR. HOPPE:  Your Honor, I just have one thing

18  I wanted to ask you about.  With the Sankey firm, they

19  have not filed a responsive pleading --

20       THE COURT:  Which one, I'm sorry?

21       MR. HOPPE:  This is the Sankey firm --

22       THE COURT:  Yes.

23       MR. HOPPE:  -- which is the one I was telling

24  you Mr. Sankey was not affiliated with.  I'm not sure

25  how to advise him on how to handle this.  They have not

74

1  actually been served, at least that is what I have been

2  told --

3          THE COURT:  Yes.

4          MR. HOPPE:  -- because Mr. Sankey is not

5  affiliated with them, they have not filed a responsive

6  pleading.  Your Honor has indicated that you're not

7  going to enter a default judgment against them, but you

8  don't want us to file anything.

9          THE COURT:  Well, a default has been entered

10  against him?

11          MR. HOPPE:  Well, default papers were filed,

12  that's correct.

13          THE COURT:  Yes, that's called a default.

14          MR. HOPPE:  Yes.

15          THE COURT:  Entry of a default in the federal

16  court is not the equivalent to a judgment.

17          MR. HOPPE:  That's correct.

18          THE COURT:  It is simply the entry of a

19  default, and there is a question of service.

20          MR. HOPPE:  I understand -- I'm sorry for

21  interrupting.  I understand that Your Honor is opening

22  that default as to all the defendants and that's fine.

23          THE COURT:  Yes.

24          MR. HOPPE:  And the only reason I'm asking

25  this is because you said you didn't really want

1  anything else filed without leave of Court.  What

2  should I advise them to do about filing a responsive

3  pleading related to the service issue?

4          THE COURT:  Well, again, as I said to

5  Lundquist --

6          MR. HOPPE:  Sundquist, yes.

7          THE COURT:  -- I'm sorry, it's not Mr.

8  Lundquist.  Mr. Sundquist.  The opening of a default in

9  that case does not mean anything on the merits.

10          MR. HOPPE:  Yes.

11          THE COURT:  It simply means that the

12  obligation to prove liability remains for the

13  plaintiffs.  My position as to that would be that

14  default will be opened as well.

15          MR. HOPPE:  Great, okay.

16          THE COURT:  It does not mean that Mr. Berg

17  may not at a later date, you know, proceed against him

18  and prove a case, et cetera.

19          As you know, they can either challenge it

20  here or they can wait for a judgment to be entered and

21  if it is going to be enforced, they can challenge it in

22  California, that is entirely up to them.  I'm not

23  making any rulings.  I think that all of the defaults

24  in this case are premature.

25          MR. HOPPE:  Yes.

76

1        THE COURT:   Okay.

2        MR. HOPPE:   Thank you.

3        THE COURT:   Very good.   Thank you all.

4        ALL:   Thank you, Your Honor.

5        (Proceedings adjourned, 12:08 p.m.)

6                       *  *  *

CERTIFICATION

     I, Donna M. Anders, do hereby certify that the foregoing is a true and correct transcript from the electronic sound recordings of the proceedings in the above-captioned matter.


8-1-10
Date

Donna M. Anders