IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

LISA LIBERI, et al          : CIVIL ACTION NO. 09-1898
                            :
                            :
                            :
                            :
                            :
                            :
         v                  :
                            :
                            :
                            :
                            :
                            :
                            :
                            :
ORLY TAITZ, a/k/a           :
DR. ORLY TAITZ; a/k/a       :
a/k/a WWW.REPUBX.COM,       : Philadelphia, Pennsylvania
a/k/a ORLY TAITZ, INC.,     : December 20, 2010
et al,                      : 2:39 p.m.

- - -

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE EDUARDO C. ROBRENO
UNITED STATES DISTRICT JUDGE

- - -

APPEARANCES:

For the Plaintiffs:     PHILIP J. BERG, ESQUIRE
                        Law Offices of
                        Philip J. Berg
                        555 Andorra Glen Court
                        Suite 12
                        Lafayette Hill, PA  19444


For Defendant Taitz:    ORLY TAITZ, ESQUIRE
                        Law Offices of Orly Taitz
                        26302 La Paz
                        Suite 211
                        Mission Viejo, CA  92691


*Transcribers Limited*
17 Rickland Drive
Sewell, NJ 08080
856-589-6100 · 856-589-9005

2

1    Audio Operator:        Joseph Matkowski

2    Transcribed By:        Matthew Tilghman

3                              - - -

4            Proceedings recorded by electronic sound
     recording; transcript produced by computer-aided
5    transcription service.

6                              - - -

3

1          (The following was heard in open court at
2     2:39 p.m.)
3          THE COURT:  Good afternoon.  Please be
4     seated.  Okay, let's see.  Let's just call the roll to
5     make sure that we have everyone who is interested.  Mr.
6     Berg.
7          MR. BERG:  Yes, Your Honor.
8          THE COURT:  Okay.  You are representing --
9     tell me who you are representing today.
10          MR. BERG:  I'm representing the plaintiffs,
11     Lisa Liberi and Lisa Ostella.
12          THE COURT:  Okay.  They are both plaintiffs
13     in the case?
14          MR. BERG:  That's right.
15          THE COURT:  Okay.  Anyone else here on your
16     behalf?
17          MR. BERG:  I'm representing myself also.
18          THE COURT:  So you're a plaintiff as well?
19          MR. BERG:  Yes, sir.
20          THE COURT:  Okay.  On the defendant's side,
21     Ms. Taitz, good afternoon.  You are here representing
22     yourself?
23          MS. TAITZ:  Myself and defendant, Freedoms
24     Foundation.
25          THE COURT:  Freedom Foundation.  As I

4

1   understand, you're a member of the bar in California,

2   is that right?

3           MS. TAITZ:  Yes, Your Honor, and also Supreme

4   Court and the Third Circuit Court of Appeals.

5           THE COURT:  Okay.  Very well.  Thank you.  Is

6   there anyone else in the courtroom that has any

7   connection to this case either by way of being an

8   attorney or being a party in this case?

9           (Pause in proceedings.)

10          THE COURT:  Hearing no response, we'll

11  proceed then with the three plaintiffs and with Ms.

12  Taitz as -- in her personal capacity and as counsel for

13  Defend Our Freedoms Foundation.

14          So, Mr. Berg, the ball is in your court.  You

15  have asked for a temporary restraining order, and the

16  Third Circuit suggested I guess you could say or

17  directed that I hear that motion, so here we are.

18          MR. BERG:  Thank you, Your Honor.

19          (Pause in proceedings.)

20          MR. BERG:  Your Honor, may it please the

21  Court?  Good afternoon, Your Honor.  We are here today

22  on my motion for a TRO.

23          As a preliminary matter, Your Honor, as we

24  did at the August 7, 2009 hearing before Your Honor,

25  I'm requesting this Court to order that plaintiff Lisa

1  Liberi not disclose her residency as it places her at

2  great risk as a result of Orly Taitz publishing all of

3  Ms. Liberi's primary identification information,

4  including --

5          MS. TAITZ:  I object.

6          MR. BERG:  -- full social security number,

7  date of birth, place of birth, mother's maiden name, et

8  cetera, and due to the threats Ms. Liberi has been

9  receiving as a result of this lawsuit.

10          THE COURT:  Okay.  Well, why don't we get to

11  it?  For now, you don't have to do that.

12          MR. BERG:  Thank you.

13          THE COURT:  But we'll see where we go with

14  that.

15          MR. BERG:  The basis of the TRO is that

16  defendant Orly Taitz and Linda Belcher, who is not

17  here, but she was properly served, have been cyber

18  stalking, cyber --

19          MS. TAITZ:  Objection, Your Honor.

20          THE COURT:  Please do not interrupt again.

21  Okay?  He is making an argument of counsel.  You'll

22  have an opportunity to make your argument.

23          MS. TAITZ:  Okay.

24          MR. BERG:  Have been cyber stalking, cyber

25  bullying, harassing, intimidating, and retaliating

6

1  against plaintiffs Lisa Liberi, Lisa Ostella, and now

2  they have started on plaintiffs' witness, Shirley

3  Wadell (ph).

4       In addition, as you may recall from pleadings

5  in this court, defendant, Orly Taitz filed a statement

6  from Jeff Staples with attached e-mails that have been

7  altered and forged fraudulently removing Jeff Staples'

8  e-mail address and inputting plaintiff Liberi's e-mail

9  address.  These documents were filed with this Court on

10 September 28th, 2010.

11      On October 7th, 2010, we submitted to this

12 Court the correct e-mails that had not been altered.

13 Once plaintiffs brought out the forgeries by Jeff

14 Staples, which were filed as genuine by Orly Taitz, and

15 after plaintiffs filed their appellate brief in the

16 appeals court, a nasty, disgusting, horrible website

17 was setup in plaintiff Lisa Liberi's name located on

18 the internet at http://www.lisaliberi.com

19      THE COURT:  Now, tell me and maybe you're

20 going to get to this now.  What evidence do you have as

21 to who was responsible for that site?

22      MR. BERG:  We have documentation here, which

23 will be submitted by the witnesses.

24      THE COURT:  In other words, how do you do --

25 how do you -- how does one establish who has actually,

7

1   you know, established the website?

2           MR. BERG:   My -- I can read certain things,

3   but my computer --

4           THE COURT:   Okay.

5           MR. BERG:   -- expert -- my computer witness

6   will testify --

7           THE COURT:   Okay.

8           MR. BERG:   -- to that, Your Honor.

9           THE COURT:   All right.

10          MR. BERG:   In addition, e-mails were sent out

11  by a convicted felon at lisaliberi.com to people

12  located on plaintiff Liberi's, old AOL address book.

13  Recipients of the e-mails believe they had come from

14  plaintiff Liberi.

15          None of these documents, and we'll show

16  evidence, were prepared by us, maintained by us.   They

17  have all been involved by Orly Taitz, Jeff Staples, and

18  Linda Belcher, and we will have -- we have evidence to

19  submit to the Court.

20          The domain name was registered privately,

21  however, after complaints filed by plaintiff Liberi,

22  the domain name, lisaliberi.com, was found to be in

23  violation of domainregistery.com and

24  privacyprotect.org's agreement of use policy, and the

25  privacy was removed from the domain name.   Once that

1   was removed, Your Honor, we were able to track it more

2   and the witness will testify to that.

3         The domain was first registered privately,

4   then it was placed in plaintiff Liberi's name, then it

5   was placed in Jeffrey Staples' name.  Copies of the

6   domain history showing this trail have been filed with

7   the Court, but we will bring it to your attention again

8   today.

9         Several violations here.  The first is cyber

10  stalking.  Cyber stalking is the use of the internet,

11  e-mail, or other electronic communications to stalk,

12  and generally refers to a pattern of harassing,

13  threatening, or malicious behaviors.  Cyber stalking

14  can be considered to be the most dangerous of the three

15  types of internet harrassment.

16        The various factors which we will identify

17  for cyber stalking, Your Honor, deal with false

18  accusations.  Many cyber stalkers try to damage the

19  reputation of their victim and turn other people

20  against them by posting false information about them on

21  websites.  That was done in this case.

22        Attempts to gather information about the

23  victim.  Cyber stalkers may approach their victims'

24  friends, family, and work colleagues to obtain personal

25  information.  That was done in this case.

9

1              Encouraging others to harass the victim.

2    Many cyber stalkers try to involve thirty part -- third

3    parties in the harrassment.  That was done.

4              False victimization.  A cyber stalker will

5    claim that the victim is harassing him or her.  And

6    that was done, and we'll have evidence of that showing

7    that supposedly we were attacking Orly Taitz, which

8    never happened.

9              Attacks on data and equipment.  Also, cyber

10   stalkers do not threaten at times their victims, but

11   they post the victim's name and address on the internet

12   along with false claims.

13             THE COURT:  Well, but it seems to me, Mr.

14   Berg, that maybe ultimately all that would happen.  But

15   you must show today -- and I don't know about Linda

16   Belcher and Jeff Staples because they are not

17   defendants in this case --

18             MR. BERG:  Linda --

19             THE COURT:  -- you're seeking -- is Linda

20   Belcher a defendant?

21             MR. BERG:  Linda Belcher is, yes.

22             THE COURT:  Okay.

23             MR. BERG:  Jeff Staples is not.

24             THE COURT:  As to those defendants -- Jeff

25   Staples, is he a defendant?

1    MR. BERG:  No, he is not.

2    THE COURT:  As to those defendants against

3 whom you wish to have some preliminary relief entered,

4 you've got to connect them up to this scheme.  I mean

5 that's what we're here to do.

6    MR. BERG:  Absolutely.

7    THE COURT:  If you're able to do it --

8    MR. BERG:  Yes.

9    THE COURT:  I mean whether there were

10 damages, et cetera, that may come at a later date.

11 Today is a question of irreparable harm, which means

12 that assuming this is all true, does anybody in this

13 lawsuit do anything that entitles you to preliminary

14 relief?  So you're saying that you have one or two

15 witnesses who are going to connect the dots here?

16    MR. BERG:  Yes.  Why don't we do that.

17    THE COURT:  Okay.

18    MR. BERG:  I just --

19    THE COURT:  I'm going to give Ms. Taitz first

20 an opportunity to make an opening statement, and then

21 you can call your witnesses.

22    MR. BERG:  And also, Your Honor, I will set

23 forth now or later the fourth criteria necessary for

24 TRO.

25    THE COURT:  No, I think we know those.

FORM 2094   ☺ PENGAD • 1-800-631-6989 • www.pengad.com

1          MR. BERG:  Okay.

2          THE COURT:  But you will get an opportunity

3   to say it again.

4          MR. BERG:  Thank you, Your Honor.

5          (Pause in proceedings.)

6          MS. TAITZ:  Good day, Your Honor.  My name is

7   Orly Taitz.  I'm sorry for my voice.  I'm losing it

8   right now.  But I'm an attorney and Mr. Berg is also an

9   attorney.

10         Mr. Berg, he and his assistant, Lisa Liberi,

11  have colluded with Ms. Lisa Ostella, who volunteered to

12  be a web master for my foundation, Defend Our Freedoms

13  Foundation, whereby Ms. Ostella has locked me out, out

14  of the website for my foundation and simply continued

15  collecting donations and pocketing the money.

16         She continued also promoting Mr. Berg on the

17  site of my foundation and denigrating me, calling me

18  all kinds of names, working together with Liberi.  I

19  was contacted by one Linda Belcher who used to be a

20  researcher for Mr. Berg.

21         She stated that assistant for Mr. Berg is one

22  Lisa Liberi who was convicted in 2008 in the State of

23  California of multiple counts of forgery of documents,

24  forgery of official seal, and theft.

25         I am working with an investigator, Mr. Neil

1  Sankey, who has been an investigator for twenty years,

2  he has been a policeman for Scotland Yard, he is a

3  licensed investigator in California, who verified those

4  facts.

5       We have interviewed her ex-boyfriend who is

6  by my office, father of her son.  I personally received

7  from him her picture.  It looks exactly like her,

8  verified her record.  Yes, indeed, Ms. Liberi is a

9  convicted forger from California.  She had multiple

10 charges in Texas, later on twenty-three charges in

11 California.  She was convicted of ten charges in

12 California in 2008.

13      According to her probation she is not allowed

14 to reside in the State of Pennsylvania.  She is allowed

15 to reside only in California or New Mexico.  I have

16 contacted Mr. Berg, and that was mid-April of last

17 year, 2009, and I stated to him please stop this.

18      Mr. Berg, please stop this.  You are aiding

19 and abetting somebody from diverting funds from my

20 foundation, you're working with a forger, you're

21 submitting to different courts documents that were

22 prepared by a forger.

23      As a matter of fact, he has submitted to

24 Judge Surrick a case, Berg v. Obama where he has

25 submitted affidavits supposedly from Africa stating

that Barack Obama was born in Africa.  And in his own
affidavits in this court he stated that the whole thing
was prepared by his assistant, Lisa Liberi.

A forger has prepared documents that Barack
Obama was born in Africa.  Those were admitted --
submitted in this court, in this court, Eastern
District of Pennsylvania, in the Third Circuit Court of
Appeals, Supreme Court of the United States.  She has
been preparing all of the documents here.

I simply told Mr. Berg, can I come with my
investigator and check because I had a similar case and
I wanted to check that those documents were not forged.
That is all I asked him.

I said I have investigator, I have a forensic
document expert, I just wanted to see that the
documents were not forged.  He refused to allow me to
check the originals.  I also mentioned to him that I
have her summary of convictions and probation
conditions.

According to Liberi's probation conditions
she is not allowed to file any lawsuits without consent
of her probation officer because she was a vixacious
plaintiff, she sued everybody in San Bernardino County,
she sued district attorneys, she sued the county, one
lawsuit for thirty million, one to a hundred and eighty

million.

I told him she is a vixacious plaintiff, you
are not allowed -- she is not allowed according to
conditions of her probation, she is not allowed to
bring any legal actions without consent of her
probation officer.

I also stated to him that she is not allowed
to open any credit accounts, specifically handle credit
cards of others while at the same time, Mr. Berg and
Ms. Liberi were doing nationwide drives where they were
collecting moneys from unsuspecting public because Mr.
Berg has sued President Bush and Bush administration
previously in your courtroom.

I'm sure you remember the lawsuit where Mr.
Berg has sued a hundred and fifty-six members of Bush
Administration.  He also sued President Obama, so he
was getting the donations from all over the county and
those donations were in the hands of a convicted thief
on probation.  It is unthinkable that a licensed
attorney will do a thing like this.

I just told him, Mr. Berg, you need to
disassociate yourself from this person, this is
dangerous, you are putting public in danger.  He
ignored everything and I have published on my website
simply a printout that was in public records, it was a

1  printout of Liberi's convictions of theft, forgery of

2  forged official seal with a proper purpose of warning

3  the public.

4      When this was published and Berg starting

5  getting phone calls from the public that were asking

6  him to get their money back and questioning why is he

7  doing this, he filed a completely frivolous lawsuit

8  claiming that she is a different person, that she is

9  not Lisa Liberi who was convicted in California, that

10  she is some other Liberi residing in the State of

11  Pennsylvania, even though she is not allowed to reside

12  here in Pennsylvania according to her probation.

13      He also accused me and multiple other

14  individuals of multiple crimes.  I simply asked him for

15  her driver's license.  Your Honor, I am a licensed

16  attorney, I am also a licensed doctor of dental

17  surgery, I am married, I have three children.

18      I never was convicted of any crime, I never

19  committed any crimes, I have a completely clean rzcord

20  and those people have accused me of crimes after I

21  simply --

22      THE COURT:  Well, what is your connection to

23  lisaliberi.com?

24      MS. TAITZ:  None, none, zero.  I have nothing

25  to do with this website, I never knew this website was

16

1   being created.  I never had anything to do with this

2   website.  I don't own it, I never had any access to it,

3   I had never anything to do with it.  Your Honor, this

4   is a third hearing, what is happening here is I have

5   demanded Liberi's driver's license.

6           THE COURT:  Okay.

7           MS. TAITZ:  And what they have done, they

8   defrauded you, Your Honor.  They had a hearing here in

9   August where you specifically stated, you ordered Mr.

10  Berg to provide Liberi's identifying documents.  He

11  asked to put it under seal claiming that I'm

12  threatening him.

13          He made up an outrageous accusation where he

14  accused me, a member of the bar, of trying to hire a

15  hitman and kill Liberi.  He came up with insane

16  accusations against me and many other individuals

17  simply not to provide her driver's license and simply

18  to try to obfuscate the fact that she is not a resident

19  of Pennsylvania, that she is indeed that forger from

20  California.

21          I have never threatened anybody --

22          THE COURT:  Well, who is Lisaliberi.com, what

23  is that website?

24          MS. TAITZ:  This was a website that was

25  created by a third party.  I had nothing to do with

1   this website.  The only thing that they did, they

2   provided hearsay from Lisa Liberi herself, from a

3   convicted forger and thief who said I talked to a man

4   and this man talked to another man, Mr. Staples and he

5   told that man to tell me that Orly Taitz had something

6   to do with this.  Same thing with Belcher, clear

7   hearsay, triple layer hearsay.  They provided none, no

8   evidence --

9           THE COURT:  Now is the website up, do you

10  know?

11          MS. TAITZ:  No, the website, she contacted

12  the hosting company and complained and according to her

13  statements that she submitted to Third Circuit Court of

14  Appeals, the website was taken down.

15          There is no ongoing harm, she did not provide

16  any -- or they did not provide any evidence of me on

17  Ms. Belcher who is also a defendant in this case who

18  was also a whistle blower who blew the whistle on Berg.

19  They never provided any evidence of us having anything

20  to do with this case.

21          Moreover, Your Honor, in her paperwork that

22  she submitted to Third Circuit Court of Appeals, by the

23  way they never served me with what they submitted here,

24  I only had what was submitted in Third Circuit Court of

25  Appeals.

18

1        Ms. Liberi demanded to issue a temporary
2    restraining order to remove her picture.  Well, the
3    only picture that was on that website and she provided
4    in her own pleadings was her mugshot from California.
5    So in her own pleadings she had admitted that she is
6    indeed, Lisa Liberi convicted felon from California.
7        THE COURT:  Okay.  So, your defense here as I
8    understand it is you have nothing to do with this
9    website, this has nothing to do with you.  You may
10   agree or may disagree with what it says, but you are
11   not the person that put this up?
12       MS. TAITZ:  A, I am not a person who has
13   anything to do with this. I believe Ms. Belcher has
14   submitted the letter to you where she has stated the
15   same thing, she had nothing to do with this website and
16   there is no evidence that we had anything to do with
17   this.  Two, in order for TRO they have to show that
18   there is ongoing damage, there isn't.
19       THE COURT:  But it may be likely to reoccur,
20   that is I think the problem.
21       MS. TAITZ:  Three, the person that they are
22   accusing of creating this is not part of this lawsuit.
23   It is Mr. Staples who is out in Texas, and Mr. Berg is
24   an attorney and he knows that his proper action would
25   be in Texas.

1      He can call the police department if he

2  thinks that she is threatened, she can call her local

3  police department, the problem is she was never

4  threatened by anybody.  As a matter of fact, that

5  website I looked at what they provided, it was a spoof,

6  it was just a parody.  There was no threat to her

7  anywhere.

8      The only reason they are making up these

9  accusations is to obfuscate the fact that indeed, she

10  is a convicted forger and thief and that website

11  provided her mugshot.  She simply doesn't want her

12  mugshot on the internet and that is the reason why yet

13  again --

14      THE COURT:  Was her social security on the

15  internet too?

16      MS. TAITZ:  No, there is no social security

17  there and there was no -- it was -- the only thing that

18  was there was her mugshot.  Now, Your Honor, we have

19  now new evidence her admission that this is her

20  mugshot.

21      We have your order from last year, August

22  7th, 2009 demanding that Mr. Berg file her identifying

23  documents.  He committed fraud and never filed any

24  identifying documents.

25      Third Circuit Court of Appeals has ruled time

20

1  and again and I will cite the -- if I may cite those

2  cases, that in order for the federal court to have

3  jurisdiction it is burden on the party that asserts

4  jurisdiction not diversity to show that indeed there is

5  diversity, and due to the fact that Mr. Berg and Ms.

6  Liberi have committed fraud, never provided any

7  identifying documents for Ms. Liberi for a year and a

8  half.  I'm seeking dismissal of this whole case due to

9  lack of subject matter --

10        THE COURT:  Well, you are in the court of

11  appeals, that has nothing to do with me here.

12        MS. TAITZ:  Well, Your Honor, now --

13        THE COURT:  So, when you get to argue before

14  them, you can make that argument and they may agree

15  with you and then the case will come back here and then

16  we will see what we do at that point.  If it doesn't

17  come back here, it will go to California which is your

18  home state or to Texas and the case will go on its way.

19        So my role here today is limited to determine

20  whether or not there is a need for a temporary

21  restraining order in this case and that is what I'm

22  going to listen to.

23        This is a tale of woes that goes back some

24  time and it is a complicated one and it may require

25  ultimately a jury determination of these issues and if

1   that happens here, fine.  If it happens as I believe it

2   should happen in both California and Texas, then that

3   is a different story.

4           MS. TAITZ:  Your Honor, if I might state, I

5   have here your order.

6           THE COURT:  Okay.

7           MS. TAITZ:  In your order that was filed --

8           MR. BERG:  Your Honor, can we just refer to

9   what date that is?

10          THE COURT:  Yes, what is it that you are

11  referring to?

12          MS. TAITZ:  Yes, June the 4th, page two.

13          THE COURT:  Okay.

14          MS. TAITZ:  You have written down,

15  "Jurisdiction for this action is predicated upon

16  diversity of citizenship, 28 U.S.C. 1332, the

17  citizenship of all parties is as follows for

18  plaintiffs, Berg and Liberi are Pennsylvania citizens."

19          I have filed motion for reconsideration

20  because what it is you have reached a decision that

21  goes to the essence of this whole case.  A, it has to

22  do with diversity and also has to do with the essence

23  of the case.

24          THE COURT:  Okay.  Let's not waste any time.

25  You have to argue to the Court of Appeals that that

1 decision was incorrect and they will give you an

2 opportunity to do that.

3 　　　　Now, in the meantime, we are here to consider

4 a temporary restraining order and that is what we are

5 going to do.  Now, you either do that or here is the

6 door.

7 　　　　So you can either participate in this hearing

8 or if you wish to argue something else, you'll have to

9 argue to the Court of appeals, okay?  Thank you.  Mr.

10 Berg, call your first witness.

11 　　　　MR. BERG:  Thank you.  Can I have just a one

12 minute rebuttal?

13 　　　　THE COURT:  No, let's get going.

14 　　　　MR. BERG:  My first witness is Lisa Liberi.

15 　　　　THE COURT:  Okay.

16 　　　　LISA LIBERI, Plaintiffs' Witness, Sworn.

17 　　　　COURTROOM DEPUTY:  Please state your full

18 name and spell your last name for the record, please?

19 　　　　THE WITNESS:  Lisa Liberi, L-I B as in boy,

20 E-R-I.

21 　　　　THE COURT:  Please keep your voice up if you

22 can, Ms. Liberi.  Let's begin please.

23 　　　　　　　　　DIRECT EXAMINATION

24 BY MR. BERG:

25 Q　　You did say your name.  Why are we here today?

1   A   To obtain a restraining order against Ms. Taitz and

2   Ms. Belcher and --

3   Q   You have to speak up, I can't here you.

4   A   To obtain a restraining order against Ms. Taitz,

5   Ms. Belcher, and their witness, Jeff Staples.

6   Q   Okay.  Prior to this time have you ever met or

7   spoken with Ms. Taitz?

8   A   No.  Wait, I did speak to her once, I'm sorry.

9   Q   What was that conversation --

10  A   I've never met her.

11  Q   What was that conversation about?

12  A   That was in November of 2008, she wanted help with

13  a writ of certiorari, she wanted to know how to

14  become --

15          MS. TAITZ:  Object, I object, it never

16  happened.

17          THE COURT:  I'm sorry?

18          MS. TAITZ:  She is providing a statement that

19  is incorrect.  She -- you know what, I'll ask it on the

20  cross-examination.

21          THE COURT:  Okay.  Let's go, let's proceed.

22          THE WITNESS:  She wanted help with a writ of

23  certiorari in the U.S. Supreme Court and she wanted to

24  know how to become a member of the U.S. Supreme Court

25  and I believe that was in or about November of 2008.

Ms. Liberi - Direct                    24

BY MR. BERG:

Q   Okay.  Did you have a subsequent conversation with
her about that where she related something about myself
and you?  Did Orly Taitz ever threaten you?

A   Yes, after we would not assist her and you pretty
much told her to fly a kite, she stated that she was
going to bring you down and to do so she was going to
destroy me and get rid of me.

Q   Is that the only threat she made against you?

A   No, she has been inciting on her website for quite
some time.

Q   As recently as when?

A   As recently as the 10th of December, after the
Third Circuit came out with the order referring the
motion for the TRO back to Judge Robreno's court.

Q   So December 10th of this year?

A   Yes, sir.

Q   Okay.

            THE COURT:  Now, when you say a website, what
website is that?

            THE WITNESS:  I'm sorry, that was on her
website, orlytaitzesq.com.

            THE COURT:  Okay.

BY MR. BERG:

Q   How is Orly Taitz, Linda Belcher, and their

Ms. Liberi - Direct                         25

1   witness, Jeff Staples cyber stalking, cyber bullying

2   and cyber harassing you?

3   A   After Orly Taitz made the threat to take me down

4   she started publishing all the time, she started

5   publishing all the time statement after statement she

6   was accusing you, myself, Lisa Ostella after we filed

7   suit of harassing her, defaming her, slandering her,

8   threatening her witnesses, filing forged and false

9   documents with the Court, when we were following her

10  own postings from her website and affidavits from

11  people --

12              MS. TAITZ:  Objection.

13              THE WITNESS:  -- that found them.

14              MS. TAITZ:  Objection, Your Honor.

15              THE COURT:  Yes?

16              MS. TAITZ:  She stated that I forged

17  documents, there is no foundation to this accusation.

18              THE COURT:  Okay.  Well, you will get a

19  chance to cross-examine.

20              MR. BERG:  Your Honor, may I approach with

21  Exhibit 1?

22              THE COURT:  Yes, you may.

23              MR. BERG:  Thank you.

24              (Pause in proceedings.)

25              MR. BERG:  Your Honor, let the record show

Ms. Liberi - Direct                              26

1   that I've premarked our exhibits, Your Honor, this is

2   Plaintiffs' Exhibit 1 and this is copies of defendant

3   Orly Taitz postings on her website,

4   www.orlytaitzesq.com which shows her cyber stalking,

5   cyber bullying and cyber harassing plaintiff --

6           THE COURT:  Okay.  This doesn't have to do

7   with this case.  This may have to do with what she is

8   doing, but as I understand it this case involves

9   lisaliberi.com website.  This is Orly Taitz's website.

10          MR. BERG:  It does, but if I can address the

11  witness on this.

12  BY MR. BERG:

13  Q   His Honor is correct on that, but are there also

14  postings in here that refer to the Lisaliberi website?

15  A   Not that particular one.  What happened was is when

16  the Lisaliberi.com website was taking its out of public

17  view and I don't know if I'm saying this right, Lisa

18  Ostella can do better than I can, when it was taken out

19  of public view, Orly Taitz went on her website and it

20  is Exhibit 2, and she said in spite of all these pages

21  we filed in the Third Circuit, she is free now to

22  publish this information, it is the same information

23  that came from lisaliberi.com, not everything but some

24  of it.

25          MS. TAITZ:  Objection.

Ms. Liberi - Direct                    27

1          MR. BERG:  May I approach the witness, we

2     have documentation to support that.

3          THE COURT:  Overruled.

4          MR. BERG:  Okay.  May I approach?

5          THE COURT:  Yes, you may.

6          MR. BERG:  This is premarked as P-16.

7     BY MR. BERG:

8     Q    I'm sorry we are out of turn, but I believe this

9     deals with the issue.

10    A    Yeah.  This was her post right after --

11         MR. BERG:  Wait, wait.

12         THE COURT:  Just hold on for the question.

13         THE WITNESS:  I'm sorry.

14    BY MR. BERG:

15    Q    Can you explain to the Court what P-16 is?

16    A    Yes.  This is Orly Taitz post on her website,

17    orlytaitzesq.com, after the Third Circuit issued its

18    order denying our TRO and referring it back to this

19    Court, to Judge Robreno, and after lisaliberi.com, and

20    I hope I'm saying this correctly, was taken out of

21    public view. In other words it was not taken down off

22    the internet, it was just taken to where we could not

23    see it momentarily.  Does that make sense?

24         THE COURT:  Well, if you go on the internet

25    right now, could you access lisaliberi.com?

1        THE WITNESS:  You would not be able to view

2    it right now because it is still resolving and again,

3    Lisa Ostella will be able to --

4        THE COURT:  Okay.

5    BY MR. BERG:

6    Q    But now, can you read into the record what she

7    posted on her website?

8    A    Yes.

9    Q    Who posted it?

10   A    Orly Taitz.

11   Q    And when, do you have that too?

12   A    She posted this, Orly Taitz posted this on

13   www.orlytaitzesq.com on December the 12th, I believe it

14   was of this year, 2010.

15        It says, "In spite of nearly five hundred

16   pages of horrific defamation of my character by Philip

17   J. Berg, Lisa Liberi, her mother, Dorothy Wadell, and

18   the rest of their accomplices, Third Circuit Court of

19   Appeals denied their motion for a restraining order

20   against me.

21        "I am free to post this truthful information

22   showing that Lisa Liberi assistant for attorney Philip

23   J. Berg is a convicted document forger and thief who

24   got eight year prison term in California in 2008 and

25   who is currently on probation.

Ms. Liberi - Direct                            29

1            "The question remains, why is licensed

2    attorney Berg continuously working with a convicted

3    forger, Liberi, and submitting documents to multiple

4    courts ans", I think it is supposed to be and,

5    "viciously attacking me and other innocent

6    individuals."

7    Q    That was posted on her website, is that correct?

8    A    That's correct.

9    Q    What are the attached documents with that?

10   A    It is a picture of what she calls a mug shot.

11            THE COURT:  Who is that person on the mug

12   shot?

13            THE WITNESS:  It is supposed to be me.

14            THE COURT:  Well, supposed to, is that you?

15            THE WITNESS:  It could be, but I don't know

16   where she got it.  I don't know if it is a legitimate

17   picture or not.

18            THE COURT:  Okay.

19            THE WITNESS:  Because there is a family photo

20   that Ms. Taitz somehow got which I believe it was taken

21   off my computer.

22            THE COURT:  Okay.

23            THE WITNESS:  She has been putting my family

24   photo out everywhere, so I don't know where she got

25   this.

Ms. Liberi - Direct                              30

1           THE COURT:  Okay.

2           THE WITNESS:  And then it is a bunch of

3   printouts from somewhere.

4   BY MR. BERG:

5   Q   This was on her site which identifies her then with

6   the site, is that correct?

7   A   Yes, because this is the same stuff published on

8   the lisaliberi.com site.

9   Q   We have that?

10  A   Yes, you do, it is Exhibit 5, I believe.

11          MR. BERG:  May I approach, Your Honor?

12          THE COURT:  Yes, you may.

13  BY MR. BERG:

14  Q   This is premarked as P-5.

15  A   Thanks.

16  Q   Can you identify what that is?

17  A   Yes.  These are copies of the website and I would

18  like to say that Ms. Taitz was not honest with this

19  Court with her opening statement.  There are statements

20  in here that I'm supposedly doing, insinuating I'm

21  doing sexual favors to judges and their friends, they

22  had to buy me --

23          MS. TAITZ:  Your Honor, objection, I never

24  said that.

25          THE COURT:  Whatever it says, it says.

Ms. Liberi - Direct                    31

1      THE WITNESS:  Yes, it is in there, it is in

2  there, Your Honor.

3      MS. TAITZ:  Your Honor, I never said this.

4  She said I was not truthful, I never said this.

5      THE COURT:  Okay.

6      MS. TAITZ:  That is a fraudulent statement.

7      THE COURT:  Overruled.

8  BY MR. BERG:

9  Q    What is P-5 now exactly?

10 A    These are copies of the posts that were on the

11 website lisaliberi.com.

12 Q    The postings are by who?  Many different people?

13 A    Well, they are saying they are from me.

14 Q    Okay.  Are any of these postings from you?

15 A    No.

16 Q    Did you have anything to do with the starting or

17 maintaining of this website, lisaliberi.com?

18 A    No, I did not.

19 Q    Okay. The various postings in there that are

20 supposedly from you, none are from you?

21 A    None of them.

22 Q    Do you know who they are from?

23 A    I know who set up the site.

24 Q    Okay.  Who is that?

25 A    Jeff Staples, Orly Taitz's witness and Linda

Ms. Liberi - Direct                                32

1    Belcher's witness.

2    Q    Okay.

3    A    And Linda Belcher's friend of twenty years.

4    Q    Are you aware Ms. Taitz made some remarks regarding

5    you being involved -- that you couldn't file a lawsuit

6    without certain permission by anyone.  Did you have

7    permission to file lawsuit in this case?

8    A    I didn't require permission.

9    Q    Okay.  Ms. Taitz -- to your knowledge -- you know,

10   Ms. Taitz mentioned the fact that you supposedly have

11   this conviction for forgery and, therefore, you

12   shouldn't be involved with me with my lawsuit.  You

13   heard her make that remark, is that correct?

14   A    Yes, I did.

15   Q    Do you by your own knowledge know of any people

16   associated with Orly Taitz that have any criminal

17   record?

18   A    Yes, I do.

19              MS. TAITZ:  Relevance, Your Honor.

20              THE COURT:  Sustained.

21              (Pause in proceedings.)

22   BY MR. BERG:

23   Q    Have you been and are you in fear for your safety

24   and the safety of your family?

25   A    Yes, I am and I have been to the extent that I just

Ms. Liberi - Direct                    33

1   ended up  -- I was in the hospital for -- I went into

2   tachycardia due to the stress.

3   Q   What kind of fear are you?

4   A   I am scared to death, she incites.  I've had

5   strange people show up at my house.

6            MS. TAITZ:  Your Honor, assuming facts not in

7   evidence, she stated I incite.  There is no evidence of

8   me ever inciting anybody.

9            THE COURT:  Okay.  Overruled, her opinion.

10           THE WITNESS:  It is in the notebook, Your

11  Honor, you can see her postings and she is inciting --

12  BY MR. BERG:

13  Q   Speak into the microphone, I can't hear you.

14  A   She incites, says that we need to go, we need to

15  get rid of.  She has compared me --

16           MS. TAITZ:  Objection, assuming facts not in

17  evidence.

18           THE WITNESS:  Ms. Taitz, it is in this

19  notebook.

20           MR. BERG:  Wait, wait, wait, let's hold up.

21  There is an objection, Your Honor.

22           THE COURT:  Overruled.

23           MR. BERG:  Okay.

24           THE COURT:  Restate the question.

25           MR. BERG:  Thank you.

1   BY MR. BERG:

2   Q   In Plaintiff's Exhibit 1, are there -- is there

3   evidence to support what you are stating, that she has

4   incited others?

5         MS. TAITZ:  Your Honor, you decided that

6   Exhibit 1 is not relevant.  Exhibit 1 has to do with a

7   different website.  We are talking about

8   lisaliberi.com, you specifically stated that --

9         THE COURT:  Yes, we are talking about the

10  lisaliberi website here.

11        MS. TAITZ:  So Exhibit 1 is not relevant.

12        MR. BERG:  Your Honor, if I may and offer

13  here, prior to this website and continuing a long time

14  after our hearing before Your Honor a year ago, or I

15  think it is a year and a half ago, it has been

16  continuing even though -- but it is relevant and it is

17  relevant to this TRO because the latest publication

18  which we introduced as P-16 is on her website --

19        MS. TAITZ:  Objection, Your Honor.

20        MR. BERG:  -- dealing with --

21        THE COURT:  Don't interrupt when the lawyer

22  is are talking please.

23        MR. BERG:  Dealing with her false statement

24  that it was dismissed by the Third Circuit.

25        THE COURT:  Right.

1    MR. BERG:  It wasn't dismissed, it was sent

2  down here.  So on that basis her postings for the last

3  year and a half, the ongoing postings I think are

4  relevant to the TRO because we are here, even though we

5  can't see the site right now and our other witness can

6  say it is still out there, nothing, nothing has stopped

7  this, Ms. Taitz from ongoing conduct for the past year

8  and a half --

9    MS. TAITZ:  Objection, Your Honor.

10    MR. BERG:  -- to destroy these two

11  individuals for no legitimate purpose.  If I submitted

12  a document in court which she believed was forged, she

13  could have filed that before the appropriate judge on

14  that item.

15    But, to keep stating these documents and to

16  keep doing this and harassing people and intimidating

17  and telling people to go there, she has been fearful of

18  her life and it hasn't stopped.

19    She didn't get any message from this Court

20  when we had the hearing before.  She has continually

21  submitted the social security number and other

22  identifying information since those hearings and then

23  she goes to the extent of putting up with others, this

24  phony website.

25    MS. TAITZ:  Objection, Your Honor.

Ms. Liberi - Direct                    36

1      MR. BERG:  We will show, even the last

2   posting, P-16, P-16 shows that she is aware of it.

3   P-16 gives her, you know, it says I have the right to

4   publish all of this information.

5      MS. TAITZ:  Objection, Your Honor.

6      MR. BERG:  It has no relevance whatsoever, so

7   that is why I think that P-1, where as I agree with you

8   it is not part of the TRO specifically, but it really

9   does, it shows the course and conduct of this

10  individual who continues to intimidate, harass and

11  scare to death my witness, her family, now they are

12  even going after her mother.

13     MS. TAITZ:  Objection, Your Honor.

14     MR. BERG:  I think a TRO must be issued and

15  we will continue.  We have all kinds of documentation

16  to show here that she is behind this with Ms. Belcher

17  and Jeff Staples.  Jeff Staples, she has been involved

18  with and it will show he even has a conviction record.

19  It makes no sense --

20     MS. TAITZ:  Objection.

21     MR. BERG:  -- there is no sense to what she

22  has done to badger this witness and to badger the other

23  witness and even badger me, because if I did what she

24  stated I did, if she stated I'm submitting false

25  documentation to the court, at that point she can take

Ms. Liberi - Direct                    37

1    me to the bar, she can do various things.

2            But, to keep publishing this and doing this

3    and she is basically -- the only reason she wants to

4    see a driver's license because she wants to know

5    exactly where Lisa Liberi lives --

6            MS. TAITZ:  Objection, Your Honor.

7            MR. BERG:  -- so she can send people there to

8    hurt this individual.

9            MS. TAITZ:  Objection.

10           MR. BERG:  She is a violent person who --

11           MS. TAITZ:  Objection.

12           MR. BERG:  -- down the road should be

13   disbarred for her actions, Your Honor.

14           MS. TAITZ:  Objection.

15           THE COURT:  Okay.  What else do you want to

16   say from this witness?

17           MR. BERG:  Sure.

18           THE COURT:  The documents speak for

19   themselves, so she doesn't have to tell me what the

20   documents say, I will read those.

21   BY MR. BERG:

22   Q    Has Orly Taitz filed any police reports against

23   you?

24   A    Yes, false ones.

25           MS. TAITZ:  Objection, there is no evidence

1   that I filed a false police report.

2          THE COURT:  He said has she filed a police

3   report.

4          MS. TAITZ:  Her statement is false police

5   report.  It is prejudicial, it is inflammatory, there

6   is no foundation provided to state that I filed a false

7   police report.

8          THE COURT:  Okay, overruled.

9          MR. BERG:  May I approach?

10         THE COURT:  What is the basis for it?

11         THE WITNESS:  Am I allowed to finish?

12         MR. BERG:  This is P-2, Your Honor.

13         THE WITNESS:  I had never worked with Ms.

14  Taitz.

15         THE COURT:  No question is pending.

16         THE WITNESS:  I'm sorry.

17         THE COURT:  Next question.

18  BY MR. BERG:

19  Q    Yes, what is P-2?

20  A    It is a police report that Ms. Taitz filed in

21  Orange County, California where she resides against

22  Lisa Ostella and myself.

23         MS. TAITZ:  Foundation, objection, Your

24  Honor.  There is no foundation to this and I believe

25  that Mr. Berg has issued an illegal subpoena when there

Ms. Liberi - Direct                    39

1   was no discovery.

2        In this case there was no discovery without

3   notifying the defendants, they have filed an illegal

4   subpoena.  There was an ongoing investigation and my

5   verbal report that wasn't even show to me to verify for

6   accuracy was illegally obtained by Mr. Berg.

7        Not only I object to production of this

8   report because it is fruit of the poisonous tree, that

9   there was no valid subpoena to get it, there was no

10  discovery in this case.

11       But also, I would ask to sanction Mr. Berg

12  for issuing an illegal subpoena in the case where there

13  was no discovery ordered.

14       THE COURT:  Okay.  Overruled.  We have this,

15  what else?

16       THE WITNESS:  Am I allowed to respond to

17  that?

18       THE COURT:  We have it now, so we will see

19  what goes on with this.

20       MR. BERG:  Okay.

21  BY MR. BERG:

22  Q   Has Orly Taitz ever published a family picture of

23  you?

24  A   Yes, she has.

25  Q   Was anything published with that picture?

Ms. Liberi - Direct                    40

1   A    Yes, an address that is supposed to be to my home.

2          MS. TAITZ:  Objection, there is no evidence

3   of that.

4          THE WITNESS:  It is in the notebook, Ms.

5   Taitz.

6   BY MR. BERG:

7   Q    Did you give Orly Taitz the picture?

8   A    No, I did not.

9   Q    Did you give permission to Orly Taitz to publish

10  the picture on her website?

11  A    No, I did not.

12  Q    Or on the internet or through mass e-mailing?

13  A    No, I did not.

14  Q    Are you aware of any radio shows that Orly Taitz

15  has been on talking about you, any recent ones?

16  A    Yes, August 30th, 2010 she was on the Andrea Shea

17  King Show.  During that radio show she was talking

18  negatively about me again, you know, bashing me to

19  everybody and how we are harassing her people and then

20  as she is talking about me she states, "I have given

21  pictures, I have provided directions."  Directions can

22  be to someone's home or it can be to do something.

23         MS. TAITZ:  Objection.

24         MR. BERG:  Your Honor, may I approach?

25         THE COURT:  Yes, you may.

Ms. Liberi - Direct                    41

1              (Pause in proceedings.)

2    BY MR. BERG:

3    Q    What is P-3?   What is P-3?

4    A    P-3 is a partial transcript of the radio show as

5    well as a full version of the radio show on -- radio

6    show on disc.   It also gives exactly where these

7    statements of Ms. Taitz are.

8              MS. TAITZ:   Objection, relevance to TRO.   The

9    radio show has nothing to do with TRO.

10             THE COURT:   We again are going outside what

11   we are here to do.   I'm not going to hear an entire

12   trial today, so you got about five more minutes with

13   her, and then we will move on to the next witness.   We

14   are here on a preliminary matter.

15             Let me just also make a comment here because

16   both of you are members of the bar.   The nature of the

17   accusations are so serious that both of you could be

18   disbarred, and the game will end at that point.

19             So I would really caution both of you to

20   tread very, very lightly, because both of you could end

21   up being disbarred.   Depending upon what happens here

22   we may refer you to a disciplinary board, either both

23   of you, either of you, or maybe none of you.   But that

24   is where you are now.

25             So, you open that door, if you want to walk

Ms. Liberi - Direct                    42

1    through that door, you better have some backup for all

2    the wild accusations that are being made here, okay?

3    So, I'm giving you fair notice and fair warning.  You

4    want to make a living as a lawyer, it may end pretty

5    soon.

6               Okay.  So, let's proceed if you have some

7    evidence.

8               MR. BERG:  Just a moment, Your Honor.

9               (Pause in proceedings.)

10   BY MR. BERG:

11   Q   On the domain name registration, would that be

12   better with Lisa Ostella, or you can -- what can you

13   say about the domain name registration real quickly?

14   A   I received an e-mail on November 10th saying I like

15   your new website.  I forwarded the e-mail to Lisa

16   Ostella and a couple other individuals, I asked if they

17   can track it because I had to go to my cardiology

18   appointment and when I got home I learned there was a

19   website set up in my name.

20               I also learned a few days after that, that

21   e-mails were sent out from convicted

22   felon@Lisaliberi.com as if I were sending them to

23   people that were located, and one was an attorney in

24   California in my AOL address book, my old AOL account

25   address book.

Ms. Liberi - Direct                    43

1    They also started posting posts on this site

2   from convicted felon Lisa Liberi as if I'm posting

3   them, they had sexual innuendoes in here.   Then

4   meanwhile as that site was up, Ms. Taitz didn't post

5   anything surprisingly on her site, as soon as that site

6   couldn't been seen in the public anymore, she came back

7   after me again.

8    THE COURT:  What do you mean it could not be

9   seen in the public?

10    THE WITNESS:  Again, Lisa Ostella can explain

11   that, I'm not that tech --

12    THE COURT:  Okay, fine.  You did not

13   authorize this website to be established?

14    THE WITNESS:  No, sir, I didn't.

15    THE COURT:  Okay.

16    THE WITNESS:  This coupled with all of Ms.

17   Taitz's postings and that is not even all of her

18   postings in that notebook. I had people showing up at

19   my home, my phone was scrambled.

20    I've had people calling my home telling me

21   that if I don't drop this suit against Ms. Taitz, I'm

22   going to meet my maker soon.  Well, finally I couldn't

23   take her harrassment and I went in --

24    MS. TAITZ:  Objection, Your Honor, this is

25   prejudicial.  There is no foundation to say that I had

1   anything to do with the people that showed up at her

2   home.  I don't know if they showed up and there is no

3   connection.

4            THE COURT:  Sustained.

5            THE WITNESS:  She put an address out.

6            THE COURT:  Now --

7            MR. BERG:  Your Honor?

8            THE COURT:  Yes?

9            MR. BERG:  To save time I'm just going to

10  bring up a number of documents and she'll just identify

11  those.

12           THE COURT:  Okay.

13           MR. BERG:  We will submit to the Court --

14           (Pause in proceedings.)

15           MR. BERG:  I'm going to approach the witness,

16  Your Honor, with P-6 and then she can identify them.

17           THE COURT:  Okay.

18           MR. BERG:  P-6, P-7, P-8, P-9, P-10, if I

19  may, Your Honor?

20           MS. TAITZ:  Objection, Your Honor.  I never

21  was served with any of the documents.  I've never seen

22  any of this, I have no ability to check what it is and

23  read.

24           THE COURT:  Okay.

25           MS. TAITZ:  Mr. Berg filed this case with six

Ms. Liberi - Direct                45

1   hundred pages, he never served me, it is not on Pacer.

2   So I have no idea what --

3           THE COURT:  Well, do you want to review them

4   now?

5           MS. TAITZ:  Six hundred pages?

6           THE COURT:  Okay.  No, the documents that he

7   is offering as exhibits here in this preliminary

8   hearing.

9           MS. TAITZ:  Yes, where are those documents?

10          THE COURT:  Okay.  We will take a recess and

11  you can review the documents.

12          MR. BERG:  Thank you.

13          THE COURT:  Ten minutes.

14          (Recess, 3:29 p.m. to 3:42 p.m.)

15          THE COURT:  Okay.  Please be seated.  Okay,

16  let's proceed, please.  We took a break to allow Ms.

17  Taitz to review some documents and I understand we are

18  ready to proceed now.

19          MR. BERG:  Thank you.  May I approach, Your

20  Honor?

21          THE COURT:  Yes.

22          MR. BERG:  I'm going to set forth Exhibit

23  P-4, P-12, P-13, P-15, P-17, and P-18, documents that

24  during the break, Your Honor, I gave to Ms. Taitz

25  already so she could review them.

Ms. Liberi - Direct                                46

1          THE COURT:  Okay.

2          MR. BERG:  May I approach?

3          THE COURT:  Yes, you may.

4          MR. BERG:  Thank you.

5          MS. TAITZ:  Your Honor, if I might state, for

6    the first time I saw those, this documents from a

7    website, lisaliberi.com, this website has nothing to do

8    with me.  Those documents do not show anything showing

9    that I had any connection to this website, so this is

10   the --

11         THE COURT:  Well, that may be so, that may be

12   a final argument.  So what?  That will be your

13   argument, but we will wait, he has an opportunity --

14         MS. TAITZ:  What is --

15         THE COURT:  The way the lawsuit works is the

16   plaintiff has an opportunity to put on their proof, and

17   then you have an opportunity to put on your proof and

18   cross-examine them.

19         MS. TAITZ:  Okay.  It is just relevance to me

20   because I'm the only defendant here and what is the

21   relevance to me?

22         THE COURT:  Well, there are two other

23   defendants who are subject to this order which would be

24   your foundation and also --

25         MS. TAITZ:  No, I'm not --

Ms. Liberi - Direct                47

1          MR. BERG:  Linda Belcher.

2          THE COURT:  Linda Belcher, she is also a

3    defendant here, so she will be subject to any order by

4    the Court.  Okay.

5    BY MR. BERG:

6    Q   I've given to you exhibits from P-6 -- a number of

7    exhibits.  Can you just go through each one and

8    identify any connection to Ms. Taitz and draw His

9    Honor's attention to it.

10         THE COURT:  Well, tell me what they are, that

11   is all I --

12         MR. BERG:  Okay.

13         THE COURT:  I'm going to admit these

14   documents subject to connection and subject to

15   objections that may be made.  We are at a preliminary

16   hearing, so all we need to know now is whether these

17   are documents that purport to be authentic and then

18   I'll be able to read them.  What is P-6?

19         THE WITNESS:  P-6 is --

20   BY MR. BERG:

21   Q   Speak into the microphone.

22   A   P-6 is the e-mail exchange between myself and

23   privacyprotect.org regarding the domain name,

24   lisaliberi.com.

25         THE COURT:  Okay.  Fine.  How about P-7?

Ms. Liberi - Direct                    48

1        THE WITNESS:  P-7 is the domain tools history

2   of the domain name lisaliberi.com showing it was first

3   registered private.  It was then placed in my name and

4   then it was place lastly in the name of Jeff Staples.

5        THE COURT:  Okay.  How about P-8?

6        THE WITNESS:  That is the same thing, domain

7   tools.

8        THE COURT:  Okay, how about P-9?

9        THE WITNESS:  P-9 is also another copy of how

10  the domain name lisaliberi.com was registered as being

11  in Santa Fe, New York.

12       THE COURT:  Okay.  How about P-10?

13       THE WITNESS:  P-10 is the domain tools

14  showing the domain name lisaliberi registered to Jeff

15  Staples.

16       THE COURT:  Okay.  P-4?

17       THE WITNESS:  P-4 is a copy of the e-mail

18  from convicted felon@lisaliberi.com that was sent to my

19  AOL e-mail address that I received.

20       THE COURT:  Okay.  How about P-12?

21       THE WITNESS:  P-12 are copies of e-mails that

22  were forwarded to me from individuals that also

23  received e-mails from convicted felon@lisaliberi.com

24  regarding the website lisaliberi.com.  They believed

25  that they came from me.

Ms. Liberi - Direct                          49

1          THE COURT:  Okay.  P-13?

2          THE WITNESS:  P-13 is the verification of

3  Dean Pitsel (ph), he is one of the individuals, he is

4  an attorney that received an e-mail from convicted

5  felon@lisaliberi.com and he had believed it had come

6  from me.

7          THE COURT:  Okay.  That was filed in the

8  Court of Appeals, is that what that is?

9          THE WITNESS:  Yes, sir.

10         THE COURT:  Okay. How about P-15?

11         THE WITNESS:  P-15 is the affidavit of K.

12  Strubbel (ph) also regarding the location of postings

13  on the website on Ms. Taitz, as well as lisaliberi.com

14         THE COURT:  What is P-17?

15         THE WITNESS:  P-17 are just from my recent

16  hospital stay.

17         THE COURT:  Okay. P-18?

18         THE WITNESS:  P-18 is affidavit of my mother,

19  Shirley Wadell, who also found the postings on the

20  website.

21         THE COURT:  Okay.  P-3, well I think we have

22  dealt with that, P-3.  Okay, anything else on this

23  witness?

24         MR. BERG:  Yes, briefly.

25  BY MR. BERG:

Ms. Liberi - Direct                              50

1   Q   Did you give Jeffery Staples, Linda Belcher, or

2   Orly Taitz permission to set up a website or e-mail

3   addresses in your name?

4   A   No, and I would like to respond to --

5            THE COURT:  No, that is all we have to ask.

6   Anything else?

7   BY MR. BERG:

8   Q   Do you know who Jeff Staples is?

9   A   Yes.

10  Q   Who is he?

11  A   Linda Belcher brought him to you to be your web

12  master, but Jeff Staples did not have access to certain

13  documents sent to His Honor and all of a sudden those

14  documents that were not on Pacer ended up on

15  lisaliberi.com.  That was a letter Mr. Berg had sent to

16  you by facsimile and only the defendants were served

17  with it, which means Linda Belcher, Orly Taitz.

18           THE COURT:  Okay.

19  BY MR. BERG:

20  Q   Did law enforcement tell you to do anything to

21  protect yourself and your family?

22           THE COURT:  Well, that is hearsay.

23           THE WITNESS:  Yes.

24           MS. TAITZ:  Hearsay.

25           THE COURT:  Sustained.

1    BY MR. BERG:

2    Q   As a result of what they told you, what did you do?

3    A   I complied.  I called you and said let's file a

4    restraining order because that is what I was told to

5    do.

6             THE COURT:  Okay.

7    BY MR. BERG:

8    Q   Okay. Have you been forced to file any other police

9    reports?

10   A   Yes.

11   Q   Where?

12   A   With my local authorities, cyber stalking,

13   stalking.  That has been sent to Orange County.

14            THE COURT:  Local authorities in where?

15            THE WITNESS:  Where I reside.

16            MR. BERG:  That we are asking not to be

17   disclosed for obvious reasons, Your Honor.

18            THE COURT:  Well, did you file it in

19   California?

20            THE WITNESS:  My police department forwarded

21   it to California.

22            THE COURT:  Okay.

23            THE WITNESS:  There is so many state lines

24   involved and that is where law enforcement is having a

25   difficult time because it is crossing so many state

Ms. Liberi - Direct                                   52

1  lines and that is why they wanted me to get a

2  restraining order immediately to help protect.

3           THE COURT:  Anything else?

4           MR. BERG:  Yeah.

5  BY MR. BERG:

6  Q   You were recently in the hospital, why were you in

7  the hospital?

8  A   Yes, the stress of all of this, all of Orly Taitz's

9  postings and as a result --

10          MS. TAITZ:  Your Honor, prejudicial.

11          THE COURT:  Okay, overruled.

12          THE WITNESS:  As a result of these postings,

13 like I said I get death threats saying if I don't drop

14 the suit against and they specifically say Orly Taitz.

15          THE COURT:  Okay.

16          THE WITNESS:  I will meet my maker soon, her

17 stuff about pictures, her talking about where my child

18 has been.

19          MS. TAITZ:  Objection.

20          THE WITNESS:  I went in, I've had three heart

21 attacks which are in those records and I went into

22 tachycardia to where they couldn't even -- you know,

23 you can't get a blood pressure or a pulse or anything.

24 Orly Taitz is well aware of my medical, she has gone

25 on --

1        THE COURT:  Okay. Fine.

2   BY MR. BERG:

3   Q   As a result of being in the hospital, do you have

4   certain treatment you must take for a period of time

5   and what is that called?

6   A   EECP, it is five days a week and it takes a couple

7   hours a day.

8        THE COURT:  What do you do for a job?  Do you

9   have a job now?

10        THE WITNESS:  I'm completely disabled, I

11   intern at Mr. Berg.

12        THE COURT:  You are disabled?

13        THE WITNESS:  Yes, I am.

14        THE COURT:  What is your educational

15   background?  Do you have a high school, college?

16        THE WITNESS:  High school, college.

17        THE COURT:  Are you a graduate of college?

18        THE WITNESS:  No, I never fully graduated.

19        THE COURT:  Okay.

20        THE WITNESS:  But I did get my certifications

21   and stuff, I went back to school.

22        THE COURT:  Certification of what?

23        THE WITNESS:  In paralegal.

24        THE COURT:  Paralegal.

25        THE WITNESS:  I took advanced studies, yes,

Ms. Liberi - Direct                    54

1   sir.

2              THE COURT:  Okay.  Are you employed with Mr.

3   Berg?

4              THE WITNESS:  I'm not employed, I intern,

5   donate time to him.

6              THE COURT:  Okay.  He doesn't pay you a

7   salary?

8              THE WITNESS:  No, sir, he does not.

9              THE COURT:  Okay.  Fine.  Can we proceed to

10  cross-examination?

11             MR. BERG:  Just one more.

12             THE COURT:  Okay.

13  BY MR. BERG:

14  Q   How long -- this procedure you are taking now, what

15  is it called?

16  A   EECP.

17  Q   What does that stand for?

18  A   I knew you were going to ask me that and I didn't

19  bring that with me.

20  Q   Okay.

21  A   It is electrocardiogram, it is a real long word.

22  Q   It is two hours a day.  How long will you have to

23  undergo this?

24  A   It is five days a week, Monday through Friday for a

25  minimum of thirty-six weeks and it costs roughly eighty

Ms. Liberi - Direct                    55

1  thousand dollars each time.

2  Q    Thirty-six weeks and how many weeks have you been

3  doing it so far?

4  A    Since the very end of October, very beginning of

5  November, so maybe a month.  So, I missed, yeah, to

6  make sure I was here.

7              MR. BERG:  Thank you.

8              THE COURT:  Thank you.

9              THE COURT:  Cross-examination?

10             MS. TAITZ:  Yes, absolutely.

11                  CROSS-EXAMINATION

12  BY MS. TAITZ:

13  Q    Ms. Liberi, isn't it true that with all of those

14  documents, none of them shows any connection between me

15  and website lisaliberi.com?  It shows only connection

16  to Mr. Staples, isn't that true?

17  A    No, that is not true.

18  Q    Show me one document that shows connection between

19  me and lisaliberi.com.

20             THE COURT:  Okay, what are you showing her?

21             MR. BERG:  Identify it.

22             THE COURT:  Identify it by number.

23             THE WITNESS:  I'm sorry, it is her post from

24  December the 12th --

25             THE COURT:  Okay, let's go back.  We will

1  give you the document.

2          MR. BERG:  Please identify the exhibit

3  number.

4          THE COURT:  Excuse me a minute.  I give the

5  directions here.

6          MR. BERG:  Sorry.

7          THE WITNESS:  I'm sorry.

8          THE COURT:  First of all, you have a document

9  in your hand, what is the document number?

10          THE WITNESS:  I'm sorry, I'm looking for

11  that.

12          THE COURT:  I think it is P-16, is that what

13  you are looking at?

14          THE WITNESS:  Yes, sir.

15          THE COURT:  Does it have a number there?

16          THE WITNESS:  Yes, sir.

17          THE COURT:  Okay.  Now, hold it a minute.

18  That is P-16, Ms. Anderson, would you get the document

19  and will you give it Ms. Liberi -- I mean to Ms. Taitz,

20  please?

21          (Pause in proceedings.)

22          THE COURT:  Okay.  Now --

23          MS. TAITZ:  Can I have it please?

24          THE COURT:  Would you identify where in this

25  document, and I'm going to give you P-16.  I'm going to

1  give you my copy.  Do you have a copy of that?

2          THE WITNESS:  Yes, sir, I do.

3          THE COURT:  Okay.  Would you identify where

4  in P-16 is there a connection between Ms. Taitz and

5  lisaliberi.com or what is that called?

6          THE WITNESS:  All right.  You see this

7  picture and this other printout stuff?

8          THE COURT:  What is that, I'm sorry?

9          THE WITNESS:  The picture -- let me see.

10          THE COURT:  I have it in front of me, so you

11  are looking at the picture?

12          THE WITNESS:  The picture and everything

13  behind it is exactly what was on lisaliberi.com and as

14  soon as the lisaliberi.com was taken out of view, Orly

15  Taitz then again published this on her site.

16          MS. TAITZ:  Ma'am?

17          THE COURT:  Let her finish.  Okay.

18          THE WITNESS:  And said, oh, she is free to do

19  it now because the Third Circuit turned her down, we

20  never attempted to get a TRO.

21          THE COURT:  Okay.

22          THE WITNESS:  Until that website --

23          THE COURT:  Next question.

24  BY MS. TAITZ:

25  Q   Okay.  Ma'am, isn't it true that you are now

1   defrauding Judge Robreno by claiming that this has

2   anything to do with lisaliberi.com.  This is on my

3   website, orlytaitzesq.com, it has nothing to do with

4   lisaliberi.com.  Please show --

5   A    It is a take off --

6   Q    Ma'am --

7             THE COURT:  That is not a question.  What is

8   your question?

9   BY MS. TAITZ:

10  Q    My question is, isn't it true that you do not have

11  any connection between me and website, lisaliberi.com?

12  Isn't that true?

13  A    Other than what the Dallas P.D. told me and this

14  post which is a direct take off --

15  Q    Ma'am, it is hearsay.

16            THE COURT:  I don't know the Dallas P.D.,

17  talk about this document.  The connection between Taitz

18  and the website is this document basically?

19            THE WITNESS:  That is correct.

20            THE COURT:  Okay.

21  BY MS. TAITZ:

22  Q    Ms. Liberi, this document is a printout from my

23  website, orlytaitzesq.com, that shows your mug shot and

24  summary of your convictions, isn't it true?

25  A    That is a document taken from your site with a

Ms. Liberi - Cross                    59

1  picture that you claim is a mug shot.

2  Q   Ma'am, it is a yes or no question.

3  A   It is a direct take off of lisaliberi.com.

4           THE COURT:  Okay.  As I understand what you

5  are saying is that this is -- this information also

6  appeared in lisaliberi.com?

7           THE WITNESS:  Yes, sir.

8           THE COURT:  Okay.

9           THE WITNESS:  As soon as it was taken out of

10 view she had been very quiet on her website.

11          MS. TAITZ:  Ma'am, ma'am --

12          THE COURT:  Okay, well that is argument.

13 That is argument.

14          THE WITNESS:  I'm sorry.

15          THE COURT:  We want to understand the facts.

16 BY MS. TAITZ:

17 Q   Ma'am, isn't it true that your mug shot appeared on

18 numerous websites, right?

19 A   No, that is not true.

20 Q   Ma'am, is that you?  Is that your mug shot?

21 A   That is what you call a mug shot.

22 Q   What is it?

23 A   It is a picture.  I don't know where you got that,

24 Ms. Taitz.

25          MS. TAITZ:  Your Honor, I would like to show

Ms. Liberi - Cross                           60

1  you --

2          THE COURT:  I have it here.

3          MS. TAITZ:  Okay.

4          THE COURT:  Exhibit P-16, you are showing

5  page three.

6          THE WITNESS:  That is a picture you claim is

7  a mug shot.

8  BY MS. TAITZ:

9  Q   Ma'am, is that you in the picture?

10 A   Ms. Taitz, it is hard to say.

11 Q   Yes or no?  Ma'am, is that you on this picture?

12 A   It looks like me.

13 Q   Okay.  So it is you?

14 A   It looks like me.  I don't know where you got this.

15 You could have photoshopped this for all I know.

16 Q   Ma'am, ma'am --

17 A   I can't answer that, Ms. Taitz.

18 Q   Ma'am, were you convicted in the State of

19 California, yes or no?

20         MR. BERG:  I'm going to object.

21         THE WITNESS:  I'm not going to answer that.

22         MR. BERG:  Your Honor, that has no relevance

23 to this.

24         MS. TAITZ:  It has relevance because --

25         THE WITNESS:  It doesn't.  If I say yes, you

Ms. Liberi - Cross                    61

1   know --

2           THE COURT:   Excuse me a minute again.   Okay.

3   The question of conviction will go to credibility if it

4   occurred within the last ten years, so that will be a

5   proper question to ask.   So, restate your question.

6   BY MS. TAITZ:

7   Q   Ma'am, were you convicted in the State of

8   California, yes or no?

9   A   Either way I answer it, it is going to tell her

10  right where I live, Your Honor, and that's my --

11  Q   Ma'am, I am asking you where -- if indeed you were

12  convicted in the State of California, yes or no?

13  A   I have one conviction in the State of California.

14  Q   Okay.  Ma'am, let me ask you a question.  Were you

15  convicted in 2008, yes or no?

16  A   It may have been.

17  Q   Were you convicted in grand theft, yes or no?  Do

18  you have a conviction of grand theft, yes or no?

19  A   I have a conviction from being accused of saying my

20  income was higher than what it was, Ms. Taitz.

21  Q   Ma'am, this is summary of your convictions.  It

22  states --

23  A   I don't know if this is or not.  I don't know where

24  you got this document.

25  Q   Ma'am --

Ms. Liberi - Cross                62

1    THE COURT: Okay, wait a minute. Hold on a

2    minute.  These are charges that are filed.  The

3    question is from your own memory, forget the document,

4    from your own memory and you ought to know this

5    frankly, were you ever convicted of a commission of a

6    crime?

7    THE WITNESS:  Yes, I was.

8    THE COURT:  Okay.  When did that happen?

9    THE WITNESS:  I can't remember if I entered

10   my guilty at the end of '07 or early '08.

11   THE COURT:  Okay, roughly, was it twenty

12   years ago or five years ago?

13   MS. TAITZ:  Your Honor, she just said '08,

14   Your Honor, she just said '08.

15   THE WITNESS:  I said the end of '07 or '08.

16   THE COURT:  '07 or '08.

17   MS. TAITZ:  2008.

18   THE WITNESS:  Early '08.

19   THE COURT:  What was it?  I understand you

20   pled guilty to something?

21   THE WITNESS:  I took a plea agreement because

22   I couldn't stand trial because of my heart.

23   THE COURT:  Fine.  I understand that, but

24   what did you plead guilty to?

25   THE WITNESS:  It was -- I was accused of

Ms. Liberi - Cross                    63

1    putting my income higher than what it actually was.

2              THE COURT:  But what did you plead guilty to?

3              THE WITNESS:  I don't remember exactly with

4    all they put in the plea agreement.

5              THE COURT:  Was it a felony?

6              THE WITNESS:  Yes.

7              THE COURT:  Okay.  Well, we don't need the

8    details I don't think, for that purpose.

9              THE WITNESS:  This will be on her website

10   tonight.

11             THE COURT:  Yes.

12   BY MS. TAITZ:

13   Q   Ma'am, isn't it true that what I posted on my

14   website was an accurate record of your convictions, ten

15   convictions in the State of California, yes or no?

16   A   Will you repeat that?

17   Q   Isn't it true that what I have posted on my

18   website, not on lisaliberi.com, I have nothing to do

19   with it, on my website, isn't it true that what you are

20   showing on this exhibit, this is true record of your

21   convictions in the State of California in 2008, yes or

22   no?

23   A   I can't answer that yes or no.

24   Q   Ma'am, are you currently on probation, yes or no?

25   A   I'm not going to answer that, Ms. Taitz.

1    MS. TAITZ:  Your Honor, I would ask you to

2  direct the witness --

3    THE COURT:  Well, we will draw an adverse

4  inference from that --

5    MS. TAITZ:  -- it goes to her --

6    THE COURT:  -- but I don't think that goes to

7  the credibility.  The conviction did go to credibility,

8  but not the probationary status.

9    MS. TAITZ:  Your Honor, she claims that she

10 is a resident of Pennsylvania.

11   THE WITNESS:  I have never claimed that, Your

12 Honor.

13   MS. TAITZ:  According to her probation,

14 according to this record she is not allowed to live in

15 Pennsylvania, she is allowed to live only in California

16 and New Mexico.

17   THE COURT:  Okay.  Fine.  Not relevant to

18 this hearing today.  Okay, let's move on.

19 BY MS. TAITZ:

20 Q   Ms. Liberi --

21   THE WITNESS:  But Your Honor, it is, it

22 actually is.

23   THE COURT:  Yes.

24 BY MS. TAITZ:

25 Q   Are you residing in the State of Pennsylvania?

1  A   I'm not going to answer that.  I'm not going to

2  tell you where I live because of what you've done, Ms.

3  Taitz.

4  Q   I have not done anything.

5           THE COURT:  Okay.

6  BY MS. TAITZ:

7  Q   Now, Ms. Liberi --

8  A   I have never claimed where I lived.  I have never

9  stated where I live and those are all false

10  allegations.

11          THE COURT:  Okay.  You have to wait for a

12  question to be pending.

13          THE WITNESS:  I'm sorry.

14          THE COURT:  Okay.

15  BY MS. TAITZ:

16  Q   Ms. Liberi, in your -- this is a transcript of

17  hearing.  There were two hearings with Judge Robreno

18  and every time you were denied TRO, there was one

19  hearing in June and one hearing in August, both times

20  Judge Robreno denied TRO, isn't that true?

21  A   Both of those hearings were regarding my social --

22  Q   Ma'am, it is a yes or no question.

23  A   Yes, but it is not to the same things that are

24  here.

25  Q   So both times, isn't it true that -- that Mr. Berg

Ms. Liberi - Cross                    66

1   has filed requests for TRO in the Third Circuit Court

2   of Appeals and that was denied?

3   A    That is why we are here today.

4            THE COURT:  If you know?  That is a legal

5   question, do you understand the question?

6            MS. TAITZ:  She claims to be a paralegal.

7            THE WITNESS:  Well, I understand the

8   question, but that is why we are here today, it was

9   sent to Your Honor.

10           THE COURT:  So the answer would be what?

11           THE WITNESS:  They denied it and forwarded it

12  to you because they didn't have jurisdiction.

13  BY MS. TAITZ:

14  Q    No, no, I mean the prior one.

15           MR. BERG:  Your Honor, may I make an

16  objection here?

17           THE COURT:  Yes.

18           MR. BERG:  Just to clear the record, they

19  didn't deny it, they sent it back to Your Honor.  It

20  was not heard on the merits.

21           THE COURT:  Yes.

22           MS. TAITZ:  Your Honor, when you denied Mr.

23  Berg's TRO a year and a half ago in 2009, Mr. Berg

24  appealed your decision.  He went to the Third Circuit

25  Court of Appeals and he demanded emergency hearing for

1   TRO.

2   BY MS. TAITZ:

3   Q   My question is, isn't it true that in his appeal

4   that he filed when he was appealing Judge Robreno's

5   ruling, the Third Circuit Court of Appeals denied his

6   motion for emergency TRO, isn't that true?

7   A   That is true, but it didn't have anything to do

8   with the issues --

9   Q   Okay, that is enough, that is enough.

10  A   -- we are here today for, it was over the social

11  security posting, Your Honor.

12  Q   Ma'am, it shows the pattern that this is going to

13  be --

14          THE COURT:  That is argumentative, Ms. Taitz.

15          MS. TAITZ:  Okay.

16          THE COURT:  Next question.

17  BY MS. TAITZ:

18  Q   Ms. Liberi, during the hearing Judge Robreno

19  specifically stated when Mr. Berg asked in regards to

20  your identifying documents, whether it can be filed

21  under seal, Judge Robreno stated, "Well, you could

22  disclose it and file it with the Court under seal."

23          Isn't it true that you never filed any

24  identifying documents with Judge Robreno, yes or no?

25  A   No, that is not true.

1  Q   Okay.  What did you file?  What identifying

2  documents did you file with Judge Robreno?

3  A   When you put my home address out on the website --

4  Q   Ma'am, I asked you what documents.

5  A   I'm trying to tell you.

6          MR. BERG:  Can I have an objection?  I don't

7  think this witness understands this question.

8          MS. TAITZ:  She claims to be a paralegal.

9          THE COURT:  Excuse me.

10          MR. BERG:  I believe what transpired nothing

11  was filed under seal but identification, Your Honor,

12  was given to you at the time of the hearing which you

13  looked at which was given back to Ms. Liberi.

14          MS. TAITZ:  Your Honor --

15          THE COURT:  Okay, well that is a question I

16  think the docket would show whether or not something

17  was filed.  I think that is a matter for the lawyers to

18  argue.

19          MR. BERG:  I don't think --

20          MS. TAITZ:  Your Honor, this is the

21  transcript and it does not reflect any documents

22  provided by Ms. Liberi.

23          THE COURT:  Okay.

24  BY MS. TAITZ:

25  Q   Judge Robreno told you to file your identifying

1  documents under seal.  Isn't it true that you never

2  filed them?

3  A   I don't believe Judge Robreno told me that.  I

4  think that was discussion between Mr. Berg and the

5  Court.

6           THE COURT:  Okay.  Objection sustained, let's

7  move on.

8           MS. TAITZ:  One second.

9           (Pause in proceedings.)

10          MS. TAITZ:  I would like to introduce into

11  evidence --

12          MR. BERG:  Your Honor, it is probably an out

13  of order objection.

14          THE COURT:  Yes?

15          MR. BERG:  I should have objected early on.

16  Your Honor issued an order in this case that any

17  documentation being filed by other parties, by the

18  defendants was due by Friday, December 17th at 5:00

19  p.m. and I believe no documents were filed.  So I

20  believe --

21          MS. TAITZ:  That is not true.

22          MR. BERG:  -- this witness cannot show any

23  documents at this time.

24          MS. TAITZ:  Your Honor, I have filed my

25  response.  However --

1            THE COURT:  The response was filed,

2       overruled.  If you need time to review, we will give

3       you time to review it, but we are going to proceed to

4       get to the bottom of this today.

5            MR. BERG:  Thank you.

6       BY MS. TAITZ:

7       Q    In the Third Circuit Court -- you originally filed

8       request for TRO in the Third Circuit Court of Appeals,

9       they denied it and they remanded it to Judge Robreno,

10      isn't that true?

11      A    I'm sorry.

12      Q    Originally, you filed a request for temporary

13      restraining order in the Third Circuit Court of

14      Appeals, right?

15      A    Mr. Berg did.

16      Q    Yes.  And you filed verification of Lisa Liberi,

17      right?

18      A    That's correct.

19      Q    I would like to point to page fourteen.

20      A    I don't have a copy of it.

21      Q    I will show it to you and I will show it to Judge

22      Robreno.  It's this -- I believe you filed similar

23      declaration here, however, was never -- I was never

24      served with this.

25            It states there on page fourteen, paragraph

1    forty-one, that you are requesting removal of the

2    fraudulent website and fraudulent e-mail address that

3    were fraudulently placed in my name and the immediate

4    removal of my picture.

5              Isn't it true that this is part of your

6    declaration?  I'll be happy to show it to you and to

7    Judge Robreno.  It should be with the records, page

8    fourteen of your declaration.

9              (Pause in proceedings.)

10   A   Yeah, that's what it says, but you're taking it out

11   of context.  There's more to that affidavit -- or more

12   to the verification.

13   Q   This is page fourteen.

14   A   I don't think Mr. Berg has it.

15             MR. BERG:  May I have it?

16             MS. TAITZ:  Do you have this, Mr. Berg?

17             MR. BERG:  No, I don't have it.  Do you have

18   a copy for me?

19             MS. TAITZ:  I will be happy to --

20             THE COURT:  Okay.  What is it that you would

21   like me to see?  You read it.

22             MS. TAITZ:  Okay.  She is asking --

23             THE COURT:  Yes.

24             MS. TAITZ:  -- for a TRO to remove her

25   picture.

1    THE COURT:  Right.

2    MS. TAITZ:  Your Honor, I would like to point

3 to you that the only picture that was on that website

4 was her mug shot.  And this is the same mug shot that

5 you have with a summary of her convictions in the State

6 of California.  So by stating this under penalty of

7 perjury she admits that this mug shot from California

8 is indeed her mug shot.

9    THE WITNESS:  That's not true.  She took that

10 out of context.  If you read the full verification, in

11 there is talks about a family photo, and Ms. Taitz has

12 filed it with Your Honor's Court numerous, numerous

13 times --

14    MS. TAITZ:  Ma'am --

15    THE WITNESS:  -- sent it out --

16    THE COURT:  Okay.  So we'll go --

17    THE WITNESS:  -- in mass mailing.

18    THE COURT:  -- we'll go -- we will take a

19 look at the statement --

20    MS. TAITZ:  Okay.

21    THE COURT:  -- in context --

22    MS. TAITZ:  In --

23    THE COURT:  A lot of this is argument, it's

24 not really facts.  We know what she filed, and what she

25 filed she did, and whatever it is it is, so why don't

Ms. Liberi - Cross                    73

1  we try to develop --

2          THE WITNESS:  Well, it's all over her

3  website.

4          THE COURT:  Why don't we try to develop a

5  factual record, if any, as needed?  It seems to me that

6  we now have it, but to the extent that there is

7  anything further to be developed, let's proceed.

8  BY MS. TAITZ:

9  Q   Ma'am, isn't it true that on the website

10 lisaliberi.com the only picture that was there was a

11 mug shot?

12 A   I can't say that.

13 Q   You are asking for a temporary restraining order,

14 and you have provided six hundred pages, and you have

15 provided all the pages from lisaliberi.com.

16 A   I provided the pages I could see, Ms. Taitz.

17 Q   Ma'am, if --

18 A   I don't know what all files were associated --

19 Q   Ma'am --

20 A   -- with that database.

21 Q   Okay.  From what --

22 A   I don't.

23 Q   Okay.

24 A   There's no way I would.

25 Q   On that website, in all the pages that you have

1  provided, isn't it true that the only picture that they

2  had there was a mug shot, yes or no?

3  A    Ms. Taitz, in that verification --

4  Q    Ma'am, it's a yes or no question.  On the --

5  A    I can't answer it yes or no.

6  Q    On the -- I'm asking about lisaliberi.com, that you

7  are -- that you were seeking TRO.  On that website

8  please look at all the papers that you filed, that you

9  could see.  Isn't it true that the only picture is your

10  mug shot or a mug shot?

11  A    That's not --

12  Q    Yes or no?

13  A    I can't answer that yes or no.  That's misleading.

14  That is not the way --

15  Q    Why is it --

16  A    Because there's data -- a database setup.  There

17  are things in that database that my specific --

18  Q    Ma'am --

19  A    -- IP could have been blocked by.

20  Q    Ma'am, I'm not asking about database.  I'm asking

21  about what you have submitted to Judge Robreno right

22  now, the documents that you have given to Judge

23  Robreno.  Isn't it true that in those papers the only

24  picture is a mug shot?  There are no other pictures

25  aside from mug shot?

Ms. Liberi - Cross                    75

1   A    It's a -- it's a supposed picture of me that you

2   call a mug shot --

3   Q    Okay.

4   A    -- and you are the only one that -- when you put

5   that picture out --

6   Q    Okay.  Okay.

7   A    -- you did that.

8   Q    Okay.

9           THE COURT:  Yes, ma'am, but again, again,

10  again.  Finish your answer and then you will have the

11  opportunity to ask the next question.  What else?

12  Anything else?

13          THE WITNESS:  Oh, I'm sorry.

14          THE COURT:  Okay.  Do you want to finish your

15  answer?  Okay.  The next question.

16  BY MS. TAITZ:

17  Q    Ms. Liberi, what is your mother's name?

18  A    Shirley Wadell.

19  Q    Isn't it true that Ms. Wadell posted bail for you

20  in the State of California, yes or no?

21  A    Your Honor, I'm going to object.  That has nothing

22  to do with --

23          THE COURT:  Sustained.

24          THE WITNESS:  -- this here today.

25          THE COURT:  Sustained.  Irrelevant.

1  BY MS. TAITZ:

2  Q    Okay.  Ms. Liberi, you have signed your declaration

3  here under penalty of perjury.  Judge Robreno has your

4  signature.  Can you look at it just to verify that this

5  is indeed your signature?

6         MR. BERG:  On what?

7  BY MS. TAITZ:

8  Q    On the declaration that you have filed.  You

9  personally filed a declaration in this case in TRO,

10 right, in regards to lisaliberi.com?

11 A    I filed a verification, and whether the one you

12 handed me was it or not, I have no clue.  The one on

13 file with this Court does bear my signature --

14 Q    Okay, that's fine.

15 A    -- and it does appear --

16 Q    Okay.

17 A    -- on the docket.

18 Q    Ma'am, I wanted to ask you, this is your -- that is

19 another declaration that you have filed in 2006.  I

20 wanted you to verify that this is also your declaration

21 and your signature.  I wanted to show it to Judge

22 Robreno.

23 A    What does something in 2006 --

24         MR. BERG:  I'm --

25         THE WITNESS:  -- have to do with today?

Ms. Liberi - Cross                    77

1          THE COURT:  Just a minute.

2          MS. TAITZ:  To show --

3          MR. BERG:  That is my objection, Your Honor.

4    It's irrelevant, 2006.  She states the one on file with

5    this Court is her signature.

6          MS. TAITZ:  This is relevant to credibility

7    of witness.  This is her declaration where she -- it's

8    her signature, and it is from her criminal case in

9    California.  It also mentions the name of her mother,

10   Shirley Wadell.

11         THE WITNESS:  But so what?

12         MS. TAITZ:  You --

13         THE WITNESS:  I've already admitted that's my

14   mother.

15         MS. TAITZ:  Ma'am --

16         MR. BERG:  Notice my objection, Your Honor.

17   It's 2006, there's no relevance.  She admitted that her

18   signature is what's on file with the current document

19   is her signature, and she admitted that her mother is

20   Shirley Wadell, so I don't know what this document has

21   any relevance.

22         THE COURT:  Well, it is what it is, so to the

23   extent that you're asking the Court to compare them we

24   will do so.

25              (Pause in proceedings.)

1  BY MS. TAITZ:

2  Q   Ms. Liberi, isn't it true that you have filed a

3  legal action in the State of California two hundred,

4  eighty million dollars against the State of California,

5  San Bernardino County, District Attorney's Office

6  claiming stalking, harassment, deprivation of rights,

7  RICO, racketeering influenced organizations?

8         Did you file legal actions in the State of

9  California against the county, the district attorney,

10  police officers, and sheriffs, yes or no?

11  A   Did I personally do it?

12  Q   Yes.

13  A   No.

14  Q   Did --

15  A   I had an attorney that did --

16  Q   Okay.

17  A   -- did --

18  Q   Okay, so you --

19  A   -- that handled things.

20  Q   Okay.

21  A   What she filed I don't know, because I don't have

22  it.

23  Q   Could you explain to Judge Robreno why did you file

24  this legal action claiming that you were evicting --

25  A   One has nothing to do with the other, Ms. Taitz.

Ms. Liberi - Cross                79

1   Q   It has to do with the fact that every time you are

2   being investigated and you're about to go to prison you

3   file legal --

4   A   I'm not being investigated now.  I'm not about to

5   go to prison now.

6   Q   Every --

7           THE COURT:  Excuse me.  Beyond the scope of

8   direct examination and beyond the scope of this

9   hearing.  It may become relevant later, maybe yes,

10  maybe no, but not relevant today.  Okay, next.

11  BY MS. TAITZ:

12  Q   Ms. Liberi, isn't it true that you were not

13  employed as a paralegal previously for any other

14  attorney?  You don't have any documents showing that

15  you were actually working as a paralegal or were paid

16  as a paralegal?

17          MR. BERG:  I object, Your Honor.  There's no

18  relevance.

19          THE WITNESS:  I don't understand your

20  question.

21          MS. TAITZ:  It shows credibility.

22          THE COURT:  Okay.

23          MS. TAITZ:  It shows that she is not a

24  paralegal working for a number of attorneys.  It shows

25  that she is indeed a convicted felon who --

Ms. Liberi - Cross                          80

1        THE COURT:  Well, wait a minute.  The

2   question would be at best you said you worked as a

3   paralegal.  Do you have a certificate from an

4   institution --

5        THE WITNESS:  Yes.

6        THE COURT:  -- that grants paralegal degrees?

7        THE WITNESS:  Yes, I do.  Right here from

8   Pennsylvania, as a matter of fact.

9        THE COURT:  Okay, fine.  Okay, next.

10  BY MS. TAITZ:

11  Q   Okay.  Isn't it true that according to probation

12  you cannot live in Pennsylvania?  You're not allowed to

13  reside, yes or no?

14        MR. BERG:  Objection, Your Honor.  Anything

15  dealing with her residence we ask that it not be

16  allowed.

17        THE COURT:  Sustained.  Okay.  We are here to

18  determine the website issues.

19  BY MS. TAITZ:

20  Q   Ma'am, you agreed -- you admitted that you were

21  convicted in California in 2008?

22        THE COURT:  She has.

23  BY MS. TAITZ:

24  Q   Now, you're not in prison.  How many years were you

25  supposed to get according to that conviction in 2008?

1          MR. BERG:  Your Honor, I don't think this has

2     any relevance.

3          THE COURT:  Sustained.

4     BY MS. TAITZ:

5     Q   Isn't it true that if you are caught committing

6     crime, you will be serving prison term in California --

7          MR. BERG:  Okay.

8     BY MS. TAITZ:

9     -- based on conviction that you admitted to?

10         MR. BERG:  I object, Your Honor.

11         THE COURT:  Sustained.  Now, do you have

12    anything else?  I think that we have exhausted the

13    factual basis here.

14         (Pause in proceedings.)

15         MS. TAITZ:  One second, Your Honor.

16         THE COURT:  Okay.

17         (Pause in proceedings.)

18    BY MS. TAITZ:

19    Q   In --

20         (Pause in proceedings.)

21         MS. TAITZ:  One second.

22         (Pause in proceedings.)

23    BY MS. TAITZ:

24    Q   You, Ms. Liberi, you admitted that you filed a

25    legal action in California through your attorney, Ms.

Ms. Liberi - Cross                                    82

1   Strickland, right?

2   A    I'm sorry?

3   Q    You admitted that you have filed a legal action in

4   California against the county, sheriffs, police

5   officers, but you said "I didn't do it myself.  I did

6   it through my attorney, right?"

7   A    I said I had counsel.  I didn't say --

8   Q    Yeah, okay.

9   A    -- whether I filed a suit or not.  I said I had

10  counsel.

11  Q    Okay.  Was Virginia Phillips the judge in that

12  case?

13          MR. BERG:  I object to the relevance, Your

14  Honor.

15          THE COURT:  Yes, sustained.  Nothing to do

16  with this case.  Let's go.

17  BY MS. TAITZ:

18  Q    Ms. -- Ms. Liberi, were you forbidden to file any

19  lawsuits by Judge Virginia Phillips --

20          MR. BERG:  I object.

21  BY MS. TAITZ:

22  Q    -- any further lawsuits?

23          MR. BERG:  I object, Your Honor.  It's not

24  relevant.

25          THE WITNESS:  And I don't recall any judge

1   ever ordering me not to file.

2           THE COURT:  Okay.  Well, that's the answer.

3   Okay.

4   BY MS. TAITZ:

5   Q   You recall that you filed a legal action.  Did you

6   win it?  Did you win --

7           MR. BERG:  I'm going to object, Your Honor.

8   It has no relevance.

9           THE COURT:  Yes, sustained.

10          MS. TAITZ:  It shows that Ms. Liberi is a

11  vexatious plaintiff who has accused multiple --

12          THE COURT:  We will get to the issue with

13  vexatious at some point here --

14          MS. TAITZ:  Okay.

15          THE COURT:  -- but not today.

16  BY MS. TAITZ:

17  Q   Ms. Liberi, isn't it true that you have no proof

18  that I have ever tried to hire a hitman and kill you,

19  isn't that true?

20  A   I don't know if it was a hitman to kill me, but

21  whether you tried to hire somebody that lives near me,

22  yes, we do have something to prove that.

23  Q   Ma'am, can you please show this evidence?  Show --

24  A   It's on file with the Court already, the Ruben

25  Nierto (ph) e-mails --

Ms. Liberi - Cross                                    84

1    Q    What -- no, you can't -- ma'am --

2    A    -- and Ms. Ostella will testify --

3    Q    Ma'am --

4    A    -- to this.

5    Q    -- what -- what evidence?  Can you show -- I'm an

6    attorney.  I'm officer of the bar.  I would like to

7    know.  You have slandered me, you have defamed me by

8    claiming that I tried to hire somebody to kill you.

9    What is your evidence?  Please state to Judge Robreno

10   what evidence?

11   A    Ms. Taitz, we're in litigation.  That is not

12   slander or defamation --

13   Q    Ma'am --

14   A    -- or libel.

15   Q    -- please show me the evidence.  This is -- my

16   career is on the line.

17   A    You've had it numerous times.  It's on file with

18   this Court, Your Honor, and we have additional copies.

19   Q    Okay.

20            MR. BERG:  Your Honor, may I approach?

21            THE WITNESS:  And Ms. Ostella will have to

22   testify because she received the e-mails.

23   BY MS. TAITZ:

24   Q    Ma'am, you have accused me -- you have accused me

25   of trying to hire somebody to kill you.  I need to know

Ms. Liberi - Cross                                    85

1   where is the evidence?  Where is the proof?  You've

2   written to Judge Robreno?

3            THE COURT:  Okay.  Let -- give her an

4   opportunity to answer.

5            THE WITNESS:  First off, what I stated was

6   somebody that has a very dangerous background,

7   attempted to get paid twenty -- three sums of money

8   totalling twenty-five thousand dollars from Orly Taitz

9   and Defend Our Freedoms.

10  BY MS. TAITZ:

11  Q    From me --

12  A    It's -- yeah, it's --

13  Q    -- or from Ms. Ostella?

14  A    -- a money request to your PayPal.

15  Q    From me or from Ms. Ostella when --

16  A    No, no, from you.

17  Q    Where?  Show me?

18           MR. BERG:  May I approach?

19           THE COURT:  Okay.

20           (Pause in proceedings.)

21           THE WITNESS:  And, again, Ms. Ostella can

22  better testify to these.

23  BY MS. TAITZ:

24  Q    Ma'am, you have accused me, so I need to know.

25  A    It's -- there's three sets totalling twenty-five

Ms. Liberi - Cross                         86

1   thousand.

2          (Pause in proceedings.)

3   A   Here, let me do it.  It's two eight thousand and

4   one nine thousand.  Okay, nine thousand, eight

5   thousand, and eight thousand.  Okay, that's one set.

6          MR. BERG:  And there's four here.

7          (Pause in proceedings.)

8          THE WITNESS:  There's two sets.

9          (Pause in proceedings.)

10         THE COURT:  Let's go off the record here.

11         (Pause in proceedings.)

12         THE COURT:  What evidence do you have that a

13  hired a hit man to kill you?

14  BY MS. TAITZ:

15  Q   Okay.  So this evidence is from PayPal account of

16  Lisa Ostella, right, where somebody by the name Ruben

17  Nierto --

18         THE COURT:  No, let's -- let's do this for a

19  minute.  Let's mark these as Exhibit 100, 101, and 102.

20  And let's see.  So which one are you referring to?

21  They have different --

22         MS. TAITZ:  I see --

23         THE COURT:  -- dates so --

24         MS. TAITZ:  I see page one dated December

25  16th.  On the bottom it says December 16th, 2000.

Ms. Liberi - Cross                87

1    THE COURT:  No -- well, look at the date it
2  was sent.

3    MS. TAITZ:  Oh, August 9, '09.  That's when
4  there was a hearing, in August in front of Your Honor.

5    THE COURT:  Which one are you referring to?

6    MS. TAITZ:  PayPal money request cancelled.

7    THE COURT:  No, but there's a send date.
8  Let's use that.  Is that -- is that 5-25-09?

9    MS. TAITZ:  I don't have it.  Oh, yes, yes.

10   THE COURT:  Okay.  5-26-09.  Okay, ask your
11  question.

12   MS. TAITZ:  Okay.

13   THE COURT:  That's Exhibit 100.

14  BY MS. TAITZ:

15  Q    Okay, ma'am, isn't it true that this is from PayPal
16  account lisaostella@hotmail.com, yes or no?

17  A    I can't answer that yes or no.

18  Q    Ma'am, what does it say on top?  Does it say
19  lisaostella --

20  A    I can't answer.  I need to explain that, Your
21  Honor.

22   MR. BERG:  Well, explain it.

23   THE COURT:  Well, is it -- I mean there are
24  two questions.  You can explain it afterwards.  But who
25  sent -- whose account was it sent to?

1      THE WITNESS:  That was from Orly Taitz and

2  Orly Taitz --

3  BY MS. TAITZ:

4  Q   Ma'am, can you show me where it says Orly Taitz on

5  this paper?

6  A   Ms. Ostella was Orly Taitz's customer service

7  contact on Orly Taitz PayPal account --

8  Q   But on this page, ma'am --

9  A   -- and Ms. Ostella --

10     MR. BERG:  Your Honor --

11 BY MS. TAITZ:

12 Q   -- on this -- I just -- I'm trying to clarify.  Ms.

13 Ostella, I'll deal with that later.

14     I am asking you on this page is there any

15 mention of Orly Taitz, yes or no?

16     (Pause in proceedings.)

17 A   Which one are you looking at?

18 Q   It's page one of one.

19 A   Okay.  But there's three -- there's three sets.

20 Q   Okay.  I'm asking just -- just let's do one page.

21 A   I need to be able to see it, Ms. Taitz.

22 Q   Ma'am, on this -- I'm asking you on this page --

23 A   On what page?

24 Q   This is page that on the bottom it says December

25 16th.

Ms. Liberi - Cross                    89

1   A    No, that's the print date.

2   Q    Ma'am, on top it says then 8-9-09 --

3   A    No.

4   Q    -- 9:22 p.m.  I can show it.

5        MS. TAITZ:  May I -- Your Honor, may I

6   approach?

7        THE COURT:  No, no, wait a minute.  Well,

8   hold on a minutes.  Hold on a minute.  Okay.  This is

9   marked as Exhibit 100.  And do not ask questions that

10  we know that answer to.  So the question is is there

11  any -- can you point anywhere here where it says Orly

12  Taitz?

13       THE WITNESS:  What -- I don't know which set

14  she's looking at.

15       (Pause in proceedings.)

16       THE WITNESS:  The 525?  Okay, I'm looking at

17  the 525.

18       (Pause in proceedings.)

19       THE WITNESS:  There's a -- it doesn't

20  specifically say her name, but there is a PayPal ID

21  associated with her.

22  BY MS. TAITZ:

23  Q    Okay.  But, ma'am, there is -- it doesn't say it,

24  right?  On those pages -- and I'll deal with Lisa

25  Ostella later.  On those pages it does not state

Ms. Liberi - Cross                          90

1  anywhere Orly Taitz, right?

2  A    It refers --

3  Q    Yes or no?

4          THE COURT:  Okay.  Right.  Okay, the next

5  question.

6  BY MS. TAITZ:

7  Q    Next question.  Here, it's a request from somebody

8  named Ruben Nierto --

9  A    Uh-huh.

10 Q    -- asking for money from Lisa Ostella.  My question

11 is, where does it show that Ruben Nierto is a criminal?

12 Ruben Nierto can be -- I don't know who he is.  It can

13 be an honest person.

14         Where does it show that, ma'am, that I have

15 any connection to Mr. Nierto, and where does it show

16 that this is a connection of me trying to hire a hitman

17 to kill you?  Can you explain this, please?

18 A    First off, I never said Ruben Nierto was a hitman

19 to kill me.  What I said was it appears you attempted

20 to hire a convicted felon to harm --

21 Q    Okay.

22 A    -- and yes, I did say that.  And number two --

23 Q    How --

24 A    Hold on.  I'm trying to answer your question.

25 Q    Okay.

Ms. Liberi - Cross                    91

1   A    All right?  Number two, this PayPal ID is

2   associated with your PayPal account.  Ms. Ostella's

3   name only appears because you added her to your account

4   as a customer service contact.

5   Q    Ma'am --

6   A    And Ms. Ostella is better to testify this -- to

7   this than I am.

8              THE COURT:  Okay.

9   BY MS. TAITZ:

10  Q    Ma'am, again, my question is --

11             MR. BERG:  Your Honor, an offer of proof

12  here.  There is other documentation.

13             THE COURT:  Okay.  Well, we'll get to that.

14             MR. BERG:  Okay.

15             THE COURT:  Now, let me say this.  This is a

16  preliminary hearing.  You have five more minutes to

17  complete your cross-examination.

18  BY MS. TAITZ:

19  Q    Okay.  Ma'am, so I will deal with Ms. Ostella in a

20  moment.  I am asking whether you have or had any

21  information, anything showing that I tried or attempted

22  to hire somebody to kill you, yes or no?

23  A    Is --

24  Q    Even if -- if somebody is trying to get money --

25  A    I'm trying to answer.  She won't let me.

1     THE COURT:  Yes, the question is too broad.

2  So the question is this.  Do you have any information

3  that Ms. Taitz attempted to hire a hitman to kill you?

4     THE WITNESS:  The request for payment

5  totalling twenty-five thousand --

6     THE COURT:  Okay.

7     THE WITNESS:  -- all under the ten thousand

8  reporting limit, number one.

9     MS. TAITZ:  What does that --

10     THE COURT:  Just a minute.

11     THE WITNESS:  The man lives forty-five

12  minutes from my home, number two.

13     THE COURT:  Okay.

14     THE WITNESS:  Number three, the court records

15  to this gentlemen were filed with Your Honor's -- in

16  the docket thing, with Your Honor's Court that show his

17  aggravated assault convictions, his website selling pot

18  seeds, porno.

19  BY MS. TAITZ:

20  Q   Ma'am, again --  ma'am --

21     THE COURT:  Just a minute.  Let her finish.

22  You asked her a question so she's going to give you an

23  answer.

24     THE WITNESS:  So all of that together,

25  absolutely do I believe he was -- you were trying to

Ms. Liberi - Cross                    93

1   hire someone to harm my family and I, yes.

2            MS. TAITZ:  Ma'am --

3            THE COURT:  Okay.

4   BY MS. TAITZ:

5   Q   Ma'am, let me ask you this happened May 26th, 2009.

6   Isn't it true that at that time I had nothing to do

7   with this website?  Isn't it true that you and Berg and

8   Ostella took over that website?

9   A   That is not true.  I have never had anything to do

10  with anything associated with you, number one.

11  Q   Ma'am --

12  A   Number two, you had your websites.  Where they were

13  at I don't know, I can't testify to that.  I have no

14  clue.

15  Q   Ma'am, isn't it true that you have filed your

16  lawsuit on May the 4th, meaning after May the 4th,

17  2009, I did not work with Ostella.  She sued me.  So

18  isn't it true that on May 25th there was no connection

19  between this website and me, yes or no?

20  A   I don't understand what you're asking me.

21  Q   Ma'am --

22  A   What website?

23  Q   Ma'am, did you file a lawsuit against me on May --

24  A   I don't know what she's asking.

25  Q   Ma'am, ma'am, didn't you file a lawsuit against me

Ms. Liberi - Cross                    94

1   on May the 5, 2009, yes or no?

2   A   Yes.

3   Q   This is May 25th, 2009, after the lawsuit was

4   filed, after -- after I had nothing to do with the

5   website, Defend Our Freedoms, after I did not work with

6   her.

7   A   So, are you saying this is not your PayPal

8   account --

9   Q   No.

10  A   -- because we have your PayPal records to show it

11  is.

12  Q   Ma'am, I have nothing to do with this website and

13  account --

14  A   What website?  I don't -- this is a PayPal account,

15  Ms. Taitz.

16  Q   Ma'am, ma'am, again, I had nothing to do with that

17  PayPal account because it had nothing to do with this

18  website.

19          THE COURT:  Okay.

20          THE WITNESS:  We have her PayPal records to

21  show otherwise.

22          THE COURT:  That's fine.

23          MS. TAITZ:  Ma'am --

24          THE COURT:  One more question.

25  BY MS. TAITZ:

Ms. Liberi - Cross                              95

1   Q   Where does it show that I tried to hire somebody to

2   hurt you?

3           THE COURT:   I think you already asked that

4   question --

5           MS. TAITZ:   Okay.

6           THE COURT:   -- and she gave an answer --

7           MS. TAITZ:   Okay.  Ma'am --

8           THE COURT:   -- and whatever it is it is.

9   BY MS. TAITZ:

10  Q   Isn't it -- ma'am, isn't it true that you do not

11  have any evidence of me -- ma'am, can you look at me,

12  please -- of me trying to kidnap your son, yes or no?

13  You accused me of doing this.  Isn't it true that --

14  A   Actually, I have plenty to believe that that's -- I

15  didn't -- I never said --

16  Q   Where's the evidence?

17  A   -- you were going to kidnap him.  You have made

18  statements, oh gee, I've supplied pictures, I've given

19  directions.

20  Q   Ma'am, what --

21  A   Did something happen to her son?

22  Q   Ma'am --

23  A   She only has one child.

24  Q   Ma'am --

25  A   This is her saying about me and my son.

Ms. Liberi - Cross                               96

1  Q   Ma'am, ma'am --

2  A   She has stalked my son.

3  Q   Ma'am, you are accusing me of stalking your son.

4  A   Yes, I am.

5  Q   Where is the evidence?

6          THE COURT:  Okay.

7  BY MS. TAITZ:

8  Q   Where?  In what?  How did I stalk your son?

9  A   You went and tracked a man down that was restrained

10 from me, I was protected, my son was protected from.

11 Q   Ma'am, I --

12 A   You published a picture and you --

13 Q   Ma'am, again, ma'am --

14         MR. BERG:  Your Honor, can she finish her

15 answer?

16         THE COURT:  Okay.

17         MR. BERG:  Can she finish her answer.

18         THE COURT:  I think that we're complete.

19 Thank you.  Step down.

20         (Witness excused.)

21         THE COURT:  Next witness.

22         MR. BERG:  Lisa Ostella, please.

23         THE COURT:  Okay.

24         MR. BERG:  Leave the -- leave the exhibits up

25 there (inaudible).

1          (Pause in proceedings.)

2          MR. BERG:  We need the 100, 100.

3          THE COURT:  You need 100, 100?

4          MR. BERG:  We need from 100, 101, and 102.

5   Can you leave her those?

6          THE COURT:  Okay.

7          (Pause in proceedings.)

8          LISA OSTELLA, Plaintiff's Witness, Sworn.

9          COURTROOM DEPUTY:  Please state your name and

10   spell your last name for the record.

11          THE WITNESS:  Lisa Ostella, O-S, as in Sam-T,

12   as in Tom-E-L-L-A.

13          THE COURT:  Let's proceed.

14          MR. BERG:  Thank you.

15                    DIRECT EXAMINATION

16   BY MR. BERG:

17   Q   I'm going to draw your attention to Exhibits 100,

18   101, and 102, and also 103, which I'm going to hand to

19   you.  Is this all one exhibit right here, this one?

20   A   Is that the PayPal records?

21   Q   Yes.

22   A   Yes.

23   Q   Okay.

24          MR. BERG:  Your Honor, I'm going to mark 101

25   to 103.

1          THE COURT:  Please.  So marked.

2          MR. BERG:  Thank you, and I'll bring it up.

3          (Pause in proceedings.)

4     BY MR. BERG:

5     Q    Before we get to those exhibits, you are one of the

6     parties in this case, is that correct?

7     A    That's correct.

8     Q    And you've testified previously in another matter

9     in this case I believe?

10    A    Yes, I did.

11    Q    Okay.  What is your background with computers?

12    Advise His Honor of your background.

13    A    Independently I've worked on computers for

14    twenty-four years.  I'm familiar -- above average --

15    I'm sorry, did -- you've asked for my background,

16    correct?

17    Q    Yes, high school, how about high school, college?

18    A    Yes, I started in high school on through college I

19    took computer classes.  I've worked jobs --

20         MS. TAITZ:  Your Honor, excuse me.

21         THE WITNESS:  -- since I was eighteen.

22         MS. TAITZ:  Is she testifying as an expert or

23    a party?

24         THE COURT:  Well, we'll see what she's going

25    to say.

1    THE WITNESS:  Well, I was involved with this

2    whole case through computers because of my background.

3    That's why I became a plaintiff.

4    THE COURT:  Okay.

5    THE WITNESS:  So I don't know how you can

6    separate the two.

7    BY MR. BERG:

8    Q    Do you have any degrees in computer science?

9    A    No.

10   Q    Okay.

11   A    No.

12   Q    What's your work experience in computers?   Have

13   you ever been --

14   A    Every --

15   Q    -- paid by anyone?

16   A    Do you mean website building?  Yes, I have --

17   Q    Anything.   Whatever.

18   A    -- had paid website building, hosting, running

19   servers before and shared hosting.

20   Q    Okay.

21   MS. TAITZ:  Your Honor, if I might just

22   object to her being classified as an expert in

23   computers.  She has no --

24   THE WITNESS:  That's fair.

25   MS. TAITZ:  -- education in computers.  She

Ms. Ostella - Direct                 100

1    is testifying as a party.

2            THE WITNESS:  That's fair.

3            THE COURT:  Just -- please, please.

4            MR. BERG:  I never offered her as an expert,

5    Your Honor.

6            THE COURT:  She has not been offered.

7            MS. TAITZ:  I just wanted to clarify that.

8            THE COURT:  She has not testified by way of

9    opinion.  She is testifying -- she will testify as to

10   facts --

11           MR. BERG:  Yes, thank you.

12           THE COURT:  -- if she has personal knowledge.

13   Okay, let's proceed, please.

14   BY MR. BERG:

15   Q   Certain exhibits are in front of you first, 100,

16   101, 102, and now 103.

17   A   Yes.

18   Q   These are questions dealing with the fact that Orly

19   Taitz was attempting to hire someone to do harm against

20   Lisa Liberi, is that correct?

21   A   That's correct.

22   Q   And can you explain to His Honor what those

23   documents are, and do you have any documentation to

24   show that Orly Taitz is connected to them?

25   A   Yes.  I was her web master and I set up the PayPal

Ms. Ostella - Direct                    101

1  account.  In setting up the PayPal account December,

2  2008, my contact information, e-mail, 800 number were

3  put into that account as customer service contact with

4  full -- with confirmed, enacted, and had the abilities

5  to do functions on this site at an admin level.  And

6  that's in these documents right here.  These are PayPal

7  records of Orly Taitz.  This is --

8  Q    What -- what exhibit are you looking at?

9  A    They're not marked.  I'm sorry.

10 Q    No, the whole set, the last set I gave you?

11 A    The whole set.  The whole set.  I was talking about

12 them in a group.

13 Q    That's 100 to 103 then?

14 A    Yes, correct.  Thank you, yes.

15 Q    Continue.  This is the declaration, 103, has -- is

16 in the corner.  It's the declaration from PayPal.  This

17 one is orlytaitz -- orly.taitz@mygmail.com.  I set this

18 one up.  And her drtaitz@yahoo.com.  These are

19 documents furnished to us as declaration from PayPal.

20         And my e-mail address, whenever I setup

21 customer websites I usually take a throwaway e-mail,

22 which is a Yahoo, a Hotmail, not a domain e-mail, and I

23 put it in their accounts so I can login, get scripting,

24 do whatever modifications I have access to the site.

25 And then I can never, ever use that e-mail in any other

Ms. Ostella - Direct                    102

1   e-mail accounts until that is deleted from the e-mail

2   account it is attached to.

3           These are documents that are showing through

4   the time, that time created, my e-mail account was

5   associated with Defend Our Freedoms Foundation up until

6   the whole PayPal account went inactive and was

7   transferred over to her Yahoo account.

8           So money requests going to

9   lisaostella@hotmail.com, we have no way of knowing if

10  he sent that to me directly or to Defend Our Freedoms

11  because I would get copied on it.  But either way, it

12  was from Defend Our Freedoms.

13  Q   And what are those documents?  What do they show?

14  A   They're requests for payments, and they were done

15  in two different times, three sets, eight thousand,

16  eight thousand, and nine thousand.

17  Q   Requesting money?

18  A   From Defend Our Freedoms in totals of twenty-five

19  thousand dollars each time.

20  Q   And this gentlemen, did you have any -- were you

21  involved in checking where this individual lived or

22  anything like that?

23  A   I wasn't involved, but I saw copies of what was

24  found.

25  Q   And what was that?

Ms. Ostella - Direct                    103

1   A    I saw copies of court records that were sent to me.

2   I did find articles, but I don't know if we confirmed

3   if that was him that assaulted that child.  Was that

4   confirmed?  I did find -- I did some research of public

5   articles, but not the court records.

6   Q    And the last document, the declaration from PayPal,

7   103 --

8   A    Yes.

9   Q    -- does that identify that to Orly Taitz?

10  A    Yes.

11  Q    Okay.  On where, on the front page, or where in

12  that document, or the attached document?  There's

13  several pages with that.

14  A    This is the cover sheet of the PayPal documents,

15  and these are -- these came as a set as well as all the

16  activity on the CDs, and we printed this out from the

17  CDs.

18  Q    And that shows this request for the twenty-five

19  thousand in different requests?

20  A    No, those came from my e-mail.

21  Q    Okay.  And this shows what though?  What does 103

22  show exactly?

23  A    103 show -- I'm sorry.  Say that again.

24  Q    Document 103, which I just handed you from PayPal,

25  what does that show?

1   A    Oh, this is -- this is the declaration of custodian

2   of records of PayPal, Incorporated, Liberi et al v.

3   Taitz et al, and our case number, and it's a

4   declaration of this being -- of the subpoena production

5   of this material.  Did I misunderstand?

6   Q    Okay.  That's fine.  Earlier on there were

7   documents given showing -- dealing with the ownership

8   of this particular liberi.com.

9   A    We -- oh, we're on lisaliberi.com?

10  Q    Yes.

11  A    Yes.

12  Q    Yes.

13  A    Okay.

14  Q    Have you seen those documents?  They're number --

15  A    I don't know the number, I'm sorry.  I came with my

16  own notes.

17  Q    I believe they're number 6 through 11, if you can

18  take a look.

19  A    I don't know the numbers.

20          (Pause in proceedings.)

21          MS. LIBERI:  They're up there on her right.

22  In the stuff on the right, Lisa.

23          (Pause in proceedings.)

24          THE WITNESS:  Can we just tell me what number

25  -- the documents we're looking for?

1        THE COURT:  Yes, would you come over and, Mr.

2   Berg, would you show her where those documents are?

3        MR. BERG:  Sure.

4        THE WITNESS:  This is all out of order.

5        (Pause in proceedings.)

6        THE WITNESS:  Are we speaking of my

7   affidavit, because I can talk about that.

8        MS. TAITZ:  Okay.  Your Honor, I would like

9   to object to this whole thing in terms of relevance.

10  They are claiming that because some third person asked

11  for money when I wasn't even in -- in charge of this

12  website, when they already locked me out of the

13  website, means that I knew who this person is, that he

14  was a hitman, and that I tried to hire him to kill

15  Liberi and kidnap children.

16        THE WITNESS:  P-6, P-6.  This one?

17        MS. TAITZ:  There is no foundation to show --

18        THE WITNESS:  I'm sorry.

19        MS. TAITZ:  -- that there's any connection.

20  Even if it's true that this person tried to ask for

21  money, I don't know who he is, they never showed any

22  connection to me.

23        They never showed that this person is a

24  hitman.  They never showed that I hired him to kill her

25  or kidnap children.  So, therefore, I am asking to -- I

Ms. Ostella - Direct                    106

1   object to this whole line of questions further on.

2          THE COURT:  Okay.  Okay, overruled.  Both

3   parties have explored this issue.  Whether or not it's

4   all going to be relevant I have my doubts, but let's

5   complete the examination.

6          MR. BERG:  Thank you.

7   BY MR. BERG:

8   Q   I now have before you --

9   A   Yes.

10  Q   -- P-6.

11  A   Yes, I'm sorry.  Thank you.

12  Q   Can you look at those documents and tell His Honor

13  what they are?

14         (Pause in proceedings.)

15  Q   They've been identified before.  I mean can you

16  show the correlation between those and Ms. Taitz?

17  A   Did I receive the correct documents?

18  Q   They're all there.

19  A   Okay.  I can't -- I never said I could connect the

20  site to Ms. Taitz.  I can connect it to Jeff Staples

21  and I can explain what is being said about the data

22  going out of site.

23         MS. TAITZ:  Your Honor, Jeff Staples is not a

24  party to this lawsuit, so she has nothing to say.

25         THE WITNESS:  Well, he's your witness.

Ms. Ostella - Direct                107

1          MS. TAITZ:  He was a witness in regards to

2     wrongdoing.  It has nothing to do --

3          THE COURT:  Okay.  Let's -- let's proceed.

4     What is the connection between that individual and

5     those -- and the document?

6          THE WITNESS:  These weren't my documents.

7     I -- can I talk off the top of my head to further

8     stifle the paper raffling -- ruffling, because these

9     weren't my documents.

10    BY MR. BERG:

11    Q    Where are your documents?  Do we have them?

12    A    I -- they were in my affidavit submitted to court.

13         (Pause in proceedings.)

14    A    Okay.  I'm going to end this paper ruffling and

15    pull out my documents, and I will speak on the website

16    and try to end some of this.

17         MR. BERG:  Your Honor, it's one other

18    document.

19         THE WITNESS:  Okay.

20         MR. BERG:  P-11, which is her affidavit.  May

21    I approach with that?

22         THE COURT:  Okay.

23         MR. BERG:  Thank you.

24         (Pause in proceedings.)

25         THE WITNESS:  This one.  That's the

Ms. Ostella - Direct                    108

1  supplemental to this one, okay, my first affidavit, and

2  we had supplementals added on to them.  I believe Your

3  Honor had asked how we could tell who has the ownership

4  of --

5           THE COURT:  Yes.

6           THE WITNESS:  -- domains.  There is a website

7  that I have a membership called domain tools.  They're

8  owned by Name Intelligent, Incorporated, and they are

9  used by the FBI and the FTC.

10          THE COURT:  Well, just tell me what you did.

11          THE WITNESS:  In that domain tools registry I

12  did a who is, and that gives you the data of who owns a

13  website.  It was originally under

14  publicdomainregistry.com.

15          After communications went back and forth to

16  publicreg -- domainregistry, which masks ownership,

17  they found that the site was in violation of their own

18  terms of service, and they released the private masking

19  of the ownership and then it was exposed as Jeff

20  Staples.

21          THE COURT:  Okay.

22          THE WITNESS:  And we do have that

23  documentation on Court.  I submitted these affidavits

24  to Court.  Now, when I would run a tracing tool on it,

25  it's on robtext.com, and that tool site is also used in

Ms. Ostella - Direct                                         109

1   searching out scam artists, and -- you know,

2   officially.

3          And it is a ping that goes out through the

4   internet and it brings back all the data to a web page

5   for you to see where it would go, the routing it would

6   go, and what domain servers, and the site

7   lisaliberi.com is not currently showing in view.

8          THE COURT:  What does that mean?

9          THE WITNESS:  As of this morning, there were

10  records changes as of early this morning, and I am not

11  a hundred percent sure what the results are of now.

12  But as of December 16th, the domain name server service

13  registry data was changed, so a sub-domain was running

14  almost parallel with the domain.

15         You pull up lisaliberi.com, it shows as

16  inactive.  But the routing as of the 16th was still

17  going out under a sub-domain alias, and I need

18  professional tools to track that further.

19         THE COURT:  Yes.

20         THE WITNESS:  But we don't know who could

21  pull that data, and at any time, and like I said --

22         THE COURT:  Well, if a person goes on the

23  web, are they able to pull up that data by logging into

24  lisaliberi.com?

25         THE WITNESS:  Not through that route, and

Ms. Ostella - Direct          110

1  that could change at any time because the person, Jeff

2  Staples, still has the control panel to the domain and

3  you can change those records at any time.

4         And the domain server it is pointing to now

5  is also registered at the same accounts that he

6  registered lisaliberi.com to, so he can change that at

7  any time.  But we don't know where it's routing to

8  privately.

9         THE COURT:  Okay.

10         (Pause in proceedings.)

11  BY MR. BERG:

12  Q   Are you aware of Jeff Staples submitting a document

13  to this Court on September 28th?

14  A   Yes.  Yes, the e-mails from October.  I do not have

15  that affidavit in front of me, but I can still remember

16  it, if I need to speak off the top of my head.  But

17  that is submitted to the Court.

18         MS. TAITZ:  Your Honor, Mr. Staples is not

19  party to this lawsuit.  He is not here to say anything

20  about this document.  I believe if they have anything

21  to do with Mr. Staples, this is something that they can

22  file in Texas and deal with Mr. Staples.

23         He has a legal action against them for

24  slander and defamation.  They defamed him, stating that

25  he forged documents.  If they have something against

Ms. Ostella - Direct                 111

1   him, this is something that they can take up with Mr.

2   Staples in Texas.

3            MR. BERG:  Your Honor --

4            MS. TAITZ:  They -- the question here, did I

5   or Linda Belcher have anything to do with this?  And

6   they still did not show --

7            THE COURT:  Okay.

8            MR. BERG:  Your Honor, it's part of the court

9   documents.  Jeff Staples has filed an affidavit with

10  this Court September 28th, 2010 dealing with this

11  website and with forged --

12           MS. TAITZ:  Not with this --

13           MR. BERG:  -- documents, and we filed our

14  response to that on October 7th with the other

15  documents.  So, therefore, Mr. Staples has submitted

16  himself to this court --

17           THE COURT:  Well, he's not a party here.

18           MR. BERG:  Right.

19           THE COURT:  He wouldn't be covered by it.

20  But the question is whether he's a conduit to anybody

21  else who is a party here in this lawsuit.  That may

22  have some connection to it, but obviously he is not a

23  defendant here so he can -- it seems to me that he

24  would have to -- in order to enforce an order against

25  him he has to be a defendant.

1    MR. BERG:  But he -- but, Your Honor, if an

2  order is issued by Your Honor, it would go to the

3  parties in this case and anyone connected with that.

4    MS. TAITZ:  Your Honor --

5    MR. BERG:  By September 28th, him submitting

6  an affidavit to this Court, he submitted an affidavit

7  on behalf of Ms. Taitz.  And the affidavit has

8  fraudulent documents which we --

9    MS. TAITZ:  Your Honor, objection.  He is not

10  here to state anything.  Mr. Berg, yet again, is

11  slandering an innocent person.  He is claiming that Mr.

12  Staples has forged documents.  He needs to bring an

13  action with the PD in Dallas if he -- if he thinks

14  there is forgery --

15    THE COURT:  Yes, okay.

16    MS. TAITZ:  -- he needs to bring it with him.

17    THE COURT:  Okay.

18    MS. TAITZ:  She needs to testify if there is

19  any connection between me or Ms. Belcher to this

20  website.  And I believe she already stated that the

21  only connection she has is with Mr. Staples who is not

22  a party to this lawsuit.

23    THE COURT:  Okay.  Next question.

24    MR. BERG:  Thank you.  Just a minute.

25    (Pause in proceedings.)

1  BY MR. BERG:

2  Q   What action has Orly Taitz's accusations had on

3  your life?

4  A   When the -- she posted on her website and created a

5  court's -- no courts -- a report with Orange County

6  Sheriff's Department that I stole --

7           MS. TAITZ:  Your Honor, we're talking about

8  TRO.  This has nothing to do with TRO.  This was a year

9  and a half ago.

10          THE WITNESS:  Okay.  But the thing is --

11          MS. TAITZ:  No relation to TRO hearing.

12          THE WITNESS:  -- with the nature of the

13 internet it constantly refreshes as new.

14          THE COURT:  Well --

15          MS. TAITZ:  Your Honor --

16          THE COURT:  -- the point is whether the

17 lisaliberi website, that's where you want to enjoin.

18          MS. TAITZ:  That's right.

19          MR. BERG:  Yes.

20          THE COURT:  Isn't that it?

21          MR. BERG:  Well, I want to --

22          THE WITNESS:  I thought it was for cyber

23 stalking, sir.

24          MR. BERG:  Your Honor, I want to -- I want to

25 enjoin the website and I also want to enjoin the

1   parties here to stop everything they're doing, whether

2   through this website or a new website tomorrow and

3   through their website.  It's a constant harassment --

4            MS. TAITZ:  Your Honor --

5            MR. BERG:  This --

6            MS. TAITZ:  -- he did not show any

7   harassment.

8            THE COURT:  Just a minute, please.  I --

9   really, I think this is now bordering in enormous

10  disrespect trying to turn this court into some kind of

11  circus.

12           Okay.  Now, I really think that you are very,

13  very close to that line.  You do not interrupt when

14  another lawyer is talking.  Okay.

15           MR. BERG:  Thank you, Your Honor.

16           THE COURT:  Don't thank me for rulings,

17  please, either.  That's my responsibility.  Okay.

18           MR. BERG:  Through these witnesses I think we

19  have shown, and with a few more questions we will show,

20  that cyber stalking is going on connected with Orly

21  Taitz, with Linda Belcher, and other parties at her --

22  at their direction.

23           THE COURT:  Yes.

24           MR. BERG:  And that's why some of this does

25  go back to 2009 but it has never stopped.  It's

Ms. Ostella - Direct                    115

1  ongoing.  It's gotten worse.  It has reasonably -- an

2  offer of proof here is the fact that her husband's

3  livelihood recently because of actions in this case by

4  the ongoing continuing harassment, bullying, cyber

5  stalking by Orly Taitz.  And we would have a few more

6  questions of this witness, Your Honor.

7            THE COURT:  You have less than five minutes.

8            THE WITNESS:  Can I address the initial

9  question he just asked?

10            THE COURT:  No question is pending.

11            THE WITNESS:  No?

12            THE COURT:  Mr. Berg, next question.

13            MR. BERG:  Thank you.

14            THE WITNESS:  But I didn't answer how did

15  this affects --

16  BY MR. BERG:

17  Q    Has this had any recent effect on your life or

18  family's?

19  A    Yes.

20  Q    What -- when and what?

21  A    Please, I will keep it very short.  The internet

22  service providers won't let us get material down from

23  websites unless a court order is issued, and I,

24  according to the materials she's put out, I have a

25  criminal history.  That criminal history that was in

Ms. Ostella - Direct                    116

1   discussion before was originally put out on me and is

2   on the internet as of today.  She made an Orange County

3   Sheriff's Department report on it.  She said I was Lisa

4   Liberi.  That's how I got involved with this.

5        My husband has a professional license.  She

6   has on her website to this day that he and I both stole

7   ten thousand dollars from her and her foundation.  I

8   brought my bank account with me.

9        THE COURT:  Well, where is -- where is that

10  on the website?

11       THE WITNESS:  The -- Judge Robreno's copy.  I

12  brought my PayPal records, I brought my bank account.

13  I never took anything from this woman.

14       THE COURT:  Well, what I want to know is

15  where does it say that?

16       THE WITNESS:  I will show it to you.

17       (Pause in proceedings.)

18       MR. BERG:  Your Honor, may I approach with

19  P-19?

20       THE WITNESS:  Tab G.  Tab G.  She has my

21  husband's name up there --

22       THE COURT:  Excuse me a minute.

23       THE WITNESS:  I'm sorry.

24       THE COURT:  Hold it.

25       THE WITNESS:  I'm sorry.

Ms. Ostella - Direct                117

1          MR. BERG:  Hold on a minute.

2          THE WITNESS:  I'm sorry.  Tab G.

3          THE COURT:  Okay.  Where does it say that in

4    the website?

5          THE WITNESS:  Tab G, please.

6          THE COURT:  Tab?

7          THE WITNESS:  Tab -- tab -- tab --

8          THE COURT:  Which one?

9          THE WITNESS:  Tab G.

10         THE COURT:  Okay.

11         MR. BERG:  This will be -- and this is what

12   number?  This is P-19, Your Honor, previously marked.

13         THE COURT:  Okay.

14         MR. BERG:  Tab G.

15         THE WITNESS:  Tab G.  It starts at the bottom

16   and it says, "As you know, my previous site,

17   defendourfreedoms, was taken over by the web master,

18   Lisa Ostella.  For over a year now Lisa Ostella has no

19   affiliation with Defend Our Freedoms Foundation,

20   however, she has been sending e-mails from Defend Our

21   Freedoms and collecting donations.

22         "If you are a donor and received such

23   solicitations or have given a donation believing it

24   went to Defend Our Freedoms Foundation, you were

25   defrauded since such donations were at least April 11th

1   or possibly earlier went to the pocket of Lisa Ostella

2   and benefitted the household of Lisa and Frank Mario

3   Ostella."

4          My husband has a professional license and

5   this comes up in pre-qualification screenings.  And

6   there's more if you go through the comm -- comments,

7   comments, comments.  She further elaborates on it.

8   BY MR. BERG:

9   Q   And is this still up on the website?

10  A   Yes.  I -- it's date stamped 12-15-2010 when I

11  printed it.  And I submitted her PayPal records, I

12  submitted my bank account records.  They're all here.

13  My PayPal account.  I never took anything from this

14  foundation, nor did my husband.

15  Q   Aside from saying they're here, can you identify

16  what tab they're under --

17  A   Yes.

18  Q   -- for His Honor?

19  A   Yes.

20         MR. BERG:  And, Your Honor, the print date

21  she is discussing is the bottom right, as you're aware

22  I believe.  That's when it was printed off the

23  internet.

24         THE WITNESS:  And like I said, the ISPs they

25  require a court order for this material to come down.

Ms. Ostella - Direct                    119

1    Tab A was PayPal records for Orly Taitz.  PayPal

2    records for Lisa Ostella is tab B.  My bank account,

3    and I'm willing to submit one without all the account

4    numbers blocked off under seal if you want that without

5    the blocking out.

6           The Ruben Nierto stuff we went over.  Tab E

7    is the police report.  You probably skimmed it because

8    of the overabundance of papers that have come in this

9    case, but if you look at the police report and go onto

10   the third page, she says, "Lisa Liberi, a.k.a Lisa

11   Ostella," and the criminal history went out to

12   everybody I know.

13          (Pause in proceedings.)

14          THE COURT:  Okay.  Next question.

15   BY MR. BERG:

16   Q   The -- the money request from Ruben Nierto was a

17   request for payment from Defend Our Freedoms, is that

18   correct?

19   A   Requested money from Defend Our Freedoms

20   Foundation, correct.

21   Q   Have you, Lisa Ostella, ever had a PayPal under the

22   name of Defend Our Freedoms?

23   A   I have -- I've managed one.  It was Orly Taitz's

24   PayPal account.  But I had access and management to

25   that, yes.  It wasn't my ownership PayPal account.

Ms. Ostella - Direct                    120

1    Q    Okay.  That was owned by Defend Our Freedoms, is

2    that correct?

3    A    Yes.

4    Q    And Defend Our Freedoms is?

5    A    I'm sorry?

6    Q    Who owns Defend Our Freedoms?

7    A    Orly Taitz owns the PayPal account, Defend Our

8    Freedoms.

9    Q    Okay.

10            MR. BERG:  One second, Your Honor.

11            THE COURT:  One more question.

12            MR. BERG:  Okay.

13   BY MR. BERG:

14   Q    Are you -- are you at the present time under fear

15   of anything from Orly Taitz?

16   A    Yes.  Yes.

17   Q    And what is that fear?

18   A    I -- that's bringing into things that's not

19   relevant to lisaliberi.com.  How do I answer that?

20   Q    Just go to you, cyber stalking.  Are you afraid of

21   what is transpiring on cyber stalking right now?

22   A    I believe cyber stalking left cyber space when she

23   showed up in New Jersey last time, last court hearing,

24   and a picture of my daughter ended up on the internet.

25   Q    And that's still on the internet?

Ms. Ostella - Direct                    121

1   A   No, no.

2   Q   That's not.  But other documentation still is, is

3   that correct?

4   A   Yes.

5           MR. BERG:  Cross-examine.  Or I'm sorry, Your

6   Honor.

7           THE COURT:  Okay.  Cross-examination.

8           (Pause in proceedings.)

9                     CROSS-EXAMINATION

10  BY MS. TAITZ:

11  Q   Ms. Ostella, isn't it true, and you stated this,

12  that you were administrator -- you were the

13  administrator for the website, Defend Our Freedoms

14  Foundation, and you locked me out of that website, yes

15  or no?

16  A   defendourfreedoms.com, .org, .us, yes, I was web

17  administrator.

18  Q   You --

19  A   And I --

20  Q   And you locked --

21  A   -- did lock you out.

22  Q   Okay.  You locked me out?

23  A   Yes.

24  Q   After you locked me out isn't it true that you

25  continued sending e-mails to donors soliciting

Ms. Ostella - Cross                              122

1    donations?

2    A    No.

3    Q    Ma'am --

4    A    Can I see one of those e-mails?

5              MS. TAITZ:  Your Honor --

6              THE COURT:  Excuse me, that -- the answer is

7    no.

8              THE WITNESS:  I'm sorry, no.

9              THE COURT:  Okay.  Next question.

10             MS. TAITZ:  Your Honor, I believed that this

11   is hearing only about TRO.  I do not have those e-mails

12   right now, however, I will testify, and I am testifying

13   under penalty of perjury, that numerous donors have

14   received e-mails from Ms. Ostella asking for donations.

15             THE COURT:  Well, as I said to you, this is a

16   preliminary hearing.

17             MS. TAITZ:  Yeah.

18             THE COURT:  There may be -- there may be a

19   need for further hearings and further evidence --

20             THE WITNESS:  You have my --

21             THE COURT:  -- so your --

22             THE WITNESS:  You have a copy of my PayPal --

23             THE COURT:  Excuse me a minute.

24             THE WITNESS:  -- accounts with the material.

25             THE COURT:  Please.

Ms. Ostella - Cross                    123

1        THE WITNESS:  I'm sorry.

2        (Pause in proceedings.)

3        THE COURT:  You will have an opportunity --

4        MS. TAITZ:  Okay.

5        THE COURT:  -- if there is a further hearing.

6        MS. TAITZ:  Yes.

7        THE COURT:  As I said, there are other issues

8   involved here, damages, professional conduct, a number

9   of other issues that may require further explanation.

10       MS. TAITZ:  Okay.

11       THE COURT:  At this point your answer is no,

12  and then --

13       MS. TAITZ:  Okay.

14       THE COURT:  -- you can ask the next question.

15  BY MS. TAITZ:

16  Q   Ms. Ostella, after you locked me out I had to

17  create a new website, and I created website

18  orlytaitzesq.com, is that correct?

19  A   No, you went to repubix next --

20  Q   And then -- and then I created --

21  A   -- and then orlytaitzesq.com, correct.

22  Q   Okay.  So I created my own website?

23  A   Correct.

24  Q   And my PayPal was connected to orlytaitzesq.com,

25  that's right?

Ms. Ostella - Cross                                    124

1   A    I -- yeah.  I -- yeah.

2   Q    So the PayPal that was connected to the old account

3   was your account, right?  Yes or no?

4   A    You are talking about a virtual -- a virtual

5   terminal versus a PayPal button so there is a

6   differentiation between how you're saying that.

7   Q    But it was -- okay.  It was a PayPal account where

8   people could donate, right?

9   A    Correct.

10  Q    So after you locked me out, you replaced my PayPal

11  account with your own PayPal account on --

12  A    Yes.

13  Q    -- that website?

14  A    Yes.

15  Q    So when people, my donors, went on my old website,

16  Defend Our Freedoms, instead of donating to me so I can

17  work they were donating to you, right?

18  A    Actually, I have my PayPal accounts in with the

19  papers I gave you, and it shows no donations to --

20  Q    But --

21  A    -- Defend Our Freedoms.

22  Q    And we will verify how much you received and how

23  much you didn't receive.

24       But after you locked me out you replaced the

25  account, so after I was locked out anybody who were to

1   donate or not to donate would go to your personal

2   account, is that correct?

3   A    Would.

4   Q    Yes.   Okay.   Now, let me ask you --

5            THE COURT:  But you're saying no one did?

6            THE WITNESS:  No one did and my PayPal

7   records are in the book, sir.

8            MS. TAITZ:  Your Honor, I actually do have

9   records showing that indeed --

10           THE COURT:  Okay, fine.

11           MS. TAITZ:  -- that happened.

12           THE WITNESS:  It would still be in my PayPal

13  account.

14  BY MS. TAITZ:

15  Q    Now, I will have to subpoena your PayPal account.

16  A    Go ahead.

17  Q    I have this from the donors.   Now, isn't it true

18  that in regards to this website, lisaliberi.com, and

19  you stated before that the only connection that you

20  have is with Mr. Staples, not with me?

21  A    Correct.

22  Q    Okay.

23  A    And that's all I've said --

24  Q    Okay.

25  A    -- in my affidavits.

Ms. Ostella - Cross                 126

1   Q   Okay.  So you are the expert for Berg and Liberi

2   and you are saying that the subject of this TRO,

3   lisaliberi.com, is only connected to Mr. Staples and

4   not to me, is that correct?

5   A   No, I didn't differentiate that.  I said I have

6   proof of Jeff Staples --

7   Q   Okay.  Only --

8   A   -- not proof of you.

9   Q   That's right.  Okay.  I wanted to ask just one more

10  question.  Through Mr. Berg you have submitted to Third

11  Circuit Court of Appeals and court in Florida --

12  A   Yes.

13  Q   -- a statement that I allowed you to sign

14  documents, is that correct?

15  A   And I backed that up, too, with my material I

16  submitted to that court.

17  Q   Okay.

18          MS. TAITZ:  Your Honor, I wanted to show you

19  the documents that were submitted to Third Circuit

20  Court of Appeals and a court in Florida that they

21  submitted, if I can --

22          THE WITNESS:  That doesn't look like the

23  Pacer docket.

24          MR. BERG:  Do you have a copy that I can see?

25          MS. TAITZ:  Sure.

Ms. Ostella - Cross                    127

1      THE COURT:  Well, let's see.  What do you

2 purport this to be?

3      MS. TAITZ:  This is forgery.  I never --

4      THE COURT:  No, but what is -- where does it

5 come from?

6      MS. TAITZ:  It says from Lisa Ostella.  They

7 have provided this to me and Mr. Berg.

8      THE COURT:  You're saying these documents

9 have been filed with a court?

10      MS. TAITZ:  Yes.

11      THE WITNESS:  Yes, but that is not the

12 Pacer --

13      THE COURT:  And they --

14      THE WITNESS:  -- docket.

15      THE COURT:  And they purport to have your

16 signature?

17      MS. TAITZ:  Ms. Ostella claimed that I

18 allowed her to sign documents.

19      THE COURT:  Okay.

20      MS. TAITZ:  If you were to look at this -- if

21 somebody allows you to sign documents, you would see

22 that it's signed a little bit differently one time,

23 another time.

24      And if you look at those documents, it's

25 clearly a forgery.  You can see that they took my

Ms. Ostella - Cross                128

1  signature from a document and cut and pasted it on

2  multiple documents.

3         THE WITNESS:  Yes, I did with her permission.

4  BY MS. TAITZ:

5  Q   Okay.  So you are saying that I permitted you to --

6  to cut my signature from a document and paste it on

7  many documents?

8  A   I --

9  Q   Is that what you're saying?

10 A   And I did that on more than subpoenas.  I did that

11 on dossiers and letters you sent out too.  I live in

12 New Jersey, you live in California.  We're not in the

13 same office.  I had permission to sign documents to

14 you.  I sent them out to the servers to sub --

15 Q   Ma'am --

16 A   -- for the subpoenas to be served.

17 Q   Ma'am, if you can look at this document, you can

18 see that the signature -- what -- it's the same

19 signature on a number of documents.

20 A   Yes.

21 Q   Can you -- how -- can you explain how could it

22 happen that if I were to allow it to you, how did it

23 happen that on a document that you claim that I've

24 allowed you to sign, cut and paste, in January there

25 was a signature that was from April, three months

Ms. Ostella - Cross                    129

1   later?  How could that happen?

2   A    I --

3   Q    You took --

4   A    -- don't understand.

5   Q    You took a document that I signed in April of 2009

6   and then you cut and pasted signature --

7   A    That's the same --

8   Q    -- on documents that were sent --

9   A    That's the same signature.

10  Q    -- several months earlier.

11  A    I had your signature in a bit map on my computer.

12  Q    Ma'am, every person signs documents a little bit

13  differently.

14  A    Not when you use a rubber stamp.

15  Q    Do I have a rubber stamp?

16  A    No, I had a bit map for your rubber stamp.

17  Q    So you have -- you have created a rubber stamp with

18  my signature?

19  A    No, I had a bit map for your rubber stamp.

20  Q    Okay.  So you -- okay.

21          THE COURT:  Okay.  So next -- next area.  Do

22  you have anything else, Ms. Taitz?

23          MS. TAITZ:  Okay, yes.

24  BY MS. TAITZ:

25  Q    Ma'am, have you -- you have accused me of -- of

1  stalking you and you have accused me -- I mean I am an

2  attorney and you have accused me of trying to hire a

3  hitman to kidnap your children.

4  A    I did not make those statements.

5  Q    Who made those statements?

6  A    Those weren't made by me.

7  Q    But can you tell me who made those statements?

8  Where --

9  A    They are in the court filings on this.

10  Q    And who made those --

11  A    I don't know who writes what.

12  Q    And who made those court filings?

13  A    They came from my attorney's law office.

14  Q    You mean they came from Mr. Berg, right?

15  A    His law office, yes.

16  Q    And how did he come up with this idea that I tried

17  to hire somebody to kidnap your children?  Can you

18  explain?

19  A    Oh, that?

20  Q    Yes.

21  A    That wasn't hitman.  That was different.  Are you

22  talking about -- okay.  Because if you're talking about

23  the kidnapping of my children, that was --

24  Q    Yes.

25  A    -- different from Ruben Nierto.

Ms. Ostella - Cross                    131

1    Q    Okay.  How -- I mean you -- you have accused me of

2    serious crimes.

3    A    Yes, I have.

4    Q    And on what basis?

5    A    And I stand on them.

6    Q    Okay.  What's the basis?

7    A    You came to New Jersey after the last court date

8    and drove around New Jersey, drove past my child's

9    school, drove past my house.

10   Q    Ma'am --

11   A    I --

12   Q    Ma'am, excuse me.  Where -- from what -- where do

13   you get it?  You -- there is -- there is -- I -- there

14   is no evidence to that.  I would --

15   A    Yes, there is.

16   Q    I went to New Jersey to report you, report the fact

17   that you locked me out of the account of my foundation

18   and you replaced my PayPal with your PayPal.  I went to

19   New Jersey to report diversional funds from my

20   foundation.  Instead, you accuse me of going to New

21   Jersey to kidnap your children.  From what?

22   A    No, I didn't accuse you of going to kidnap my

23   children on that trip.  I have an affidavit.

24              THE WITNESS:  Tab K, sir, in the binder I

25   gave you.

Ms. Ostella - Cross                    132

1    THE COURT:  To what effect?

2        THE WITNESS:  Tab K is the gentleman that was

3    with her when she drove around New Jersey.

4        MS. TAITZ:  He is not here.  This is -- he is

5    the --

6        THE WITNESS:  His affidavit is here.

7        MS. TAITZ:  But this is hearsay.  I cannot

8    question him.

9        THE WITNESS:  Affidavits are not hearsay.

10   BY MS. TAITZ:

11   Q   Does it say anywhere in his affidavit that I was

12   trying to kidnap your children?

13   A   No, I didn't say it was.

14   Q   Does it say that I went to report you to the

15   police, yes or no?

16   A   Yes, you came --

17   Q   Okay.  Thank you.

18   A   -- here, drove past --

19   Q   No more --

20   A   -- my house.

21       MS. TAITZ:  That is all.

22       THE WITNESS:  No, she's cutting off my

23   statement.

24       THE COURT:  Okay.  Thank you.  You may step

25   down, ma'am.  Okay.

1        THE COURT:  Thank you.  You may step down,

2   ma'am, thank you.

3        (Witness excused.)

4        THE COURT:  Okay, bottom line, Mr. Berg.

5        MR. BERG:  Bottom line, Your Honor.  I

6   believe we have set forth sufficient evidence for a TRO

7   to be issued in this case.  Reasonable likelihood

8   petition will prevail on the merits.

9        I think we have this ongoing, I think this

10  website, I think the connection with Jeffrey Staples,

11  by an affidavit that he submitted as a witness for Orly

12  Taitz as part of the documents becomes a Court record.

13       THE COURT:  But, what is his connection to

14  Taitz?

15       MR. BERG:  His connection is he's the person

16  behind this.

17       THE COURT:  I know, but where do you get that

18  idea?  Where in the documents is that connection made?

19       MR. BERG:  He files a document with this

20  Court in October.

21       (Pause in proceedings.)

22       THE COURT:  Okay.  The affidavit that he

23  filed here, how does that connection then grow from

24  that affidavit?

25       MR. BERG:  Well, because in that he stating

134

1    he's a witness for Orly Taitz, and he has documentation

2    trying to allege that we sent certain documents back

3    and forth, and then we filed a rebuttal to that with

4    the correct things.

5            Jeffrey Staples is in this as much as Lisa,

6    as much as Orly Taitz --

7            THE COURT:  Now, you didn't sue him, right?

8            MR. BERG:  Well, he's not involved in the

9    present case.

10           THE COURT:  Right.  Now, how is this case

11   different now than it was when you filed the lawsuit?

12   It doesn't seem to have much resemblance to the

13   original defamation.

14           MR. BERG:  It does or does not?

15           THE COURT:  It doesn't, does it?

16           MR. BERG:  Well, no.  Well, it's getting

17   worse, it's gotten worse.

18           THE COURT:  What happened to the Texas

19   people?  They seem to have faded from all these

20   affairs.  Are they involved -- this husband and wife

21   radio --

22           MR. BERG:  The Hales.

23           THE COURT:  The Hales.

24           MR. BERG:  Hale, H-A-L-E.  Currently, they're

25   not involved in this part.

1          THE COURT:  They're not involved in what

2    we're about today?

3          MR. BERG:  Correct.

4          THE COURT:  Okay.

5          MR. BERG:  Correct.  Mr. Hale stated months

6    ago I'm getting away from Orly Taitz, I don't want to

7    be involved in this.

8          THE COURT:  Okay.

9          MS. TAITZ:  Your Honor, objection.

10         THE COURT:  Okay.  So, they're not involved

11   in this.

12         MR. BERG:  No.

13         THE COURT:  Okay.  So, but this other

14   fellow --

15         MR. BERG:  Not a party, Jeffrey.

16         THE COURT:  -- has not been a defendant here

17   before is, and as I understand your theory, is that he

18   is somehow an agent of Taitz, is that it?

19         MR. BERG:  Yes, yes.  Jeffrey Staples, and

20   going back twenty years, a friend of Linda Belcher,

21   who's a defendant in this case who has not filed a

22   response, and if Ms. Taitz did file a response I

23   haven't seen that yet, Your Honor.

24         THE COURT:  Okay.

25         MR. BERG:  But, it's just -- it has just

136

1    progressed.  Nothing has stopped on the main case as

2    far as her disseminating information, except greater

3    information.

4            THE COURT:  That's what's provided, I think,

5    in Exhibit 16, is that it, where it has all the

6    postings?

7            MR. BERG:  Exhibit 1, Your Honor.

8            THE COURT:  Exhibit 1, okay.

9            MR. BERG:  Yes.

10           THE COURT:  That's where the postings are?

11           MR. BERG:  Yes, and those have the past and

12   the present.  But, significant is the fact that when --

13           THE COURT:  But, those are in Orly Taitz's

14   website, not on Lisa Liberi website?

15           MR. BERG:  That's correct.  But, the one

16   which we've identified separately is the one that when

17   the Third Circuit sent it back to you, Your Honor,

18   that's when she put out this thing on her website, that

19   now she has freedom to say whatever she wants to say,

20   and she's referring to the other website which she's

21   involved in.  It's her -- there's no legitimate

22   purpose.

23           THE COURT:  Let me ask you something.

24           MR. BERG:  Yes?

25           THE COURT:  Are you prepared to post a

137

1  surety, because that's a requirement for the issuance

2  of a TRO?

3          MR. BERG:  Sure.

4          THE COURT:  Okay.

5          MR. BERG:  Yes, we would.

6          THE COURT:  Okay.

7          MR. BERG:  Because what has transpired here

8  has not stopped from the initial request we made to you

9  last year, and has been ongoing, and we have not come

10 back to court for that because at the right time that

11 will be dealt with.

12          Just for the Court's knowledge, the appeal

13 that Ms. Taitz has taken is appealing your ruling to

14 transfer this case, which I believe --

15          THE COURT:  But, you don't object, as I

16 understand it.

17          MR. BERG:  I don't object, and I believe that

18 you can't even appeal that type of issue, but we have

19 to wait for the Third Circuit.

20          THE COURT:  Well, we don't know that, but

21 that's scheduled to be heard soon, as I understand it.

22          MR. BERG:  Yes, it has a February date.

23          THE COURT:  Okay.

24          MR. BERG:  Tentatively, you know, and the

25 Court could hear it or could just rule before that or

1    after that.

2            THE COURT:  Now, if this case goes to

3    California and Texas --

4            MR. BERG:  Yes?

5            THE COURT:  -- I guess this whole thing would

6    go with that?

7            MR. BERG:  Sure.

8            THE COURT:  Yes.

9            MR. BERG:  But, the TRO is necessary because

10   if you don't issue a TRO it will allow Ms. Taitz and

11   Ms. Belcher, and all of their other cohorts to

12   continue, but worse.

13           THE COURT:  So, you're saying what's in

14   Exhibit 1 is currently on the website?

15           MR. BERG:  Yes.  Yes, and even though the

16   lisaliberi.com is down from public view, it can also --

17   we know it's being sent out.

18           THE COURT:  Okay, fine.

19           MR. BERG:  Orly Taitz is very involved with

20   this, and her husband.

21           THE COURT:  Let me hear from Ms. Taitz then,

22   the, the bottom line here.

23           MR. BERG:  Thank you.

24           THE COURT:  Do you have any evidence that you

25   would like to submit at this time?

139

1        MS. TAITZ:  Yes.

2        THE COURT:  Or do you want to go with what we

3   have now?

4        MS. TAITZ:  Yes, actually, may I question Mr.

5   Berg?  He is a party to this case.  May I examine him?

6   Mr. Berg, can you please take the stand?

7        THE COURT:  Okay.  Before you do that, I'm

8   going to take a five minute recess, and then we'll do

9   that.

10       (Recess, 5:12 p.m. to 5:20 p.m.)

11       THE COURT:  Okay.  Let's proceed.  Mr. Berg,

12   please take the stand, and would you swear Mr. Berg?

13       PHILIP BERG, Defendants' Witness, Sworn.

14       COURTROOM DEPUTY:  Please state your name and

15   spell your last name for the record, please.

16       THE WITNESS:  Philip J. Berg, B-E-R-G.

17       THE COURT:  Okay.  Let's proceed, please.

18                    DIRECT EXAMINATION

19   BY MS. TAITZ:

20   Q   Mr. Berg, you have filed this lawsuit for liable

21   and slander, is that correct?

22   A   Among other things, yes.

23   Q   In your pleadings, in your complaint, you stated

24   that you have a staff of people working for you,

25   office, that you are a highly respected attorney, a

Mr. Berg - Direct                    140

1   staff of people working for you, and Ms. Liberi is

2   highly skilled legal assistant, is that correct?

3   A    Yes.

4   Q    Mr. Berg, how did you start working with Ms.

5   Liberi?

6           MR. BERG:  Your Honor, I'm going to object to

7   this, not relevant to the proceeding before you.

8           THE COURT:  Sustained.

9   BY MS. TAITZ:

10  Q    Mr. Berg, is Ms. Liberi actually physically working

11  in your office, yes or no?

12          MR. BERG:  Your Honor, I'm going to object

13  because of two things.  Not relevant, and also dealing

14  with her residency.

15          THE COURT:  Sustained.

16  BY MS. TAITZ:

17  Q    Mr. Berg --

18          THE COURT:  Let's get to the issues for

19  today.

20          MS. TAITZ:  Okay.

21  BY MS. TAITZ:

22  Q    Mr. Berg, you --

23          MS. TAITZ:  Well, the point is that Mr. Berg

24  went into numerous issues.  For example, with Ms.

25  Ostella, he brought information in regards to my

Mr. Berg - Direct                 141

1    website, so I have to respond and clarify this.

2           THE COURT:  Your questions have nothing to do

3    with it, so let's proceed, please.

4    BY MS. TAITZ:

5    Q   Isn't it true that you worked with Mr. Staples, and

6    he was your webmaster, not mine, is that correct?

7    A   Originally, he helped me, yes.

8    Q   Yes.

9           THE WITNESS:  Can I --

10          THE COURT:  No, excuse me, just answer the

11   question, Mr. Berg.

12          THE WITNESS:  I wonder if that was Mr.

13   Staples sitting in court with her, Your Honor.  That

14   might be relevant.

15          MS. TAITZ:  No, that's not Mr. Staples.

16          THE WITNESS:  Okay.

17   BY MS. TAITZ:

18   Q   So, you were paying Mr. Staples?

19   A   I'm not sure.  I don't think I paid him.  I think

20   he just was helping me for the purpose that I was

21   involved in.

22   Q   Now, isn't it true that Ms. Belcher and Mr. Staples

23   have filed affidavits that on your website,

24   obamacrimes.com, you set up a Paypal account in the

25   name of your girlfriend, and donations were going to

Mr. Berg - Direct                    142

1    her?  You admitted to this in your pleadings, isn't

2    that true?

3           MR. BERG:  I'm going to object to that.  That

4    has no relevance to these proceedings today.

5           THE COURT:  Well, your relationship with Mr.

6    Staples may.

7           MR. BERG:  Okay.

8           THE COURT:  What is your relationship with

9    Mr. Staples?

10          THE WITNESS:  None.  As a matter of fact,

11   Your Honor, we have found out recently that Mr. Staples

12   apparently has been using my information and perhaps --

13   we have a police investigation going on that he's

14   stealing from me.

15          THE COURT:  Okay.  When did you first hear of

16   Mr. Staples?

17          THE WITNESS:  I first heard of Mr. Staples

18   October, I believe it was October 21st, 2008, when I

19   filed my first lawsuit against Obama, and Ms. Belcher

20   was working with me at that time, Linda Belcher, who's

21   a defendant in this case, and she said I know Jeff

22   Staples for a long period of time, and he can set up a

23   website for you, and a matter of fact, he set up the

24   website for me.

25          THE COURT:  Did you speak with him over the

Mr. Berg - Direct                    143

1   telephone, or e-mails, or in person?

2           THE WITNESS:  Never in person, have never met

3   him.  E-mails and probably on the telephone at the time

4   of the set up, but I have not spoken with him in, oh, a

5   good year and a half.

6           THE COURT:  You said you didn't pay him any

7   money for that?

8           THE WITNESS:  I don't believe I did.  I think

9   he did it because he was agreeing with me in the cause

10  that I was doing.

11          THE COURT:  Where was he when you were

12  dealing with him, physically what state?

13          THE WITNESS:  I believe Texas, but I'm not

14  sure.

15          THE COURT:  Okay.  Fine, let's proceed,

16  please.  Now we know at least the relationship.

17  BY MS. TAITZ:

18  Q    So, isn't it true that Mr. Staples was your

19  webmaster for about half a year, is that correct?

20  A    No, not that long.

21  Q    Approximately?

22  A    A few months, I'm not sure of the exact.

23  Q    You started your website right before the

24  Democratic National Convention, which was some time in

25  July, August of 2008, right?

Mr. Berg - Direct                    144

1  A    I started October.  I started August 21st.  The

2  Democratic Convention was like October 23rd, the

3  following week.

4  Q    But, you started from August, and then in January

5  of 2009, you had a new person, right?

6  A    I'm not sure the exact time, but around that time,

7  yes.

8  Q    So, you've been working with him, you had some

9  financial dealings where you were paying for his work

10 as a webmaster?

11 A    No, I don't believe I ever paid him at all.  As I

12 stated, that he, through Linda Belcher, who's a

13 defendant in this case, she made him aware of the topic

14 that I was going after Obama on of not being natural

15 born, and he wanted to assist us, as I did,

16 gratuitously.

17 Q    Okay.  So, he was assisting you with your website

18 for let's say four months, five months, something like

19 this?

20 A    A few months.

21 Q    Okay.  So, isn't it true that the only connection

22 between me and Mr. Staples is that he provided

23 affidavit that while he was your webmaster, you created

24 an account under the name of your girlfriend, Carol,

25 and donations went into her account?  You admitted to

Mr. Berg - Direct                        145

1  this in your pleadings submitted to Judge Robreno,

2  isn't that true?

3  A    But, that had no relevance, that has --

4  Q    Just a yes or no, sir.

5  A    Yes, but it has nothing to do with Lisa Liberi.

6  Q    Okay.  Okay.  Sir, you have a relationship with Mr.

7  Staples, you have a grudge with Mr. Staples.  Ms.

8  Liberi's your employee, she works for you, right?

9  A    She's a volunteer for me.

10 Q    Okay.  A volunteer.  So, you have a grudge against

11 him because he outed you, he provided information that

12 monies received from donors were diverted to the

13 account of your girlfriend, is that true?

14 A    No, that's not true.

15 Q    You admitted in your pleading submitted to Judge

16 Robreno that indeed he set account for your fiancee,

17 Carol.  It's in the pleadings with Judge Robreno, we

18 can verify that.

19 A    Whatever --

20 Q    Isn't it true that you admitted this, right?

21 A    Whatever Paypal accounts have been opened that I

22 have been involved in, which Ms. Liberi had nothing to

23 do with, those monies went for the defense of this

24 case.

25 Q    Okay.

Mr. Berg - Direct                    146

1  A    It did not go for my personal use.  How I opened it

2  under different names, that's what we did.  My

3  relationship with Mr. Staples ceased a long time ago,

4  and now we have found out that he still has access to

5  my accounts and he might be stealing from me.  He's

6  connected to you, so you would know those answers.

7  Q    Sir, the only connection to me is the fact that he

8  provided an affidavit about your account,

9  obamacrimes.com, is that correct?

10  A    No, I think the other connection is the fact of

11  your issuing on your website the documentation, right

12  after the Third Circuit sent this case back down here

13  for a hearing, you misread that as you have many things

14  in this case, and you stated that now that you're free

15  to discuss anything you want to do about this.

16  Q    Sir, the only thing that I posted on my website was

17  Lisa Liberi's criminal record and her mug shot, is that

18  correct?

19  A    No.

20  Q    Did I post her criminal record?

21  A    You have been harassing, you have been --

22  Q    How did I harass?

23  A    The record speaks for itself.  You have been cyber

24  stalking, harassing --

25  Q    How did I cyber stalk?  In what, where is the

Mr. Berg - Direct                    147

1  stalking?

2  A    Here is about five hundred pages of you cyber

3  stalking, and you're continuing to do it.

4  Q    Sir, can you explain how posting somebody's

5  criminal record, particularly when your website was

6  taken over by somebody who has a record of theft and

7  forgery, how does disclosing this record represent

8  stalking?

9  A    Because there's no --

10  Q    I'm asking one question.

11  A    Because there's no relevance.  There's no

12  legitimate purpose for you mentioning anything more

13  than one time.  If you wanted to being someone's

14  attention one time, but not the millions and millions

15  of times you've done this, and the continuing thing on

16  your website and then on lisaliberi.com's website,

17  because during the period lisaliberi.com --

18  Q    Sir --

19  A    Let me finish the question.  During the period

20  lisaliberi.com was up and running, it's very funny that

21  you had no postings at all on your website during that

22  period, and, Your Honor, the minute that goes down

23  she's posting again on her website.

24  Q    Sir, your expert said that there is no connection

25  between me and lisaliberi.com.  TRO is in regards to

Mr. Berg - Direct                    148

1  lisaliberi.com, that's right, is that correct?

2  A    Say that again?

3  Q    You're asking TRO against a website,

4  lisaliberi.com, and your own expert said, she's your

5  expert, she's the only person that understands the

6  computers, she says the only person who is connected to

7  this website, lisaliberi.com, is Jeff Staples, who is

8  not a party to this lawsuit, is that correct, yes or

9  no?

10 A    He's not a party, but he's a witness on your

11 behalf.

12 Q    Okay.  Thank you.

13 A    You know what, when we're done here --

14 Q    Sir, thank you.

15 A    -- I'm going to call you as a witness, and we'll

16 see what you say under oath.

17 Q    Absolutely, no problem.  Sir, isn't it --

18            THE COURT:  Okay.  What else?

19 BY MS. TAITZ:

20 Q    Sir, isn't it true that recently when I posted her

21 criminal record, you announced a march on Washington

22 with birth certificates, and you posted on your website

23 that you asked donors to donate and to bring their

24 birth certificates, yes or no?

25 A    That has no relevance.

Mr. Berg - Direct                    149

1          MR. BERG:  I object, Your Honor, that has no

2     relevance to these proceedings.

3          MS. TAITZ:  It has relevance because, Your

4     Honor, I have posted on my website a criminal record of

5     his assistant showing that she recently was convicted

6     of theft and forgery of documents.

7          When they are announcing a march on

8     Washington and telling people bring your birth

9     certificates, and provide your credit card information

10    for donations, it is reasonable for somebody to warn

11    the public, please pay attention, this gentleman is

12    working with a convicted forger and thief.  You are

13    providing your birth certificate and your credit card

14    information.

15         As an attorney and officer of the court, I

16    have done something that I was supposed to do.  Mr.

17    Berg, as an attorney and officer of the court, should

18    have disconnected himself from somebody who, as she

19    admitted in 2008 --

20         THE COURT:  Okay.  But, that's a little far

21    afield from lisaliberi.com.

22         MS. TAITZ:  Okay.

23         THE COURT:  Anything else from Mr. Berg?

24    BY MS. TAITZ:

25    Q   Mr. Berg, when I contacted you and I have told you

Mr. Berg - Direct                    150

1  about Ms. Liberi's record, did you make any attempt to

2  verify that?

3  A    Yes.

4  Q    What did you find out?

5        MR. BERG:   I object, Your Honor, it doesn't

6  have relevance to this current proceeding.

7  BY MS. TAITZ:

8  Q    You are stating that the fact that I posted on my

9  website her criminal record is cyber stalking.   Isn't

10  it true that the only reason why you're objecting to

11  this is because you are afraid that you might be

12  sanctioned, or even disbarred due to the fact that you

13  are continuously working with a forger and thief, and

14  you're submitting documents to court?   Isn't that the

15  real reason why we have this proceeding, why you're

16  attacking me?   What I did on my website?

17  A    Because the point is this.   Number one, you have

18  never produced any documentation to show that Lisa

19  Liberi was involved with any of the monies taken in on

20  our website, number one.

21        Number two, you've never produced any

22  documentation that any filing I made in any court that

23  I've -- in here, or in Washington, DC, or wherever else

24  I filed documents, that a document has been forged or

25  questionable, have you?   No, you haven't.

Mr. Berg - Direct                    151

1  Q   Mr. Berg, isn't -- in your own documents, you have

2  admitted that Lisa Liberi has drafted pleadings in a

3  case, Berg v Obama, and you submitted those in court?

4  This is the case where you stated that Barack Obama was

5  born in Kenya.

6          Don't you think that is reasonable for

7  attorney, an officer in the court like me and president

8  of a foundation, to alert the public to the fact that

9  the person who you admitted has drafted the pleadings

10 is a convicted forgerer?

11         Don't you think that this is not cyber

12 stalking, but rather reasonable to alert the public to

13 this?  Don't you think so, yes or no?  Yes or no?

14 A   No, and can I respond, Your Honor?

15         THE COURT:  Yes.

16         THE WITNESS:  Ms. Taitz, as you well know, or

17 maybe you don't, I think you got your degree off the

18 internet, but maybe you don't know this, that any

19 document -- I could have a five year old prepare a

20 document for me, I can have a ninety year old prepare a

21 document for me, I can have a licensed paralegal or a

22 non-licensed paralegal, I could have a secretary, I

23 could have a foot doctor or a dentist, which you are,

24 prepare a document.

25         But, I, as the attorney, when I sign my name,

1    I'm stating that the facts in that document are true

2    and correct.  It has nothing to do with the maker who

3    assisted me in preparing documents.

4                THE COURT:  Now, let me ask you a question.

5                THE WITNESS:  Yes?

6                THE COURT:  Other than the question of

7    whether Lisa Liberi is a convicted felon and the

8    question of her so-called mug shot, is there anything

9    on that website, or where do you point to in that

10   website that constitutes cyber stalking?

11               THE WITNESS:  I could go page by page through

12   the document.

13               THE COURT:  Are you talking about document

14   number one?

15               THE WITNESS:  Yeah.  Well, document number

16   one and also --

17               THE COURT:  The postings in document number

18   one?

19               THE WITNESS:  Postings in number one, and

20   also the postings in lisaliberi.com.  It's not a two

21   sentence line that she is a, you know, here is a

22   picture and she's convicted, and this.  It just goes

23   into all kinds of other things, and she's even at this

24   point going after her mother, Shirley Waddell, in the

25   website.

Mr. Berg - Direct          153

1    THE COURT: Okay.

2    THE WITNESS: It's just not -- and, it's

3 ongoing, it's every day for the past year and a half,

4 Your Honor, and then, it's very significant, when this

5 new site comes up, lisaliberi.com, Ms. Taitz does not

6 say anything on her website until the day, the day or

7 next day.

8    Also, one other thing, Your Honor. There

9 were postings on lisaliberi.com, which were court

10 documents which were filed with the court, and they

11 were not, I believe, on -- they were court documents.

12 I'm sorry, they were faxed documents, a faxed letter to

13 Your Honor, which was not put on PACER, which then

14 appeared on lisaliberi.com, and the only way that could

15 be is because Ms. Taitz received a copy of those.

16    THE COURT: Okay. Maybe.

17    MS. TAITZ: I have no --

18    THE COURT: Okay, next question, please.

19 BY MS. TAITZ:

20 Q  Mr. Berg, isn't it true that when we were here a

21 year and a half ago in June, when Judge Robreno denied

22 your TRO I talked to you, and I have provided you with

23 information that Ms. Liberi while she was incarcerated

24 has threatened her own sister, and I asked you to stop

25 it, yes or no?

Mr. Berg - Direct                    154

1   A    That was an absolute lie which you put forth, and

2   you sent that out to people, accusing Lisa --

3   Q    Okay.

4   A    Excuse me, can I finish, Your Honor?

5   Q    Yes.

6   A    Accusing Lisa Liberi of murdering -- being involved

7   with the killing of her sister, and that came from Orly

8   Taitz.

9            MS. TAITZ:  Your Honor --

10           THE WITNESS:  That was a disgrace.

11           MS. TAITZ:  May I respond?

12           THE COURT:  Yes.

13           MS. TAITZ:  Okay.  The only thing that I

14  posted on my website is the fact that there was

15  tampering with my car and my husband's car.  I also

16  posted on my website official transcript of

17  proceedings.

18           I would like to provide this to you to show

19  that in reality my life is in danger.  I'm not a

20  criminal, I never was.  This woman is a criminal, and

21  she admitted --

22           MS. LIBERI:  Your Honor, I would like to

23  object.

24           THE COURT:  Excuse me, please.

25           MS. TAITZ:  I would like to read to you and

Mr. Berg - Direct                    155

1   provide to you --

2          MR. BERG:  I would like to object, Your

3   Honor, that has no relevance to these proceedings.

4          MS. TAITZ:  Your Honor, they are seeking TRO.

5   In reality, TRO should be against Berg and Liberi and

6   Ostella.  These people diverted funds from my

7   foundation, my signature was forged, Paypal account was

8   changed, and I wanted to show you this is from the

9   People of the State of California, plaintiff, and

10  that's against Lisa Liberi Richardson.

11         MR. BERG:  Your Honor, before she says it,

12  can I look at it?  It's normally before you read

13  something in the record --

14         MS. TAITZ:  I have submitted this to this

15  Court.

16         THE COURT:  Well, what is the point of that,

17  what are you going to say?

18         MS. TAITZ:  It shows that when Lisa Liberi

19  was incarcerated in California, there were recordings

20  made in prison.  There is a statement from a police

21  detective where she was mad at her own sister.

22         THE COURT:  Right.

23         MS. TAITZ:  She attempted to --

24         THE COURT:  What does that have to do with

25  this case?

Mr. Berg - Direct                    156

1    MS. TAITZ:  It shows that in reality, TRO

2    should be against them, not against me, and I warned

3    Mr. Berg that he is working with somebody who is very

4    dangerous.

5         THE COURT:  Okay.  Anything else, because I

6    think we just about exhausted that connection.

7         MS. TAITZ:  Okay.

8         THE COURT:  Good, thank you.  Thank you, Mr.

9    Berg, you may step down.

10        (Witness excused.)

11        THE COURT:  Okay.  You want to make your

12   final argument now, Ms. Taitz, please?

13        MS. TAITZ:  Yes.

14        MR. BERG:  Your Honor?

15        THE COURT:  Yes?

16        MR. BERG:  Because of the questions to me,

17   can I briefly call her to the stand for three or four

18   questions?

19        THE COURT:  We're done as far as the facts

20   are concerned, thank you.

21        MS. TAITZ:  Your Honor, these three

22   individuals make my life a living hell for a year and a

23   half.  They have taken over the website of my

24   foundation.  Ms. Ostella admitted that she replaced the

25   Paypal account on the website of my foundation with her

1   own Paypal account.

2            She admitted that she cut and pasted my

3   signature on numerous documents.  These individuals

4   have accused me -- I'm a licensed doctor and attorney.

5   I'm a mother to three children.

6            They have completely destroyed my good name

7   and reputation, when in pleading to you they swore

8   under the penalty of perjury that I attempted to hire a

9   hit man to kill Lisa Liberi, that I attempted to hire

10  somebody to kidnap their children.

11           THE COURT:  Well, let me ask you this,

12  because I may be missing the, I don't know, the forest

13  from the tree here.  I really don't understand what is

14  the purpose of this whole thing?

15           That is, these kind of wild accusations on

16  both sides, et cetera, and maybe somebody's right and

17  maybe it's not, but I don't understand the end game, or

18  what is it that you would like, and what is it that

19  Berg and his group would like?

20           MS. TAITZ:  Sure.  Your Honor --

21           THE COURT:  Because it seems to me that if

22  anything you are kind of destroying each other, and you

23  started with a common purpose and that seems to have

24  all dropped by the wayside, and you're concentrated

25  firing on each other like a firing squad, but it's a

1    circular one.

2            MS. TAITZ:  Sure.

3            THE COURT:  What is going on here?

4            MS. TAITZ:  Your Honor, I did not file any

5    lawsuits against them, even though --

6            THE COURT:  Yes, but you are -- I think Mr.

7    Berg has a point.  I don't know if it's a legal point,

8    but it seems to me that it's kind of a practical point.

9            If I point out that somebody's doing

10   something wrong and the world knows, I don't have to do

11   it every day, and I don't have to add not only is he

12   doing something wrong, he's doing something wrong

13   again.

14           If that was your purpose, hasn't that been

15   fulfilled and it's time to move on?

16           MS. TAITZ:  No, sir, and I did.  The only

17   time I write anything on my website is when there are

18   court proceedings.  You've seen their pleadings, they

19   go and they bring pleadings to this Court accusing me

20   of trying to hire somebody to kill her, so I provide

21   information on my website.

22           Yes, there was, for example, previously a

23   request for a temporary restraining order against me,

24   and Judge Robreno found that I haven't done anything

25   wrong, and there is no temporary restraining order, and

1  it is important, because they are destroying my

2  reputation while they're doing it.

3          The only reason Mr. Berg is doing it is

4  because I was the whistle blower.  I simply blew the

5  whistle about the fact that he is working with a

6  document forger and thief, and submitting documents to

7  cases up to the Supreme Court of the United States.

8          THE COURT:  Okay.  But, you've done that.

9  Now, isn't your job done?

10          MS. TAITZ:  Sir, the only time I'm

11  submitting -- I'm posting on my website --

12          THE COURT:  Yes.

13          MS. TAITZ:  I'm posting only truthful

14  information.  You've seen, I haven't posted anything

15  that is not truthful.  When there is something, and

16  it's not millions of times, I have other things that I

17  am doing, but if there is something in court saying

18  well, they accuse me of cyber stalking, they accuse me,

19  they now accuse me of creating this website, and you've

20  seen, Your Honor, there is zero evidence that I have

21  anything to do with this website.

22          The question is do we punish honest people?

23  Do we allow the criminals to punish whistle blowers, to

24  punish honest people from providing truthful

25  information?  Is that the goal, or the goal is --

160

1    THE COURT:  What does her mother have to do
2  with this suit?
3    MS. TAITZ:  I've never written anything wrong
4  about her mother.  In this pleading, her mother has
5  written a hundred and fifty pages.  As a matter of
6  fact, I moved this Court to actually sanction Mr. Berg
7  under 28 USC Code, Section 1927.
8    What he is doing, he is multiplying
9  proceedings.  He's submitting five hundred, six
10  hundred, a thousand pages, among them a hundred and
11  fifty pages from Ms. Waddell.
12    In those hundred and fifty pages, I don't
13  know if you read them, but if you did she defamed me.
14  She called me a monster.  She is saying Orly Taitz is a
15  monster, she is destroying my daughter's life.  I've
16  never done that.
17    THE COURT:  Well, that's --
18    MS. TAITZ:  So, I --
19    THE COURT:  Let me ask you another question
20  which --
21    MS. TAITZ:  Yes?
22    THE COURT:  -- which has confused me
23  somewhat, because I thought that most people when they
24  have their lawsuits sent back to their home court are
25  pretty happy about it, but you seem to want to be here

161

1    instead of in California.

2          MS. TAITZ:  No, that's not what I was saying.

3          THE COURT:  Okay.

4          MS. TAITZ:  My concern is that on June the

5    4th you issued a ruling.

6          THE COURT:  Right.

7          MS. TAITZ:  In that ruling, you assumed

8    jurisdiction in Federal Court, and you put in your

9    order Lisa Liberi is a resident of Pennsylvania.

10         So, all I did -- and, that's the essence of

11   the case.  They are saying Orly Taitz defamed Lisa

12   Liberi.  She is not a criminal of California, and she

13   admitted she was convicted in California.

14         THE COURT:  So, if this case goes forward,

15   you don't object to it going forward in California?

16         MS. TAITZ:  Well, I object to jurisdiction in

17   Federal Court.

18         THE COURT:  Okay.  But, if the Third Circuit

19   disagrees with you, what is your position concerning

20   where the suit should go?

21         MS. TAITZ:  Then, I will go to the Supreme

22   Court of the United States --

23         THE COURT:  Okay.

24         MS. TAITZ:  -- because in order for --

25         THE COURT:  You haven't answered my question.

162

1   What is your position?  When you go to the Court of

2   Appeals and they ask you a question, believe me,

3   they're going to want an answer.

4           MS. TAITZ:  Yes.

5           THE COURT:  Here, maybe I haven't pressed you

6   enough.  Where do you want the suit to be?

7           MS. TAITZ:  My point is that in federal --

8   the case in Federal Court has to be dismissed

9   because --

10          THE COURT:  Okay.  Fine.  You don't want to

11  answer the question.

12          MS. TAITZ:  No, I --

13          THE COURT:  Goodbye, we're done.  Okay.  Good

14  night.

15          (Proceedings adjourned at 5:46 p.m.)

16                      *  *  *

17

18

19

20

21

22

23

24

25

163

I N D E X

| PLAINTIFFS' WITNESSES | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| Lisa Liberi | | | | |
|   By Mr. Berg | 22 | | | |
|   By Ms. Taitz | | 55 | | |
| | | | | |
| Lisa Ostella | | | | |
|   By Mr. Berg | 97 | | | |
|   By Ms. Taitz | | 120 | | |

| DEFENDANTS' WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| Philip J. Berg | | | | |
|   By Ms. Taitz | 139 | | | |

\* \* \*

CERTIFICATION

I, Matthew Tilghman, do hereby certify that
the foregoing is a true and correct transcript from the
electronic sound recordings of the proceedings in the
above-captioned matter.

_____
Date   1/6/11

_____
Matthew Tilghman